**ORIGINAL**

**FILED**
**HARRISBURG**

OCT 1 0 2000

MARY E. D'ANDREA, CLERK

Per _____

DEPUTY CLERK

POST & SCHELL, P.C.
BY:    JOHN R. KANTNER, ESQUIRE
I.D.    # 75741
240 GRANDVIEW AVENUE
CAMP HILL, PA 17011
(717) 731-1970

ATTORNEYS FOR DEFENDANT
WILLIAM J. STEINOUR, M.D.

JASON ERIC BENSON,

                                    Plaintiff

        v.

WARDEN THOMAS DURAN,
DEPUTY WARDEN BRUCE CLUCK,
DEPUTY WARDEN DEBRA HANKEY,
LT. JOHN JENNINGS, LT. WILLIAM ORTH,
SGT. RAE HIENTZELMAN,
C.O. BRITON SHELTON,
C.O. DAVID VAZQUEZ,
C.O.s JANE/JOHN DOE,
DR. WILLIAM J. STEINOUR,
ADAMS COUNTY PRISON,

                                    Defendants

IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT
OF PENNSYLVANIA

NO. 1:CV-00-1229

(JUDGE CALDWELL)

(MAGISTRATE JUDGE BLEWITT)

**BRIEF IN SUPPORT OF DEFENDANT WILLIAM STEINOUR, M.D.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I.    FACTS AND PROCEDURAL HISTORY

        This is an action for violation of civil rights pursuant to 42 U.S.C. §1983.  Specifically,

Plaintiff alleges violation of his civil rights protected by the Eighth Amendment of the U.S.

Constitution, for alleged deliberate indifference to serious medical needs.  A copy of the Amended

Complaint is attached to the Motion to Dismiss as Exhibit "A".

        As alleged in the Complaint, Defendant Dr. Steinour is a physician employed at the

Gettysburg Hospital, being sued in his individual capacity (Exhibit "A", ¶7).

Plaintiff was transported to the Gettysburg Hospital Emergency Department on or about August 27, 1999, following an altercation with correctional officers at the Adams County Prison (Id., ¶¶1-5).

At the Emergency Department, Plaintiff was examined and treated by Defendant Dr. Steinour (Id., ¶6).

As alleged, Defendant Dr. Steinour "refused to address" Plaintiff's request for anti-seizure medications and, similarly, "refused to address" Plaintiff's complaint of losing consciousness. Plaintiff contends that he has a history of epilepsy, of which Dr. Steinour was allegedly aware. Plaintiff was diagnosed and treated for multiple contusions and released to the care of Adams County Prison officials on that same date.

Subsequently, on August 30, 1999, Plaintiff was observed to be in a state of continued convulsions and was transported to Gettysburg Hospital Emergency Room, where he was evaluated and treated by another physician. He was admitted to Gettysburg Hospital at that time, with a diagnosis of status epilepticus.

Plaintiff contends that Dr. Steinour was "deliberately indifferent to his serious medical needs" in failing to treat Plaintiff as a seizure risk after being told of the epileptic condition, in violation of the Eighth Amendment of the U.S. Constitution (Id., ¶¶4(a3)).  There are no State tort law claims asserted against Dr. Steinour.

Attached to Plaintiff's Amended Complaint as Exhibit "E" is Gettysburg Hospital Emergency Department's report of August 27, 1999, prepared and signed by moving Defendant Dr. Steinour.

-2-

As evident from this report, Plaintiff provided no history of a seizure disorder or seizure medications. The report documents Dr. Steinour's physical exam, treatment plan and diagnostic impression of multiple contusions.

Moving Defendant contemporaneously files a Rule 12(b)(6) Motion to Dismiss. This Brief is offered in support thereof.

