IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON ERIC BENSON,            :    CIVIL ACTION NO.1:CV-00-1229
        Plaintiff             :
    v.                        :    (Judge Caldwell)
                              :    (Magistrate Judge Blewitt)
THOMAS DURAN, et al.,         :
        Defendants            :

FILED
SCRANTON
OCT 1 6 2000

PLAINTIFF'S STATEMENT OF DISPUTED FACTUAL ISSUES AND
BRIEF IN OPPOSITION
TO DEFENDANTS' REQUEST FOR JUDGMENT IN THEIR FAVOR

The defendants' have moved for the dismissal of plaintiff's amended complaint and seeks a ruling of judgment in their favor. The request must be denied because, the plaintiff submits the following list of genuine issues of material fact that require the denial of the defendants' request.

    1. Whether Adams County Prison policy requires inmates' to strip off their clothing while being handcuffed from behind and shackled at the ankles.

    2. Whether it was necessary for eight (8) prison staff to spray chemicals into the face and mouth of plaintiff and kick and beat inmate who was fully restrained and in a chair; eight on one is excessive.

    3. Whether I began to spit and use profane language before I was sprayed with chemicals and attacked by eight individuals.

    4. Whether Adams County Prison has medical facilities capable of handling the trauma inflicted by prison officials or capable of handling multiple seizures i.e., Status Epilepticus.

    5. Whether prison officials stood by and watched me have numerous seizures before summoning help which they could not provide.

    6. Whether I will be safe upon my eventual return to the Adams County Prison for additional post-conviction relief proceedings.

BRIEF IN OPPOSITION TO DEFENDANTS'
REQUEST FOR JUDGMENT IN THEIR FAVOR

1.      The defendant's Duran, Cluck, Hankey, Jennings, Orth, Hientzelman, Vazquez, and Shelton, through counsel have petitioned this Honorable Court respectfully requesting that the plaintiff's Amended Complaint be dismissed and that judgment be entered in their favor.

2.      The plaintiff reads the defendants' request to be that of a decree of Summary Judgment. Summary judgment is to be granted only if the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P., a "material" fact is one that "might affect the outcome of the suit under the governing law." Anderson V. Liberty Lobby,Inc., 477 U.S. 242,248 (1986).

3.      The defendants' assert denials, have admitted to meaningless facts, supplying no affidavits and aver affirmative defenses. Although the plaintiff has set forth attached hereto as exhibit "A", an affidavit which corresponds with his amended complaint and squarely contradicts what force was used, when it was used, why it was used, why they had to gas/spray plaintiff who was fully restrained, how they deliberately let plaintiff have numerous seizures before seeking help, and that plaintiff has alleged sufficient facts to support his demands for relief.

4.      After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. See Whitely v. Albers, 475 U.S. 312,327, 106 S.Ct. 1078 (1986). Plaintiff

was handcuffed from behind (so it was impossible to throw a punch, slap, or grab at anything); and he was shackled at the ankles (so it was impossible for him to kick, trip, or lash out with his feet); he could not physically harm any one or anything while being fully restrained.

5.      There was no reasonableness, or goodfaith effort to maintain or restore control to a situation where the party whom force was used upon was in a fixed position and restrained by handcuffs and shackles. In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment courts look to several factors including: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; (5) "any efforts made to temper the severity of a forceful response." Whitley, supra at, 321, 106 S.Ct. 1078 (citations omitted).

6.      In light of the facts submitted in plaintiff's affidavit there was indeed deliberate indifference to his medical condition. However, the defendants' assert in their request for judgment at [affirmative defenses #11] that they did not show deliberate indifference to my medical condition. On or about 9/99, I received a copy of the emergency department report. The relevant part states: " the sheriff that transported this patient from prison says he was told that this patient had a small seizure about an hour and a half ago and then a larger one more recently that prompted the decision to transport this gentleman to the Emergency Department..." See exhibit "B"&"B-1".

