30

Amo 10/23/00

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
OCT 2 0 2000
PER DEPUTY CLERK

| | | |
|---|---|---|
| JASON E. BENSON | : | CIVIL ACTION |
| V. | : | NO. 1:CV-00-1229 |
| WILLIAM G. ELLIEN, M.D., et al. | : | (Judge Caldwell)<br>(Magistrate Judge Blewitt) |

EXHIBITS OF WILLIAM G. ELLIEN, M.D. IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT OF JASON E. BENSON

# Exhibit    A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jason E. Benson, Plaintiff | : | CIVIL ACTION NO. 1:CV-00-1229 |
| | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| Thomas Duran, et al., Defendants | : | |

FILED SCRANTON

FILED SCRANTON
SEP 11 2000
PER ___ DEPUTY CLERK

AMENDED COMPLAINT

## PARTIES

1.) The plaintiff, Jason E. Benson, was held at Adams County Prison (hereon A.C.P.) during the events described in this complaint.

2.) Defendant Thomas Duran is the Warden of A.C.P.. He is sued in his individual capacity.

3.) Defendants Bruce Cluck and Debra Fanky are the Deputy Wardens of A.C.P.. They are sued in their individual capacity.

4.) Defendant's John Jennings and William Orth are Lieutenants of the A.C.P.. They are sued in their individual capacity.

5.) Defendant Rae Hientzelman is a Sergeant of the A.C.P.. He is sued in his individual capacity.

6.) Defendant's Briton Shelton and David Vazquez are Correctional Officer's of the A.C.P.. They are sued in their individual capacity.

7.) Doctor William J. Steinour is a physician employed at the Gettysburg Hospital. He is sued in his individual capacity.

8. Dr. Ronald Long, physician, and Dr. William Ellien, psychiatrist, are employed at the State Correctional Institution Smithfield. They are sued in their individual capacities.

Plaintiff retains the right to amend any future Jane/John Doe defendants that becomes available through discovery.

## FACTS

1.) On August 25, 1999, plaintiff, a Pennsylvania State Prisoner, was transferred to the Adams County Prison (hereafter referred to as A.C.P.) for the purpose of attending a Post Conviction Relief Act Hearing. (See Exhibit "A")

2.) On August 27, 1999, upon plaintiff's return to A.C.P. from the aforementioned hearing, he was released from the Sheriff's restrains. However, A.C.P. Intake Officer, defendant Briton Shelton, recuffed the plaintiff behind his back, and shackled him about the ankles. This not being the usual protocol for returning inmates, plaintiff inquired as to why he was being

FACTS CONTINUED FROM PAGE 2

recuffed. Defendant Briton Shelton responded, saying, "Hey, I ain't the one!" At this time defendant Lt. John Jennings appeared, saying, "Bring Shithead in to get naked." Indicating a strip search.

3.) Plaintiff was led to a small room adjacent to the intake area. Plaintiff, handcuffed behind his back and shackled about the ankles, was seated in a chair. Defendant Lt. Jennings exited the room leaving plaintiff alone with defendant Briton Shelton, was docile, and no words were exchanged. Defendant Lt. John Jennings returned with Warden Thomas Duran, Deputy Wardens Bruce Cluck and Debra Hankey, Sergeant Rae Hientzelman, and John Doe, who was carrying a video camera, filming. (See Exhibit "B" - (1), (2), and (3).

4.) At this time, Deputy Warden Bruce Cluck ordered plaintiff to strip. Plaintiff, handcuffed and shackled, unable to comply, refused. Notwithstanding, plaintiff was handcuffed behind his back, and shackled about his ankles posing no threat to the defendant's, without warning was shot in the face with O.C. Pepper Foam. Plaintiff, unable to breath or see, attempted to rid himself of the O.C. Pepper Foam, lost his balance, hitting his head against a computer monitor. At this time, defendant Warden Thomas Duran gave the order to "Takem' down!" Seriously injuring plaintiff, defendants Bruce Cluck, Debra Hankey, John Jennings, Rea Hientzelman, and Briton Shelton knocked plaintiff to the ground, hammering plaintiff's head into the floor, twisting plaintiff's hands beyond normal range of motion, kicking and kneeing plaintiff in his back and side. (See Exhibit "C")

5.) After pleading for several minutes for defendant's to get off of him, defendant's relented, throwing plaintiff into a concrete shower stall, where plaintiff fell unconscious. Defendant Thomas Duran forcefully yanked plaintiff out of the shower stall, taking him to the floor again, where defendant Thomas Duran stomped his foot into the plaintiff's neck. After plaintiff was released from defendant Thomas Duran's foot, and removed of the restraints, plaintiff complied to a strip search. A.C.P. has no medical facilities, thus plaintiff requested to be taken to the Gettysburg Hospital Emergency Room. (See Exhibit "D")

6.) Subsequently, the Gettysburg Hospital Emergency Room physician Dr. William J. Steinour, who is familiar with plaintiff's past history of epilepsy, refused to address plaintiff's request for anti-seizure medications, as well as his complaint of losing consciousness, diagnosing the plaintiff with, "Multiple contusions" and released plaintiff to the care of A.C.P..