II.   **ISSUES**

   **A.**   **Whether dismissal is appropriate under a claim for violation of civil rights pursuant to 42 U.S.C. §1983, where Plaintiff has failed to plead any facts on record which demonstrate that moving Defendant acted under color of State law in providing medical care?**

Suggested answer:   **In the affirmative.**

   **B.**   **Alternatively, whether dismissal is appropriate where the facts of record demonstrate that medical care was provided by Defendant, with no evidence that Defendant was deliberately indifferent to any serious medical need of Plaintiff?**

Suggested answer:   **In the affirmative.**

III.   **ARGUMENTS**

   **A.**   **Moving Defendant Dr. Steinour provided medical care to Plaintiff at Gettysburg Hospital, a private healthcare entity, in his capacity as an employee of the hospital, with no allegations of affiliations with the Co-Defendant law enforcement agencies or other State affiliation.**

In rendering a decision on a Motion to Dismiss, a Court must accept the veracity of Plaintiff's allegations. White v. Napoleon, 897 F.2d 103, 106 (3rd Cir. 1990). When considering a Motion to Dismiss based on a failure to state a claim, the Court should "not inquire whether the Plaintiffs will

-3-

ultimately prevail, only whether they are entitled to offer evidence to support their claims." "[A]

Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the Plaintiff can prove no set of facts in support of his claim which would have entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46; Nami v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996).

In reviewing a Motion to Dismiss for failure to state a claim, the test is whether, under any

reasonable reading of the pleadings, Plaintiff may be entitled to relief. Holder v. City of Allentown,

987 F.2d 188, 194 (3rd Cir. 1993). The Court must accept as true all factual allegations in the

Complaint, and all reasonable inferences that can be drawn therefrom. Markowitz v. Northeast Land

Company, 906 F.2d 100, 103 (3rd Cir. 1990).

In order to state a cause of action under 42 U.S.C. §1983, a Plaintiff must allege a deprivation

of rights incurred by the Constitution and laws of the United States, and that the Defendant deprived

Plaintiff of his constitutional right **while acting under color of State law.** Gomez v. Toledo, 446

U.S. 635, 640 (1980); Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). An

essential element of a §1983 action is that Defendant acted under color of State law. Plaintiff must

demonstrate the existence of this relationship. In the instant matter, Plaintiff must set forth facts in

the record demonstrating that moving Defendants, in providing medical care to Plaintiff at

Gettysburg Hospital, were acting under color of State law.

Action under color of State law requires, "...that the Defendant in a 1983 action have

exercised power "possessed by virtue of State law and made possible only because the wrongdoer

is clothed with the authority of State law"." West v. Atkins, 487 U.S. 42, 49 (1988).

-4-

A private action is not converted into one under color of State law merely by some tenuous connection to State action. <u>Groman</u>, 47 F.3d at 638. The issue is not whether the State was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the State itself (<u>Id</u>).

The Courts have set forth three tests for determining whether an individual acted under color of State law for purposes of a §1983 claim. These include the Exclusive Government Function Test, the Symbiotic Relationship Test and the Close Nexus Test. <u>See</u>, <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004-05 (1982); <u>Mark v. Boro of Hatboro</u>, 51 F.3d 1137, 1141-44 (3d. Cir. 1996); <u>Groman</u>, 47 F.3d at 339-40; <u>Janicsko v. Pellman</u>, 774 F.Supp. 331 (M.D. Pa. 1991).

Under the Exclusive Government Function Test, the defendant is a State actor if it performs a function that "has been traditionally the exclusive prerogative of the State." <u>Rendall-Baker v. Kohn</u>, 457 U.S. 830, 842 (1982). The Symbiotic Relationship Test "looks at the overall relationship between the State and the asserted State actor to see if there is a great deal of interdependence between the two." <u>Janicsko</u>, 774 F.Supp. at 335. The position of interdependence must be such that each of the actors is "a joint participant in the enterprise." <u>Jackson v. Metropolitan Edison</u>, 419 U.S. 345, 357-58 (1974). The Close Nexus Test looks at the State and the private party's actions to ascertain whether a sufficiently close Nexus exists "so that the action of the latter may be fairly treated as that of the State itself." <u>Jackson</u>, 419 U.S. at 351.

The Courts have consistently held that actions by a healthcare institution or the medical professionals acting within, do not meet the criteria of State actors for purpose of a §1983 action.

<u>Janicsko</u>, 774 F.Supp. at 338, 339, 357-58; <u>McIlwain v. Prince William Hospital</u>, 774 F.Supp. 986

(E.D. Va. 1991).