7. In their request for judgment at [facts #7], the defendants' admit that plaintiff was taken to the hospital but deny knowing why plaintiff was taken. Perhaps the defendants' want this Honorable Court to believe that palintiff while having seizures, took a break and telephoned the sheriff's office and asked to be taken for a ride to the hospital; of course, it does not make common sense. [P]ersonal participation is an essential allegation in a §1983 claim and everyone of the defendants' actions and/or omissions are accounted for herein. See Bennett v. Passic, 545 F.2d 1260,1262-63 (10th Cir.1976); Farmer v. Brennan, 114 S.Ct. 1977 (1994); Stickler v. Waters, 989 F.2d 1381 (1993).

8. In the instant case, the defendant's use of force, is repugnant to the conscience of mankind and the deliberate indifference is shocking compared to the standards of our civilized society. See Felix v. McCarthy, 939 F.2d 699,702 (9th Cir.1991)(minor injuries are actionable when use of force is completely unjustified); Hudson v. McMillian, 112 S.Ct. 995 (1992); Corselli v. Coughlin, 842 F.2d 23,26-27 (2nd Cir. 1988)(jury could find for prisoner even if he had refused an order); Lewis v. Downs, 774 F.2d 711,714-15 (6th Cir. 1985)(evidence that an officer kicked a handcuffed person who was lying on the ground showed malicious motivation). There are to many factual disputes for a judgment to be entered in the defendants favor or summary judgment.

9. The defendants' also assert that plaintiff failed to exhaust available administrative remedies, despite the fact that I am suing for monetary damages, their request or assertion is unfounded. See Wright v. Hollingsworth, 201 F.3d 663 (5th Cir.2000). As far as qualified immunity is concerned, the defendant's violently beat plaintiff out of wantonness, maliciously to cause harm. See Whitley supra.

10.     Government officials performing discretionary functions will be shielded from liability for damages where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known". Harlow v. Fitzgerald, 102 S.Ct. 2727,2738 (1982). "The right must be suficiently particularized to put defendants on notice that their conduct probably is unlawful." Colaizzi v. Walker, 812 F.2d 304,308 (7th Cir.1987).

11.     The defendants claim that they are entitled to qualified immunity in that they acted with a good faith belief that their actions were constitutional and such belief was reasonable under the circumstances, [affirmative defenses #5]. Even when there is a need to use some force, the use of completely excessive amounts of force violates the Constitution. A good example is Musgrove v. Broglin, 651 F.Supp. 769,773-76 (N.D.Ind.1986), in which a prisoner failed to get out of bed and the officer dumped him out onto the floor, injuring him substantially; the court found an Eighth Amendment violation. "Shooting a prisoner with a stun gun because he refused to clean his cell violated the constitutions Eighth Amendment." Hickey v. Reeder, 12 F.3d 754,758-59 (8th Cir.1993); Brooks v. Kyler, 201 F.3d 102,106 (3rd Cir. 2000)(use of force violated the constitution). The defendants request for qualified immunity must be denied.

WHEREFORE, the plaintiff Jason Eric Benson, respectfully request that this Honorable Court deny the request of the defendants and deny all eleven of their asserted affirmative defenses; and allow the discovery to continue.

Respectfully submitted,

Date: 10/10/00

Jason Eric Benson, plaintiff

## AFFIDAVIT OF JASON ERIC BENSON

I, the plaintiff Jason Eric Benson, declare under penalty of perjury pursuant to 28 U.S.C. §1746, that the facts stated herein, in the initial complaint, and the amended complaint are true to my knowledge, and that the facts stated on information and belief are true to the best of my knowledge and belief and deposes as follows:

1. On August 27, 1999, I was taken to court in Adams County for a hearing on my post-conviction petition.

2. On 8/27/99, upon my return to the county jail I explained to the guard Briton Shelton, that I was feeling sick and that I thought or felt like I was going to have a seizure. Mr. Shelton, responded by telling me to turn around so he could handcuff me and I did so thinking that I was about to be taken to see someone who would be of help with my medical condition; I was then turned back around and shackled at the ankles.

3. After I was fully restrained, Lt. John Jennings, appeared and the entire atmosphere changed and the guards became imperialistic. I was then ordered to strip off all of my clothing while being cuffed from behind and shackled; obviously that request was impossible to heed to and I stated as much.