FACTS CONTINUED FROM PAGE 3

7.) Thereafter, on August 30, 1999, plaintiff was witnessed by defendant's Lt. William Orth and C.O. David Vazquez to be in a state of convulsions, but refused to immediately treat plaintiff until one and one-half (1½) hours later, where they again witnessed plaintiff in a state of serious convulsions, only then calling for the Adams County Sheriff's Department to transport plaintiff to the Gettysburg Hospital. Once plaintiff arrived at the Gettysburg Hospital Emergency Room, he was witnessed by hospital Medical Staff to be in a life threatening state of severe seizures known as "Status Epilepticus," incontinent, and foaming and bleeding from the mouth. Plaintiff was immediately admitted to the Gettysburg Hospital Critical Care Unit with "Imminent Death" orders (See Exhibits "E" (1), (2), (3), and (4)

8.) After further investigation, it was discovered that a series of pharmacological deviations prescribed by defendant's Dr. Ronald Long and Dr. William Ellien of SCI Smithfield precipitated into the aforementioned "Status Epilepticus" attack suffered by plaintiff. (See Exhibit "F"(4))

9.) On June 4, 1999, plaintiff was seen by defendant Dr. Ronald Long. Plaintiff complained that the anti-seizure medication he was on, (a hypantoin derivative called Dilantin) was causing unwanted side effects, and that he wanted to switch back to the anti-seizure medication he was on prior to the Dilantin. Defendant Dr. Ronald Long refused to change the medications, and abruptly discontinued plaintiff's Dilantin, without prescribing any further medications to treat plaintiff's epilepsy disorder. (See Exhibit "G")

10.) On June 15, 1999, plaintiff sent a request to defendant Dr. Ronald Long, asking him to reconsider prescribing an anti-seizure medications of any kind. This request was never responded to. (See Exhibit "H")

11.) On July 24, 1999, plaintiff was seen by defendant Dr. William Ellien, psychiatrist. At this time, plaintiff inquired as to why he wasn't on anti-seizure medications. Defendant Dr. William Ellien, said this wasn't his field of expertise and that I should talk to Defendant Dr. Ronald Long. He then prescribed the anti-depressant drug Imipramine.

12.) The abrupt discontinuance of Dilantin by defendant Dr. Ronald Long, as well as the prescription anti-depressant Imipramine, in combination with the physical and emotional trauma sustained during the use of excessive force in A.C.P. synergistically caused plaintiff to enter into the aforementioned life threatening "Status Epilepticus" seizures that occurred on August 29, 1999. (See Exhibit "I" (1), (2), and Exhibit "F(4)"

CLAIMS FOR RELIEF

1.) The actions of Warden Thomas Duran, Deputy Warden Bruce Cluck, Deputy Warden Debra Hankey, C.O. Briton Shelton, Lt. John Jennings, Sgt. Rea Heintzelman, and Jane/John Doe in using physical force against the plaintiff without need or provocation, and in failing to intervene to prevent the misuse of force was done maliciously and sadistically, and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

2.) Defendant's Lt. William Orth, and C.O. Vazquez's failure to provide adequate medical treatment to plaintiff, placed plaintiff in direct risk of serious injury, disease, and death constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

3.) Adams County Prisons lack of adequately trained medical staff and medical facilities constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

4.) Defendant Dr. William J. Stienour's failure to treat plaintiff as a seizure risk even after plaintiff explained to defendant that he was an epileptic, and not currently on medications, constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

5.) The combined actions of defendant Dr. Ronald Long and Dr. William Ellien in abruptly stopping plaintiff's anti-seizure medication and in prescribing an anti-depressant drug known to lower seizure threshold placed plaintiff in direct risk of serious injury, disease, and death constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

A2: The actions of Lt. Orth and C.O. David Vazquez in ignoring plaintiff while in seizures and post-ictal state constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

A3: The actions of Dr. William J. Steinour in refusing to treat plaintiff as a seizure risk, despite plaintiff reminding him that he was epileptic and not currently on anti-seizure medication constitutes deliberate indifference in violation of the

CLAIMS FOR RELIEF
CONTINUED FROM PAGE 5

Eighth Amendment of the United States Constitution.

A5: The actions of Dr. Ronald Long in abruptly discontinuing plaintiff's anti-seizure medications despite foreknowledge that such actions would cause severe, life threatening seizures constitutes deliberate indifference in violation of the Eighth Amendment of the United States Constitution.

A6: The actions of defendant Dr. William Ellien in prescribing the drug Tofranil known to decrease the seizure threshold, with foreknowledge that plaintiff was epileptic and had been abruptly withdrawn from his anti-seizure medications and the seizure risk associated with the withdrawal of said medications and the addition of the drug Tofranil he prescribed constitutes deliberate indifference to the Eighth Amendment of the United States Constitution.

B-2: $500,000.00 against Dr. Ronald Long and Dr. William Ellien for abruptly discontinuing plaintiff's anti-seizure medication and prescribing an anti-depressant seizure antagonist drug, and causing plaintiff to fall into a life threatening state of seizures known as "Status Epilepticus," and subsequent hospitalization of plaintiff.

# Exhibit    B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL C. PEOPLES, Plaintiff, vs. COMMISSIONER HORN, et al., Defendants.

CIVIL ACTION NO. 3:CV-97-0205

(JUDGE CONABOY)

FILED SCRANTON DEC 31 1997 DEPUTY CLERK

MEMORANDUM AND ORDER

Presently before the Court is a Report and Recommendation filed by United States Magistrate Judge Thomas M. Blewitt. (Doc. 90). The Magistrate Judge recommends that the Plaintiff's complaint be dismissed in its entirety because the Plaintiff has failed to exhaust his administrative remedies. The Plaintiff has not filed any objections to the Magistrate Judge's disposition. Thus, after carefully reviewing the Report and Recommendation only for plain error or manifest injustice, Cipollone v. Liggett Group, Inc., 822 F.2d 335, 340 (3d Cir. 1987) cert. denied, 484 U.S. 976 (1987); Henderson v. Carlson, 812 F.2d 875, 878 (3d Cir. 1987), cert. denied 484 U.S. 837 (19487), we shall adopt the Report and

[1] Although the Plaintiff has filed a motion for enlargement of time to file an objection to the Magistrate Judge's recommended disposition (Doc. 92), we deny it as moot in light of our determination made in this Memorandum and Order. Based upon our review, the Plaintiff has clearly failed to exhaust his administrative remedies. Accordingly, his complaint is dismissed without prejudice.