The only allegation against moving Defendant arises from medical care provided to Plaintiff

at the Gettysburg Hospital Emergency Room on August 27, 1999. The mere fact that Plaintiff was

initially brought to the hospital by Adams County Prison officials, who presumably remained in the

Emergency Department during treatment, does not transform otherwise private action into State

action. <u>McIlwain, supra</u>. Plaintiff has alleged unequivocally that moving Defendant Dr. Steinour

is an employee of the Gettysburg Hospital and not of any State or county agency (Exhibit "A", ¶6).

This Honorable Court has recently ruled on this same issue in <u>Mutope v. Edgar, et al.</u>, Civil No.

3:CV-98-1179. In that action, the Honorable Judge Kosik entered a Memorandum and Order on the

Rule 12(B)(6) Motion to Dismiss of Defendant Good Samaritan Hospital, dated March 20, 2000, a

copy of which is attached as Exhibit "B".

In <u>Mutope</u>, the private entity hospital moved for dismissal from claims under §1983, where

Plaintiff was brought to the hospital Emergency Department by police following his arrest. The

Court determined that Good Samaritan did not have status as a State actor, and dismissed the §1983

claims (<u>Id</u>).

<u>Mutope</u> is identical to the instant action where Plaintiff Benson was brought to the

Gettysburg Hospital Emergency Department and treated by a licensed physician employed by the

hospital. Plaintiff has set forth no facts whatsoever which would demonstrate that moving

Defendant acted under color of State law and will be unable to do so in view of the above case law.

Dismissal is, therefore, appropriate on all claims.

**B.**     **Alternatively, in the event the Court determines that Defendant was, in fact, a State actor, Plaintiff has failed to demonstrate that moving Defendant's action in providing medical care amounted to deliberate indifference to a serious medical need rather than an exercise of professional judgment.**

Plaintiff alleges that Defendant Dr. Steinour violated his civil rights by acting with deliberate indifference to his serious medical need in depriving him of necessary and adequate medical care. Claims by incarcerated individuals for denial of adequate medical care are considered cruel and unusual punishment, and are brought pursuant to the Eighth Amendment of the U.S. Constitution. Estelle v. Gamble, 429 U.S. 97 (1976).

In order for the Plaintiff to establish a violation of the Eighth Amendment based on the alleged denial of proper medical care, an inmate must demonstrate a <u>deliberate indifference</u> to a <u>serious medical need</u>. Estelle v. Gamble, 429 U.S. 97 (1976) (emphasis added).

The <u>Estelle</u> standard is two-pronged: "It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." <u>See</u>, <u>West v. Keve</u>, 571 F.2d 158 (3d Cir. 1978).

To establish a constitutional violation, the indifference must be intentional or the actions deliberate. <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1081 (3d Cir. 1976). It is well established that not every prisoner complaint of inadequate medical care rises to the level of a constitutional violation. Mere medical malpractice cannot give rise to a violation of the Eighth Amendment. <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3d Cir. 1990); <u>Unterberg v. Correctional Medical Systems, Inc.</u>, 799 F. Supp. 490 (E.D. Pa. 1992) (opinion by Judge Huyett).

-7-

In <u>Unterberg</u>, summary judgment was awarded on plaintiff's constitutional claims, where a prison inmate received medical attention on numerous occasions, with the physician's physical examinations concluding that no emergency medical situation existed.  The inmate was eventually transferred to a local hospital, where it was determined that she was suffering from a blood infection which led to cardiac complications and permanent brain damage.  Judge Huyett concluded that <u>Hampton v. Holmesburg Prison Officials</u>, supra, was instructive in stating "neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." <u>Unterberg</u>, 799 F. Supp. at 497 (citing <u>Hampton</u> at 1081).

In further comment to the standard required to demonstrate constitutional violation arising from improper medical treatment, the Court in <u>Gindraw v. Dendler</u> commented that "the exercise by a doctor of his professional judgment is never deliberate indifference.  <u>Gindraw v. Dendler</u>, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (Judge DuBois).  It is also noted that the Third Circuit has determined that the <u>Estelle</u> standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients."  <u>Gindraw</u> at 836 (quoting <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979).  Further, the Court in <u>Gindraw</u> quoted <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990), as follows:  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  In <u>Gindraw</u>, summary judgment was granted where a prison dentist repeatedly treated plaintiff's extensive cavities and tooth pain.  The Court cited the number of examinations conducted by the defendant dentist, including extraction of two teeth,

referral to another physician, and prescription of medication to be more than sufficient to establish

that defendant was not deliberately indifferent to plaintiff's dental needs.  The Court considered

plaintiff's complaints as no more than dissatisfaction with the treatment received.  Id. at 837.