4. Plaintiff was then led to a small room and put in a chair and a few minutes later the room was filled with the warden Thomas Duran, and six (6) other guards. The intensity in the air was that of a cow in a slaughter house. I was then given the same order to strip off all of my clothing while still being fully restrained. Again, I stated that it was impossible for me to comply while fully restrained.

5. I was then shot in the face with a chemical agent that is usually applied in situations like riots and/or on uncontrollable inmates' or prisoners'. I was restrained and helpless and most of all certainly unable to physically do any bodily harm to seven (7) prison staff members. All I can remember is that I could not breath and that my mouth, eyes, and nose were all on fire and closing up on me.

6. I was trying to clear my throat and eyes of the chemical and the next thing I remember is that I was losing my balance; I can't say for sure if it was from me or that I had help but, I do remember an order being given to "takem down," and I was tackled and pummeled with numerous feet and hands.

7. I was then thrown into a shower stall, and remember waking up and being beaten some more by Duran. They released me from the restraints and I fearfully took off my clothing and I again started feeling faint sickly. I asked for some seizure medication and was told that there was not any available so, I asked to be taken to a hospital.

8. When I got the the hospital I was seen by Dr. William J. Steinour, who knew that I suffered from or with epileptic seizures and I told him that I felt like I was about to have one at that time. Dr. Steinour, disregarded my request for an anti-convulsant and diagnosed me with multiple contusions and gave me the drug "Ativan" which he knew that patients with seizure disorders should not take the drug because it makes it relatively easier for them to have seizures. I was then sent back to the county jail.

9. Soon thereafter, on 8/30/99, I was witnessed by William Orth, and David Vazquez, to be in a convulsive state. Albeit, they just stood there and watched until I started having more severe seizures about an hour and a half (1½) later. They then notified the sheriff's department of an emergency situation. On the way to the hospital I must have been having more seizures because when I arrived I was told that I was foaming at the mouth, bleeding from the mouth, and was in the state of dangerous convulsions known as "status epilepticus."

10. I was in such an detrimental state of well being that the registered nurses in the critical care unit were told that if I were to slip into unconsciousness they were to perform basic anti-arrhythmia therapy i.e., (death imminent procedures). I was given "a loading dose of dilantin" to counter the effects of the threshhold lowering drugs that were given to me by Dr. Steinour, and Doctor's Ronald Long, and William Ellien, at S.C.I.-Smithfield.

2

11. I began investigating the reasoning of Dr. Long, and Dr. Ellien, when I returned to Smithfield. I found out that in June of '99, I asked Dr. Long, to switch my medication from dilantin because it was causing me to literally shake uncontrolably. Dr. Long. Discontinued my anti-convulsant medication without subtituting another. And soon thereafter I was seen by Dr. Ellien, and he prescribed the seizure threshold lowering drugs despite the fact that he and Dr. Long, both know that an "abrupt withdrawl of dilantin in epileptic patients would precipitate status epilepticus" i.e., severe seizures.

12. The actions of Dr. Long, and Dr. Ellien, put my health, well being, and life in imminent peril by flagitiously disregarding the well known effects of their actions or inactions of dispensing life sustaining and/or altering drugs. By the same token, the ill and extremely vivaciousness of the prison officials and staff alike are horrid at the least. I cannot under any reasoning of logic understand why there need to pummel me while I was handcuffed from behind, shackled at the ankles, and sitting in a chair; and there is no sound reasoning to be found that states it is necessary to spray chemicals into the face and mouth of a fully restrained man.

13. Furthermore, the standing by and watching me have numerous seizures before summoning help is sadistical in nature. I found out about this after I came back to a normal state of mind and read it in the Gettysburg Hospital Emergency Department Report; which revealed: "The sheriff that transported this patient from prison says he was told that this patient had a mall seizure about an hour and a half ago and then a larger one more recently that prompted the decision to transport this gentleman to the Emergency Department."

14. John Jennings, sprayed me in the face and mouth with O.C. spray and helped Thomas Duran, Bruce Cluck, Debbra Hankey, William Orth, Rae Hientzelman, David Vazquez, and Briton Shelton, assult me with their hands and feet while I was fully restrained; and John Doe, who held a video recorder did not help save me from the assult. In addition, the incident was not fully video documented as to stating a fact that I was the cause of my assult.