Recommendation of the Magistrate Judge and dismiss the complaint in its entirety.

FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 claiming numerous violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth amendment rights. (Doc. 1). He is an inmate at the State Correctional Institution at Smithfield and is proceeding pro se. The Plaintiff filed an amended complaint on May 6, 1997. (Doc. 16).

The Defendants have filed a number of motions to dismiss. (Docs. 19, 27, 44, 47 and 50). However, not all of the motions are ripe for disposition. Nevertheless, our preliminary review of this action directs us to dismiss the complaint based upon the Plaintiffs failure to exhaust his administrative remedies.

DISCUSSION

With respect to the applicability of administrative remedies, 42 U.S.C. § 1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This provision makes no distinction between an action for damages, injunctive relief, or both. Thus, prisoners are required to exhaust available administrative remedies prior to initiating a

prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that , after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Central Office Review Committee. If the grievance concerns an alleged medical problem any appeal must be taken to the Central Office Medical Review Committee.

The instant suit concerns the Plaintiffs alleged violation of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. On the question of administrative exhaustion, the complaint includes a question relating to what steps the prisoner took in the state prisoner grievance procedure. The Plaintiff indicates that although he filed "DC-804 Part I Grievances" with respect to his medical and non-medical grievances, they "were put down via semantics, et., etc., etc. And I was pursecuted (sic) because of my efforts to obtain relief." (Doc. 1, p. 2). There is no indication that he appealed the dismissal of this grievance. In that connection, the procedure contemplates several tiers of review and the Grievance Review System is not exhausted when an inmate files a grievance and then takes no other action through established chan-

nels when a grievance is not resolved to his or her satisfaction. Plaintiff's apparent failure to comply with 42 U. S. C. § 1997e(a), as amended, warrants the dismissal of his complaint but without prejudice. See Pew v. Imschweiler, et al., Civil Action No. 96-0760 (M.D. Pa. September 12, 1996) (Kosik, J.); Johnson v. Gillis, et al., Civil Action No. 96-1569 (M.D. Pa. August 29, 1996) (Conaboy, J.); Lubawski v. Horn, et al., Civil Action No. 96-1371 (M.D. Pa. July 29, 1996) (Rambo, C.J.); Smith v. Giza, Civil Action No. 96-1167 (M.D. Pa. July 2, 1996) (Rambo, C.J.); Brooks v. Superintendent Lunk of Div. 10, et al., No. 96C3221, 1996 WL 308268 (N.D. Ill. June 5, 1996).

Richard P. Conaboy
United States District Judge

DATE: 12/31/97

# Exhibit    C

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN SYKES | : | CIVIL ACTION |
| | : | NO. 99-6208 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN HORN, et al., | : | |
| | : | |
| Defendants. | : | |

FILED
MAR 24 2000
MICHAEL E. KUNZ, Clerk
BY_______ Dep. Clerk

ORDER

**AND NOW**, this **21st** day of **March, 2000**, after a hearing in which all of the parties participated, it is hereby **ORDERED** that:

1. Defendant Khin's motion to dismiss plaintiff's amended complaint (doc. # 5) and the Commonwealth defendants' motion to dismiss plaintiff's amended complaint (doc. # 7) are **GRANTED**.[1]

---

1. Plaintiff brought this action claiming violations of 42 U.S.C. § 1983, the Pennsylvania Constitution, and Pennsylvania common law. For purposes of these motions, the following facts taken from plaintiffs amended complaint are deemed true. The prison's plumbing detail, to which plaintiff was assigned, was trying to repair a leak in the prison's hot water circulation loop. As part of that effort, plaintiff was instructed to dig a trench on prison property while 200 degree water was pouring out of a nearby pipe into the trench. The ground gave way beneath plaintiff, who fell into the boiling water, suffering serious burns. Defendants, comprised of medical and prison personnel, failed to take action to lessen plaintiff's pain and instead intentionally increased his pain by not treating his injuries and by exacerbating those injuries through their conduct.

Defendants seek to dismiss plaintiff's amended complaint contending, among other things, that plaintiff has failed to exhaust his prison administrative remedies. Specifically, defendants point to § 1997e(a) of the Prison Litigation Reform Act of 1996 ("PLRA"), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

This court may take judicial notice of the fact that the Pennsylvania Department of Corrections (PDOC) has in place (and had in place at the time of facts giving rise to the instant allegations) a Consolidated Inmate Grievance System available to all state prisoners, which is set forth in Department of Corrections Administrative Directive (DC-ADM) 804. See Fed. R. Evid. 201(b); Peters v. Delaware River Port Auth., 16 F.3d 1346, 1356 n.12 (3d Cir. 1994); see also City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (finding that to resolve 12(b)(6) motion, court may properly look at public records ... in addition to allegations in complaint). This grievance system allows for prisoners to pursue informal resolution of problems concerning prison conditions, to then file a written grievance with the prison administration, and, if the matter is not resolved to the prisoner's liking, to seek an appeal. Indeed, plaintiff does not dispute that he did not pursue the administrative channels or that the PDOC had in place, at the time of his injuries, such an administrative process.

The Third Circuit has recently addressed the PLRA's new exhaustion requirement in Booth v. Churner, ___ F.3d ___, Nos. 97-7487 and 97-7488, 2000 WL 251627 (3d Cir. Mar. 7, 2000), and Nyhuis v. Reno, ___ F.3d ___, No. 98-3543, 2000 WL 157531 (3d Cir. Feb. 15, 2000). In those cases, the Third Circuit has held that before a plaintiff can bring a suit pursuant to § 1983, he or she must exhaust his or her administrative remedies, regardless of whether exhaustion would be "futile."