Plaintiff's complaints represent no more than mere dissatisfaction with treatment provided

by moving Defendant Dr. Steinour.  Plaintiff has alleged that Dr. Steinour refused to address

Plaintiff's request for anti-seizure medication and additionally refused to consider his complaint of

losing consciousness prior to arriving at the E.R. (Exhibit "A", ¶6).  However, the medical record

attached as Exhibit "E" clearly reflects that Dr. Steinour performed a thorough physical examination

and took a history from Plaintiff.  Dr. Steinour noted allegations of injuries sustained in a "scuffle"

with prison guards and that Plaintiff was maced by the guards.  The only complaint voiced was of

numbness to Plaintiff's knuckles, pain in the back, chest and back of the head.

As demonstrated, Plaintiff received ongoing medical care for his conditions.  The Courts

have recognized that where a prisoner has received some medical attention and the dispute is over

the adequacy of  treatment, Federal Courts are generally reluctant to second guess medical

judgments. Sturts v. City of Philadelphia, 529 F.Supp. 434 (E.D. Pa. 1992).  Again, negligence or

inadvertent failure to provide medical care does not constitute "cruel and unusual punishment" under

the Eighth Amendment.  Considerable latitude is given to decisions made by medical personnel in

the diagnosis and treatment of inmates.  Gindraw, at 836; Unterberg, at 495; Ellison v. Sheipe, 570

F.Supp. 1361, 1363 (E.D. Pa. 1983).

Plaintiff's complaints represent no more than mere dissatisfaction with treatment provided at Gettysburg Hospital.  In the light most favorable to Plaintiff, the allegations would arise to no more than negligence, specifically denied, but redressable in a State tort law action.  Plaintiff has alleged no actions by any moving Defendant which would entitle him to relief under 42 U.S.C. §1983 and dismiss is, therefore, appropriate.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant William Steinour, M.D. respectfully requests this Honorable Court grant the within Motion and Order that all claims against him be dismissed with prejudice.

Respectfully submitted,

POST & SCHELL, P.C.

Date: _____    _____
JOHN R. KANTNER, ESQUIRE
ID #75741
Counsel for Defendant William Steinour, M.D.

-10-

### CERTIFICATE OF SERVICE

I, John R. Kantner, Esquire, an employee of the law firm of Post & Schell, P.C., do hereby certify that on the date set forth below, I did serve a true and correct copy of foregoing document upon the following person at the following address indicated below by sending same in the United States mail, first-class, postage prepaid:

Jason Eric Benson
SCI-SM
DS-6483
PO Box 999
1120 Pike Street
Huntingdon, PA  16652

Thomas Duran, Warden
Adams County Prison
Gettysburg, PA  17325

Bruce Cluck, Deputy Warden
417 West Middle Street
Gettysburg, PA  17325

Debra Hankey, Deputy Warden
Adams County Prison
Gettysburg, PA  17325

Lt. John Jennings
73 Fourth Street
PO Box 155
Biglerville, PA  17307

Lt. William Orth
236 West Main Street
Waynesboro, PA  17268

Sgt. Rae Hientzelman
Adams County Prison
Gettysburg, PA  17325

C.O. Briton Shelton
Adams County Prison
Gettysburg, PA  17325

C.O. David Vazquez
670 Quaker Run Road
Aspers, PA  17304

C.O. Jane Doe
Adams County Prison
Gettysburg, PA  17325

C.O. John Doe
Adams County Prison
Gettysburg, PA  17325

Adams County Prison
Adams County Prison
Gettysburg, PA  17325

James D. Young, Esquire
Lavery, Flaherty, Young & Patterson, P.C.
P.O. Box 1245
Harrisburg, PA 17108-1245

Date: 10/10/00

John R. Kantner, Esquire