Date: 10/10/00

Jason E. Benson

2

CERTIFICATE OF SERVICE

I, Jason E. Benson, plaintiff, hereby certify that a copy of the foregoing document was served upon the following, by enclosing a true and correct copy in an envelope addressed as follows, via first class mail:

David L. Schwalm, Esq.
Thomas,Thomas & Hafer
305 North Front Street
P.O.Box 999
Harrisburg, PA 17108

Jason Kantor, Esq.
Post & schell
237 N. Prince Street
Lancaster, PA 17603

James D. Young, Esq.
301 Market Street
Harrisburg, PA 17101

By: _____
Mr. Jason E. Benson, Plaintiff
DS-6483, SCI-Smithfield
P.O.Box 999, 1120 Pike Street
Huntingdon, PA 16652

Date: 10/10/00


Exhibit B
Page 1

# THE GETTYSBURG HOSPITAL

## EMERGENCY DEPARTMENT REPORT

8-31 b

NAME:    BENSON, JASON E
MR:      177556

DATE OF VISIT: 08/30/1999

CHIEF COMPLAINT   Seizure

HISTORY: The sheriff that transported this patient from prison says he was told that this patient had a small seizure about an hour and a half ago and then a larger one more recently that prompted the decision to transport this gentleman to the Emergency Department   He was noted to be bleeding from his mouth following the second seizure   He was apparently transported to the Emergency Department in the police cruiser in a conscious condition but shortly after arriving here, had another seizure which occurred in our parking lot area   This was observed by paramedic staff and was observed to be significant   When I went out to the parking lot area, he was noted to be apparently post ictal with bloody mucous coming from his mouth   His respirations were somewhat labored   He was transported into the Emergency Department for further evaluation

PAST MEDICAL HISTORY   Positive for seizures in the past.   He has been worked up with neurology consults, numerous CT's and I believe EEG   It is believed he has a seizure disorder although he apparently had seizures prompted or precipitated by his multi drug use which includes cocaine, marijuana, and ecstasy   He was seen here a couple of days ago by Dr Steinour for injuries related to a scuffle with prison guards   He apparently was maced at that point but was treated and released with a diagnosis of multiple contusions

MEDICATIONS   Faxed to us from prison are Serzone, Ativan p r n and Imipramine   He apparently is on no anticonvulsants

PHYSICAL:   On arrival in the Emergency Department the patient is pale, diaphoretic, unresponsive with somewhat snoring respirations.   O2 saturation initially was about 88% range   He was somewhat resistant to maintaining oxygen mask on his face but as he became more lucid he became calmer and his O2 saturation improved into the high 90's   Within the period of 15 minutes or so in our department, he was able to look towards me in response to his name being called and able to follow simple commands such as opening his mouth

|  |  |
|---|---|
| HEENT | He has a little minor ecchymosis in his left postauricular area   Pupils are equal   TM's, nares unremarkable   Exam of his mouth I believe shows an abrasion of the right lateral tongue |
| NECK | Appears to be supple |
| LUNGS | Clear anteriorly |
| HEART | Regular rhythm |
| ABDOMEN | Soft |
| EXTREMITIES | He was initially wearing handcuffs but was switched to leg shackles by the sheriff that brought him in   He seems to have movement in all his arms and legs |

TREATMENT/PLAN:   Since this seizure witnessed by us in the Emergency Department was his third in a short period of time, he was given a loading dose of Dilantin 1 gram IV   Blood work has been drawn which shows a white count of 17 6 with a normal H&H and platelet count   Chem panel 2 is pending

Exhibit B

# THE GETTYSBURG HOSPITAL

EMERGENCY DEPARTMENT REPORT

NAME: BENSON, JASON E
MR: 177556

I plan to speak to the next doctor up for unassigned admission about this patient. With three seizures in a short period of time, I feel that he should be admitted to the hospital for more close observation.

IMPRESSION: Multiple seizures

TWH dh
DD 08/30/1999 DT 09/01/1999 11 34

SIGNED BY TIMOTHY W HOLLAND, MD