Nyhuis involved a prisoner who brought suit pursuant to § 1983 claiming that his personal belongings had been improperly confiscated in violation of his constitutional rights. In the instant case, plaintiff characterizes his amended complaint as centering not around prison conditions, but rather as focused on allegations of excessive force. See Pl.'s Supplemental Mem. of Law in Opp'n to Mot. (doc. # 13) at 1-2 (stating that plaintiff's

# Exhibit    D

JAN-29-1997

FILED
JAN 2 0 1997
MICHAEL E. KUNZ, Clerk
By ______ Dep. Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BILAL A. MUHAMMAD, Plaintiff, | : | Civil Action |
| v. | : | |
| DR. ARNOLD SCHWARTZ, DR. JOHN ROEDER and DR. JOSEY MALABRANCH, Defendants. | : | No. 96-CV-6027 |

**MEMORANDUM AND ORDER**

Van Antwerpen, J. January 27, 1997

I. INTRODUCTION

On August 29, 1996 Plaintiff Bilal A. Muhammad filed a complaint against Dr. Arnold Schwartz, Dr. John Roeder, and Dr. Josey Malabranch pursuant to 42 U.S.C. §1983 alleging cruel and unusual punishment via deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Mr. Muhammad also asserts a Pennsylvania state law claim of medical malpractice. This court has jurisdiction via §1983, and through our assertion of pendent jurisdiction over the state law claim per 28 U.S.C. § 1367.

In their instant motion, Dr. Schwartz and Dr. Roeder request that the action against them be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dr. Malabranch was never properly served; the complaint against her is therefore dismissed without prejudice. The issue before us consists solely of whether Mr. Muhammad alleged sufficient facts within his complaint to support his § 1983 action against Dr. Schwartz and Dr. Roeder.

EXHIBIT
A

JAN-29-1997 05:54

## II DISCUSSION

### A. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this court must dismiss a complaint if it fails to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim unless the plaintiff has alleged no set of facts in support of his claim which would entitle him to relief. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Haines v. Kerner, 404 U.S. 519, 520 (1972). This court's inquiry is essentially limited to the content of the complaint. Biesenbach v. Guenther, 588 F.2d 400, 402 (3d Cir. 1978). All allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996); Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993). However, "we are not required to accept legal conclusions either alleged or inferred from the pleaded facts." Kost v. Kozakiewicz, 1 F.3d 176, 183(3d Cir. 1993). Further, if "the facts alleged in the complaint, even if true, fail to support the ... claim," we must dismiss the complaint. Id. (citing Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). In a Section 1983 action, a motion to dismiss will be granted if the plaintiff does not sufficiently allege in his complaint the deprivation of any right secured in the Constitution. Nami, 82 F.3d at 65.

B. Factual Allegations

We therefore review Mr. Muhammad's allegations as contained solely within his complaint in the light most favorable to him. Mr. Muhammad is currently incarcerated at S.C.I. Graterford Prison in Graterford, Pennsylvania. He states in his complaint that on December 19, 1994 at approximately 5:00 p.m. he was rushed to the dispensary with complaints of severe stomach and back pains. Complaint at 2. Mr. Muhammad was seen by Defendant Dr. Roeder, and complained to him that was vomiting and thought he had food poisoning. Mr. Muhammad alleges that Dr. Roeder then prescribed Donatol and Maalox to him; however, Dr. Roeder did not take "blood pressure readings and/or a finger stick for blood sugar reading along with temperature readings to determine whether infection was present." Complaint at 3. Mr. Muhammad alleges that his medical records indicated a pre-existing problem with diabetes, hypertension, and kidney stones. Id. In addition, he states that a nurse at the infirmary "attempted to convince defendant Dr. Roeder that [he] had problems in the past dealing with kidney stones." Id. Mr. Muhammad does not allege that he suggested any alternative diagnosis to Dr. Roeder other than his initial complaint of food poisoning.

Later on December 19, 1994, at approximately 8:00 p.m., Mr. Muhammad alleges that he was brought back to the dispensary to see Dr. Malabranch for vomiting and pains. After a discussion about Mr. Muhammad's concerns with his kidneys, Dr. Malabranch

prescribed Demoral. Mr. Muhammad alleges that "at no time [were his] procedural vital signs taken by defendant Dr. Malabranch." Complaint at 5. Mr. Muhammad then returned to his cell; he states that he was in severe pain. He alleges that a nurse requested that he be sent to a hospital, but this request was denied at that time. Id.

At approximately 6:00 a.m. on December 20, 1994 Mr. Muhammad states that he applied for sick call for treatment "relating to his stomach and back pains" and vomiting. Complaint at 7. He was now seen by Dr. Schwartz, who prescribed Motrin for the pain and referred him to the Medical Director, Dr. Dennis Moyer.[1] Dr. Moyer ordered that x-rays be taken and placed Mr. Muhammad on medical layin from work. Mr. Muhammad returned to his cell and, being in pain, took the Motrin previously prescribed. Id.

Two days later, on December 22, 1994, Mr. Muhammad signed up for "routine sick call" and was seen again by Dr. Schwartz. He complained of "severe back pains associated with kidney stone presence and intense chills, along with vomiting." Complaint at 7. Mr. Muhammad alleges that Dr. Schwartz did not take his blood pressure, but did prescribe Motrin. He also alleges that approximately one half hour later he "fell to the floor" and was brought to the dispensary. Complaint at 8. There, he was seen by Dr. Moyer. Mr. Muhammad's allegations are unclear subsequent to that, but it appears that he was admitted

1. Dr. Moyer is not a defendant in this matter.

to Suburban General Hospital on December 24, 1994 with severe kidney problems.

C. Deliberate Indifference

1. Legal Standard

The gravamen of Mr. Muhammad's Section 1983 action is that Drs. Roeder and Schwartz subjected him to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the states by the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660 (1962). Because an inmate must rely on prison officials for their medical care, denial of same can result in pain and suffering that rises to the level of a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). However, the law is clear that failure to provide adequate medical treatment is a violation of the Eighth Amendment only when it results from "deliberate indifference to a prisoner's serious illness or injury." Id. at 105.

The Supreme Court clarified this standard in Wilson v. Seiter, 501 U.S. 294 (1991). They held that "to establish an Eighth Amendment violation an inmate must allege both an objective element -- that the deprivation was sufficiently serious -- and a subjective element -- that a prison official acted with a sufficiently culpable state of mind, i.e. deliberate indifference." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Wilson 501 U.S. at 304); Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir. 1992). The first element requires that the

doctor's act or omission "result in the denial of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Farmer v. Brennan, --- U.S. ---, 114 S.Ct. 1970, 1977 (1994) ("the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm"). To be sure, Mr. Muhammad has alleged a very serious injury: that he suffered bilateral kidney failure. For purposes of this discussion only, we will accept that this is sufficient to satisfy the first element.

However, it is not clear that he has alleged sufficient facts to show the second element: that Drs. Schwartz and Roeder acted with a sufficiently culpable state of mind. The Supreme Court has held that when a prison official commits an act or omission that does not purport to be "punishment," there must be more than an ordinary lack of due care; there must be deliberate indifference, or the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104; Whitley v. Albers, 475 U.S. 312, 319 (1985); Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992). In Farmer v. Brennan, 114 S.Ct. 1970 (1994), the Supreme Court discussed "deliberate indifference" in more detail. It is clear that the required state of mind is more than negligence in diagnosing or treating a medical condition, but less than acts or omissions committed for the very purpose of causing harm or with the knowledge that the specific harm will result. Farmer, 114 S.Ct. at 1978. The Farmer court adopted subjective recklessness as the appropriate test, holding that a "prison official cannot

be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Id. at 1979; see also, Nami, 82 F.3d at 67. If the official should have perceived a risk, but did not, his acts or omissions cannot establish a constitutional violation. Alleging obviousness or constructive notice is insufficient to state a claim because liability may not be prefaced on these alone, and if a prison official was not aware of even an obvious risk there can be no constitutional violation. Farmer, 114 S.Ct. at 1980, 1982.

In this light, it is clear that to establish his claim, Mr. Muhammad must allege facts that at a minimum show recklessness on the part of Dr. Schwartz and Dr. Roeder.[2] It is insufficient to allege that the doctors "misdiagnosed [his] condition, that [the doctors'] method of physical examination and treatment may not have followed community standards, or that [the doctors] disagreed with [his] suggested course of treatment." Bellecourt v. United States, 994 F.2d 427, 431 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994); see also Estelle, 429 U.S. at 106. Malpractice, while not condoned by this court, is simply

---

2. Some courts have held that because the element of deliberate indifference involves a discussion of intent, this sort of Eighth Amendment claim cannot be resolved at summary judgment; however, the complaint is certainly subject to dismissal for failure to state a claim if no such subjective intent is alleged in the first place. See Young 960 F.2d at 360.

not actionable under Section 1983 See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993); Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989). Malpractice indicates negligence on the part of the physician, and "negligence in the administration of medical treatment is not itself actionable under the Constitution." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 762 (3d Cir. 1979) (citing Estelle, 429 U.S. at 105); see also Jordan v. Fox, 20 F.3d 1250, 1277 (3d Cir. 1994). Neither, certainly, is a disagreement between the plaintiff and the doctor on the medical diagnosis. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990). Because "there may, for example, be several ways to treat an illness,' prison doctors have been accorded considerable latitude in the diagnosis and treatment of prisoners. Durmer, 991 F.2d at 67; Inmates of Allegheny County Jail, 612 F.2d at 762; White, 897 F.2d at 110.

In finding deliberate indifference, courts have generally noted length of time without treatment, the types of complaints made by the prisoner, and the specific responses of the doctor. See Durmer, 991 F.2d at 67 (prisoner went over seven months without treatment, prisoner complained repeatedly of pain over that time, non-medical reasons given for denial); White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)(well over ten different instances with several prisoners over many months, repeated complaints, direct comments and actions by doctor which

prescribed Donatol and Maalox for treatment of the pain and possible food poisoning, and returned Mr. Muhammad to his cell. Mr. Muhammad does not allege that Dr. Roeder was involved subsequent to this. He does allege that a Nurse, Connie Chubb, told Dr. Roeder about his history of kidney stones.

These allegations are insufficient, even when taken in a light most favorable to Mr. Muhammad, to make out a §1983 action. Mr. Muhammad does not allege that Dr. Roeder actually knew that the prescriptions issued to Mr. Muhammad would cause further harm. He merely disagrees with the diagnosis, with the ease of twenty-twenty hindsight. He does not allege that Dr. Roeder knew that Mr. Muhammad faced the serious risk of kidney failure, and issued a prescription for Donatol and Maalox in reckless disregard for that risk. He merely states that a history of kidney stones and diabetes was listed in his medical records. This is not deliberate indifference per Farmer v. Brennan. Without alleging actual knowledge, any reference to obviousness via the medical records available, or what the doctor "should have known" is unavailing.

Dr. Schwartz saw Mr. Muhammad twice. The first time was on the morning of December 20, 1996 at a "sick call screening." Mr. Muhammad alleges in his complaint that he had continued stomach and back pains, and vomiting. Dr. Schwartz prescribed Motrin to alleviate his pain, and referred him to the Medical Director, Dr. Moyer. Mr. Muhammad does not allege any conversation or discussion of his case between Dr. Schwartz and

his supervisor, only that the doctor screened him, prescribed him medication for his pain, and referred him to the director.

Dr. Schwartz did not see Mr. Muhammad again until two days later, on December 22, 1994, when Mr. Muhammad signed up for "routine sick call." Dr. Schwartz listened to Mr. Muhammad's complaints, and again prescribed Motrin for his pain. Mr. Muhammad does not state whether or not he took that medication, but it was soon thereafter that he was brought to the dispensary to again be examined by Dr. Moyer. Mr. Muhammad does not allege that Dr. Schwartz had any other contact with him. He does not allege that Dr. Schwartz did or said anything with the knowledge that his actions would cause Mr. Muhammad further harm. Rather, he disagrees with his method of diagnosis, and the diagnosis itself. He does not contest that at any time his complaints were ignored, or that prescriptions were not provided. Mr. Muhammad, simply, has alleged malpractice; in this case, his allegations do not rise to the level required by the deliberate indifferent indifference. See Farmer 114 S.Ct. at 1984; Bellecourt, 994 F.2d at 431.

For both Dr. Schwartz and Dr. Roeder, Mr. Muhammad asserts that their diagnosis was wrong, and that they therefore delayed his admittance at a local hospital. However, Mr. Muhammad first complained of pains in the afternoon of December 19, 1994, and was admitted to the hospital on December 24, 1994 after being in Dr. Moyer's care for two days. While Mr. Muhammad undoubtedly suffered a severe injury, he has not -- and, it

seems, can not -- alleged that Drs. Schwartz and Roeder both were
actually aware of the risks to his health caused by their
actions, and that they recklessly disregarded those risks.  Mere
mention of a medical record listing a history of kidney stones is
insufficient to show that the risk to Mr. Muhammad was so obvious
it had to have been known.  Cf., Farmer, 114 S.Ct. at 1981.  The
facts reveal instead a pattern of Mr. Muhammad complaining of
pain and receiving a responsive prescription, and then within
five days of the onset of pain being sent to an outside hospital
for further treatment.  While the negligent malpractice of
medicine upon prisoners is unfortunate and will certainly not be
condoned by this court, the actions of Dr. Schwartz and Dr.
Roeder do not rise to "cruel and unusual punishment" prohibited
by the Eighth and Fourteenth Amendment.  The complaint must
therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for
failure to state a claim.


D.  State Malpractice Claim

        We had originally exerted jurisdiction over the second
count in Mr. Muhammad's complaint, a state malpractice claim, via
pendant jurisdiction.  However, because we have dismissed the
federal Section 1983 claim above, we have no independent basis to
hear the state law claim.  Ordinarily, when a court dismisses a
federal claim early on in the case, it will not use its
discretion to retain jurisdiction over any pendant claims, but
rather will dismiss the state claims without prejudice to raise

the matters in state court. Angst v. Mack Trucks, 969 F.2d 1530, 1534-5 (3d Cir. 1989); Panis v. Mission Hills Bank, 60 F.3d 1486 (10th Cir. 1995), cert. denied, 116 S.Ct. 1045 (1996); See 28 U.S.C. § 1367(c)(3). We see no reason to do otherwise in this case. We do not express any opinion on the outcome of the malpractice claim in the appropriate state court.

## III. CONCLUSION

Despite an examination of Mr. Muhammad's complaint in a light most favorable to him, we find that he has not alleged facts sufficient to make out a Section 1983 claim.

For the foregoing reasons, we will grant Defendants Dr. Schwartz and Dr. Roeder's motion to dismiss count one of Mr. Muhammad's complaint for failure to state a claim. We will dismiss Mr. Muhammad's pendant state malpractice claim without prejudice to bring the claim in the appropriate state court. We also dismiss without prejudice the complaint against Dr. Malabranch for failure to provide service.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL C. PEOPLES, Plaintiff,
vs.
COMMISSIONER HORN, et al. Defendants.

CIVIL ACTION NO. 3:CV-97-0205

(JUDGE CONABOY)

FILED SCRANTON DEC 31 1997 DEPUTY CLERK

MEMORANDUM AND ORDER

Presently before the Court is a Report and Recommendation filed by United States Magistrate Judge Thomas M. Blewitt. (Doc. 90). The Magistrate Judge recommends that the Plaintiff's complaint be dismissed in its entirety because the Plaintiff has failed to exhaust his administrative remedies. The Plaintiff has not filed any objections to the Magistrate Judge's disposition.[1] Thus, after carefully reviewing the Report and Recommendation only for plain error or manifest injustice, Cipollone v. Liggett Group, Inc., 822 F.2d 335, 340 (3d Cir. 1987) cert. denied, 484 U.S. 976 (1987); Henderson v. Carlson, 812 F.2d 875, 878 (3d Cir. 1987), cert. denied 484 U.S. 837 (19487), we shall adopt the Report and

[1] Although the Plaintiff has filed a motion for enlargement of time to file an objection to the Magistrate Judge's recommended disposition (Doc. 92), we deny it as moot in light of our determination made in this Memorandum and Order. Based upon our review, the Plaintiff has clearly failed to exhaust his administrative remedies. Accordingly, his complaint is dismissed without prejudice.

Recommendation of the Magistrate Judge and dismiss the complaint in its entirety.

FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 claiming numerous violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth amendment rights. (Doc. 1). He is an inmate at the State Correctional Institution at Smithfield and is proceeding pro se. The Plaintiff filed an amended complaint on May 6, 1997. (Doc. 16).

The Defendants have filed a number of motions to dismiss. (Docs. 19, 27, 44, 47 and 50). However, not all of the motions are ripe for disposition. Nevertheless, our preliminary review of this action directs us to dismiss the complaint based upon the Plaintiffs failure to exhaust his administrative remedies.

DISCUSSION

With respect to the applicability of administrative remedies, 42 U.S.C. § 1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This provision makes no distinction between an action for damages, injunctive relief, or both. Thus, prisoners are required to exhaust available administrative remedies prior to initiating a

prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that , after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Central Office Review Committee. If the grievance concerns an alleged medical problem any appeal must be taken to the Central Office Medical Review Committee.

The instant suit concerns the Plaintiffs alleged violation of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. On the question of administrative exhaustion, the complaint includes a question relating to what steps the prisoner took in the state prisoner grievance procedure. The Plaintiff indicates that although he filed "DC-804 Part I Grievances" with respect to his medical and non-medical grievances, they "were put down via semantics, et., etc., etc. And I was pursecuted (sic) because of my efforts to obtain relief." (Doc. 1, p. 2). There is no indication that he appealed the dismissal of this grievance. In that connection, the procedure contemplates several tiers of review and the Grievance Review System is not exhausted when an inmate files a grievance and then takes no other action through established chan-

nels when a grievance is not resolved to his or her satisfaction. Plaintiff's apparent failure to comply with 42 U. S. C. § 1997e(a), as amended, warrants the dismissal of his complaint but without prejudice. See Pew v. Imschweiler, et al., Civil Action No. 96-0760 (M.D. Pa. September 12, 1996) (Kosik, J.); Johnson v. Gillis, et al., Civil Action No. 96-1569 (M.D. Pa. August 29, 1996) (Conaboy, J.); Lubawski v. Horn, et al., Civil Action No. 96-1371 (M.D. Pa. July 29, 1996) (Rambo, C.J.); Smith v. Giza, Civil Action No. 96-1167 (M.D. Pa. July 2, 1996) (Rambo, C.J.); Brooks v. Superintendent Lunk of Div. 10, et al., No. 96C3221, 1996 WL 308268 (N.D. Ill. June 5, 1996).

Richard P. Conaboy
Richard P. Conaboy
United States District Judge

DATE: 12/31/97

SEP 30 1996

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY GARRETT BROWN

v. : CIVIL ACTION NO. 96-3149

ROBERT O'CONNOR, M.D., et al. :

ORDER

AND NOW this 30 day of September, 1996 upon consideration of defendants' motions to dismiss plaintiff's amended complaint and the parties' filings related thereto it is hereby ORDERED that defendants' motions are GRANTED and the Complaint is DISMISSED.

Plaintiff alleges that: (1) defendant Dr. O'Connor failed to examine plaintiff or provide him a requested pillow when plaintiff reported "extreme pain in [his] neck and back . . . from not having a pillow;" and (2) defendants Shannon and Smith, who received a grievance about Dr. O'Connor, "went along with Doctor O'Connor in the denial."

In reviewing defendants' motions to dismiss I must accept plaintiff's factual allegations as true and construe them favorably to plaintiff. Colburn v. Upper Darby Township, 838 F.2d 663, 664-65 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989). Even accepting the complaint's allegations as true and construing them liberally in light of plaintiff's pro se status, see Haines v. Kerner, 404 U.S. 519, 520 (1972), I cannot find that plaintiff has stated a claim of deliberate indifference to a serious medical need.

The amended complaint raises no allegations against Smith and Shannon that were not present in the original complaint. Plaintiff's claims against Smith and Shannon must therefore be dismissed for the reasons stated in this Court's Order dated August 19, 1996.

Plaintiff's claim against Dr. O'Connor must also be dismissed. As stated in this Court's

ENTERED: 10/1/96
CLERK OF COURT

EXHIBIT B

Order dated August 19, 1996 dismissing plaintiff's original complaint.

> [a] prison official's conduct does not violate a prisoner's constitutional rights "unless the official knows of and disregards an excessive risk to inmate health or safety. . . . The official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). Thus, to state a claim a complaint must allege both the objective fact that there is a substantial risk of serious harm and the subjective fact that the official was aware of the serious risk. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The amended complaint does not meet these requirements that were explicitly set forth for plaintiff. The amended complaint alleges "I told Doctor O'Connor that the extreme pain in my neck and back was from not having a pillow to support my neck while sleeping. . . . Doctor O'Connor refused to examine me." It does not allege any facts that would support an inference that Dr. O'Connor subjectively knew that denying plaintiff a pillow would pose a substantial risk of serious harm. Even if I were to assume that the lack of a pillow actually posed a substantial risk of serious harm, the amended complaint would still fail to state a claim because it does not allege that Dr. O'Connor was aware of that risk.

THOMAS N. O'NEILL, JR., S.J.

# Exhibit    E

Telephoned to Judge Buckwalter [handwritten]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BENNIE OUTTERBRIDGE, as Administratrix of the ESTATE OF EDDIE SAMUEL OUTTERBRIDGE and in her own right,

Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al.

Defendants.

CIVIL ACTION NO. 00-1541

FILED
JUN - 8 2000
MICHAEL E. KUNZ, Clerk
By ________ Dep. Clerk

**MEMORANDUM**

BUCKWALTER, J. June 7, 2000

Presently before the Court is the Medical Defendants' Motion to Dismiss. For the reasons stated below, the Motion is Granted.

## I. BACKGROUND

Plaintiff is the alleged Administratix of a decedent prisoner, Eddie Samuel Outterbridge ("Outterbridge"). She filed the Complaint on March 24, 2000 alleging federal and state claims against both the moving Medical Defendants[1] and the non-moving Commonwealth Defendants. This Court dismissed all claims against the Commonwealth Defendants by an

1. The Medical Defendants will be the term used to refer to the following Defendants who provided medical services at SCI-Mahanoy: Lazlo Kiraly, M.D. ("Kiraly"), John Hipps, M.D. ("Hipps"); Stanley Hoffman, M.D. ("Hoffman"); John Rush, P.A.C. ("Rush"); Ronald Scott, P.A.C. ("Scott"). All five of these individuals were hired by or contracted with Defendant Correctional Physician Services ("CPS"). During the time period relevant to this suit, CPS entered into a contract to provide medical services to inmates at SCI-Mahanoy.

(1957)). The court assumes the truth of plaintiff's allegations, and draws all favorable inferences therefrom. See, Rocks v. City of Philadelphia, 868 F.2d. 644, 645 (3d. Cir. 1989). However, conclusory allegations that fail to give a defendant notice of the material elements of a claim are insufficient. See Sterling v. SEPTA, 897 F.Supp. 893, 895 (E.D. Pa.1995). The pleader must provide sufficient information to outline the elements of the claim, or to permit inferences to be drawn that these elements exist. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d. Cir. 1993). A court must determine whether, under any reasonable reading of the pleadings, the law allows the plaintiff a remedy. See, Nami v. Fauver, 82 F.3d 63, 65 (3d. Cir. 1996).

## III. DISCUSSION

### A. Count 1: § 1983 claim for violation of the Eighth Amendment

The Plaintiff has included all of the Medical Defendants in Count 1. The Supreme Court has declared that, in accordance with the " 'broad and idealistic, concepts of dignity, civilized standards, humanity, and decency' " embodied in the Eighth Amendment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102(1976). Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Id. at 104. To be in violation of the Eighth Amendment, there must be both deliberate indifference on the part of the officials and a serious medical condition. Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

The Supreme Court adopted a subjective test for what would constitute an Eighth Amendment violation in Farmer v. Brennan, 511 U.S. 825, 837 (1994):

> "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". Id.

Therefore, the Court continued, "... an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment". Id. at 838. Therefore, to state a § 1983 claim for a denial of medical treatment, the Plaintiff must specifically allege that each defendant was aware of the serious risk Outterbridge faced and that the person disregarded such risk.

After reviewing the Complaint, the Court finds that the Plaintiff has never alleged that any of the Medical Defendants drew inferences that Outterbridge faced a risk of serious harm. The Complaint repeats that each Defendant continued to treat Outterbridge with INH even though he complained of its effects. Plaintiff also alleges that the Medical Defendants "consciously disregarded" abnormal findings resulting from the ingestion of INH. While these facts suggest medical malpractice, they do not sufficiently allege that the Defendants knew of and disregarded the serious risk faced by decedent Outterbridge. Therefore, the Plaintiff's §1983 claims against the Medical Defendants will be dismissed.

Plaintiff has likewise failed to state a cause of action against CPS, as the employer of the individual Medical Defendants. The Third Circuit has repeatedly concluded that no respondeat superior liability exists pursuant to § 1983 under any circumstance. See Robinson v. City of Pittsburgh, 120 F.3d 1285 (3d Cir. 1997). Nevertheless, a private corporation may be held liable for a constitutional violation if it knew of and acquiesced in the deprivation of the

plaintiff's rights. See Miller v. Hoffman, 1998 U.S. Dist. LEXIS 9934. A Plaintiff must state that the corporation, with deliberate indifference, established and maintained a policy which directly caused plaintiff's constitutional harm. See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). The Plaintiff has not alleged any policies of CPS that led to constitutional harm suffered by Outterbridge.

B. Count 2: Conspiracy to Violate the Eighth Amendment:

The elements of a conspiracy are a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose. Ammlung v. City of Chester, 494 F.2d 811, 814 (3rd Cir.1974). The plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events. See Panayotides v. Rabenold, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999). Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy and certain other actions of the alleged conspirators will be deemed sufficient. See Rose v. Bartle, 871 F.2d. 331,366 (3d Cir. 1989). Drawing inferences in favor of the Plaintiff, it can be assumed that the object of the conspiracy was to violate Outterbridge's constitutional rights by remaining deliberately indifferent to his medical needs. It can also be inferred that the period of the conspiracy lasted from the time IHN treatment was started until April 15, 1998, the day Outterbridge was transferred out of SCI-Mahanoy. However, there are no specific allegations that the Medical Defendant agreed to violate Outterbridge's right to medical treatment. In order to survive a motion to dismiss, the Plaintiff can not baldy claim that Defendants actions and omissions constituted a conspiracy without alleging what constituted concerted action. As stated

above, the Court finds that the Plaintiff did not sufficiently allege a substantive Eighth Amendment violation. Plaintiff has also failed to state a claim of conspiracy to violate decedent Outterbridge's constitutional rights. Therefore, Count 2 will be dismissed against all of the Medical Defendants.

## IV. CONCLUSION

The Plaintiff has failed to allege any claims against the Medical Defendants that would give this Court jurisdiction under 28 U.S.C. § 1331. Since the Court no longer has original jurisdiction over any claim in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims (see 28 U.S.C. § 1367(c)), unless the plaintiff can successfully replead its alleged § 1983 claim.

An order follows.

JUN-08-2000 15:48 P.07/09

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENNIE OUTTERBRIDGE, as Administratrix of the ESTATE OF EDDIE SAMUEL OUTTERBRIDGE and in her own right, Plaintiff, | : | CIVIL ACTION NO. 00-1541 |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al. Defendants. | : | |

**ORDER**

AND NOW, this 7th day of June, 2000, upon consideration of the Medical Defendants' Motion to Dismiss (Docket No. 5), and the Plaintiff's Response thereto (Docket No. 10); it is hereby **ORDERED** that the Motion is **GRANTED** as to Counts 1 and 2 with respect to the Medical Defendants. It is **FURTHER ORDERED** that plaintiff is granted leave to file an amended complaint if he can do so in accordance with this opinion.

If no such amended complaint is filed on or before **June 30, 2000**, the court, on motion of defendant, will dismiss Counts 1 and 2 and decline to exercise supplemental jurisdiction over the state claims.

COPIES BY FAX ON: ____________

TO: ____________

TERED: 6-8-00

CLERK OF COURT

BY THE COURT:

RONALD L. BUCKWALTER, J.

6/8/00