IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON ERIC BENSON,           : CIVIL ACTION NO. 1:CV-00-1229
         Plaintiff           :
                             : (Judge Caldwell)
vs.                          :
                             :
THOMAS DURAN, et al.,        : (Magistrate Judge Blewitt)
         Defendants          :

## APPENDIX OF EXHIBITS IN SUPPORT OF DEFENDANT, DR. LONG'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Exhibit "A"     Consolidated Inmate Grievance Review System DC-ADM 804.

Exhibit "B"     Peoples v. Commissioner Horn, No. 3:CV-97-0205, Judge Conaboy (December 31, 1997).

Respectfully submitted,

LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.

Date: 10/24/00

By: _____
James D. Young, Esquire
Attorney I.D. #53904
P. O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633
Attorney for Defendant,
Ronald Long, M.D.

# Exhibit A

Case 1:00-cv-01229-WWC   Document 34   Filed 10/24/2000   Page 2 of 18



| Policy Subject: | Policy Number: |
|---|---|
| Consolidated Inmate Grievance Review System | DC-ADM 804 |
| Date of Issue: July 20, 1994 | Authority: Joseph D. Lehman, Commissioner | Effective Date: Oct. 20, 1994 |

### I. AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

### II. PURPOSE

It is the purpose of this Administrative Directive to establish policy regarding the Consolidated Inmate Grievance Review System and to ensure that inmates have an avenue through which resolution of specific problems can be sought.

This directive sets forth procedures for the review of Inmate Grievances not already covered by other Administrative Directives and policies. It also provides the method through which review procedures established by other directives are to be integrated with the procedures outlined in this directive.

### III. APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

### IV. DEFINITIONS

A. Grievance -

The formal written expression of a complaint submitted by an inmate related to a problem encountered during the course of his/her confinement.

B. Grievance Coordinator -

The Corrections Superintendent's Assistant in an institution or the Assistant to the Regional Director in Community Corrections who is responsible for the overall administration of the Inmate Grievance System in that facility\region. This includes all data collection, tracking and statistical reporting. At the direction of the Facility Manager or Community Corrections Regional Director, the Grievance Coordinator may be called upon to provide Initial Review of certain grievances.

EXHIBIT "A"

804-1

DC-ADM 804

C. Grievance Officer -

An appropriate Department Head or Management Level staff person designated by the Facility Manager or CC Regional Director to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility, e.g., a Unit Manager would be assigned to provide Initial Review of a grievance from the housing unit. If the grievance arises from the Food Services Area, the Grievance Officer designated by the Facility Manager shall be the Food Services Manager, likewise, the Corrections Health Care Administrator would be the Grievance Officer for a grievance related to a Health Care issue.

D. Central Office Review Committee (CORC) -

A committee of at least three (3) Central Office staff appointed by the Commissioner of Corrections to include the Commissioner, Executive Deputy Commissioner and Chief Counsel or their designees.

With the exception of appeals from disciplinary action under DC-ADM 801 and appeals arising from Health Care or medical treatment grievances, the CORC Shall have responsibility for direct review of all Inmate Appeals for Final Review.

E. Central Office Medical Review Committee (COMRC) -

A committee appointed by the Commissioner to include the Director of the Bureau of Health Services and relevant Bureau staff. The COMRC shall have responsibility for direct review of grievance appeals related to Health Care and medical treatment issues.

F. Initial Review -

The first step in the formal Inmate Grievance Process for all issues except those already governed by other specified procedures (see VI E). All reviews conducted below the level of Facility Manager or Regional Director are considered initial reviews.

G. Appeal from Initial Review -

The first level of appeal of a decision rendered at Initial Review. This appeal is directed to the Facility Manager or Community Corrections Regional Director.

**An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.**

**Only issues raised at Initial Review shall be appealed.**

H. Final Review -

Upon completion of Initial Review and appeal from Initial Review, an inmate may seek Final Review from the Central Office Review Committee (CORC), for any issue involving continued non-compliance with Department of Corrections directives or policy, the ICU Consent Decree or other law.

V. **POLICY**

A. It is the policy of the Pennsylvania Department of Corrections that every individual committed to its custody shall have access to a formal procedure - the Consolidated Inmate Grievance Review System - through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue there shall be a forum for review and an avenue of appeal, but only one.

DC-ADM 804

B. Informal Resolution of Problems - All inmates are expected to attempt to resolve problems or differences with staff on an informal basis through direct contact or by sending a request slip to appropriate staff. Action taken by the inmate to resolve the situation must be indicated on the grievance form, Section B.

The Grievance Form, DC 804, Part I, is available in each Housing Unit or upon request from Unit staff. This is the proper form to be used for submission of a grievance and it should be completed according to the directions provided.

**It is required that a genuine effort be made to resolve the problem before the grievance system is used. The inmate must document these efforts in Section B of the Grievance Form. Failure to do so may result in the grievance being returned to the inmate without action. The inmate may then refile the grievance with Section B properly completed.**

C. Any inmate using the grievance system shall do so in good faith and for good cause.

No one shall be punished, retaliated against or otherwise harmed for good faith use of this grievance system.

Deliberate misuse of the grievance system may result in restricted access or disciplinary action, at the discretion of the Facility Manager.

D. It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review. See VI., C. 1.

E. The Inmate Grievance Review System is intended to deal with a wide range of issues, procedures or events which may be of concern to inmates. It is not meant to address incidents of an urgent or emergency nature. When faced with such an event, the inmate should contact the nearest staff member for immediate assistance.

## VI. PROCEDURES

A. A Grievance shall be submitted to the Grievance Coordinator in the following manner.

1. All grievances shall be in writing and in the format provided on the forms supplied by the institution (DC-804 Part 1). See Section V., B.

2. All grievances shall be presented individually. Any grievance submitted by a group of inmates will not be processed, however, if the Grievance Coordinator believes that the issue being grieved is legitimate, it will be referred to appropriate Management Staff for review.

3. Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance or appeal. The inmate grievant must sign the grievance or appeal.

4. All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text of the grievance must be legible and presented in a courteous manner. The inmate should identify any persons who may have information which could be helpful in resolving the grievance. The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, the ICU Consent Decree or other law. The inmate may request to be personally interviewed prior to the decision on Initial Review. Any inmate who submits a grievance containing false and malicious information may be subject to disciplinary action.

DC-ADM 804

    5. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Officer may combine multiple grievances which relate to the same subject.

    **NOTE:** At any point in the grievance process, the inmate has the right to withdraw the grievance.

B. Initial Review

    1. Initial Review Procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court.

    2. Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause.

    3. The Grievance Coordinator will forward the grievance to the appropriate Grievance Officer for investigation and resolution. The inmate grievant and other persons having personal knowledge of the subject matter may be interviewed. A grievant who has requested a personal interview, shall be interviewed.

    4. Within ten (10) working days of receipt of the grievance by the Grievance Officer, the grievant shall be provided a written response to the grievance to include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance.

    The Grievance Coordinator may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is pending. If an extension is necessary, the grievant shall be so advised in writing.

C. Appeal from Initial Review

    1. An Initial Review Decision of a grievance on a Health Care or medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five (5) days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance.

    All other appeals will be submitted as follows.

    2. An inmate may appeal an initial review decision to the Facility Manager or Community Corrections Regional Director in writing, within five (5) days from the date of receipt by the inmate of the Initial Review decision. **The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.**

    3. All appeals must conform to the requirements specified in Section VI A of this directive. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted.

    4. The Facility Manager or Regional Director must notify the inmate of his/her decision within ten (10) working days after receiving the appeal. This decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.

DC-ADM 804

    D. Final Review

        1. Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of receiving the decision, appeal any issue related to non-compliance with the ICU Consent Decree, other law, Department directive or policy, for final review. Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

        2. Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

        3. Final Review of all appeals will be sent directly to the CORC except the following:

           a. Medical Grievances which will be reviewed by COMRC.

           b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801. These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee (CORC) for further reviews.

The address of the CORC/COMRC is:

        **PA DEPARTMENT OF CORRECTIONS**
        **CENTRAL OFFICE REVIEW COMMITTEE**
        **PO BOX 598/2520 LISBURN ROAD**
        **CAMP HILL, PA  17001-0598**

        4. Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

        5. The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

        6. The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

        7. For all Appeals receiving Final Review, the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal. The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision. The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

        8. The Chief Counsel will notify counsel for the ICU class of disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

    E. Exceptions

Initial Review and Appeal from Initial Review of issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

        1. DC ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.

        2. DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I

        3. DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI, B, 1,2. Appeal from Initial Review, see DC-ADM 802, VI, B, 4, a.

DC-ADM 804

    4. DC-ADM 814 - Incoming Publications

       See 814-IIIB. Appeal from Initial Review, see 814-IIID.

    Additionally, there may be other kinds of issues for which Initial Review Procedures have been previously established by Administrative Memorandum or Policy Statement.

  F. Admissions and Review

    1. All proceedings pursuant to this directive are in the nature of settlement negotiations and will, therefore, be inadmissible before any court or other tribunal in support of any claim made against the Commonwealth or any employee. No resolution of any grievance offered as a result of this procedure shall be admissible before any court or other tribunal as an admission of violation of the ICU Consent Decree or any State or federal law.

    2. No decision rendered as a result of the processing of a grievance shall be reviewable by any court unless it establishes a system or institution-wide violation of the decree.

  G. Completion of Review After Transfer

    Any inmate who is transferred after the filing of a grievance or appeal, but prior to the completion of the appeal process, may continue to pursue the grievance or appeal by notifying the Facility Manager or Regional Director of the facility in which confined when the grievance was filed. Adjustments in the various time limitations may be made to facilitate review.

## VII. SUSPENSION DURING EMERGENCY

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

## IX. SUPERSEDED POLICY AND CROSS-REFERENCE

This directive revises the Inmate Grievance System (DC-ADM 804, MAY 1, 1984), and supersedes the pilot grievance system in effect at selected DOC institutions. It does not supersede or repeal any portion of any other directive or policy statement. Where this directive is inconsistent with any other directive or policy, both shall be interpreted so as to provide full review of all issues raised, consistent with the scope and purpose of this directive. Conflicts will most frequently occur at the Initial Review level, where other directives establish committees to review specific issues.

Cross References: DC-ADM 801, DC-ADM 802

ACA Cross-References: 3-4271

cc: Executive Deputy Commissioner Reid
    Deputy Commissioner Clymer
    Deputy Commissioner Fulcomer
    Acting Deputy Commissioner Beard
    All Superintendents
    CCC Directors (4)
    File

Joseph D. Lehman,
Commissioner



| To: | Policy Subject: |
|---|---|
| Superintendents<br>Boot Camp Commander<br>Regional Directors<br>Executive Staff | DC-ADM 804<br>CONSOLIDATED INMATE GRIEVANCE REVIEW SYSTEM |
| | Policy Number: DC-ADM 804-1 |
| | Policy Issue Date: July 20, 1994 |

| Date of Issue:<br>April 2, 1996 | Authority: | Effective Date:<br>May 20, 1996 |
|---|---|---|

The purpose of this Bulletin is to include medical grievances in the regular grievance process and to **discontinue** the Central Office Medical Review Committee (COMRC)..

It is important that the Superintendent be aware of all functions within the institution. Similarly, it is essential that the Bureau of Health Care Services be included in the CORC process, to include review by the Chief Counsel's office with respect to medical grievances. Therefore, all grievances, including those relating to medical issues, are to be processed in the same manner. The grievance coordinator will continue to forward medical grievances to the CHCA for initial review. Then, the Superintendent will be responsible for the Appeal from Initial Review, as for all other grievances.

Final Appeal of medical grievances will no longer be forwarded to the COMRC. The Central Office Review Committee (CORC) will process the appeals. The Director of the Bureau of Health Care Services, or designee, will participate as a member of CORC for all medical grievance appeals.

The following sections of DC-ADM 804 are to be **discontinued:**

IV.E.:   Definition of COMRC

IV.G.:   "An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.

V.D.:    "It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review."



The procedures for appeal to final review under DC-ADM 804, VI, D, 5-7, are amended as follows:

(1)  The Chief Hearing Examiner will replace the Central Office Review Committee (CORC) at final review of all grievance appeals. The Chief Hearing Examiner will perform all functions previously performed by CORC.

(2)  In reviewing grievances submitted for final review, the Chief Hearing Examiner will review the initial grievance and response, any appeals therefrom and the responses thereto and the issues appealed to final review.

(3)  The Chief Hearing Examiner will review health care related grievances with the Bureau of Health Care. Appeals raising legitimate legal issues, including but not limited to access to courts and sentencing issues, will be reviewed with an attorney prior to response.

(4)  Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the institution is upheld.

(5)  In all cases where the action of the Grievance Coordinator, PRC, Incoming Publication Review Committee, or Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Commissioner for review and signature.

(6)  The Chief Hearing Examiner will be responsible for assuring that:

    (a) appeals to final review are responded to in a timely fashion;
    (b) records pertaining to such appeals are maintained properly; and
    (c) counsel for the ICU class is notified of the disposition at final review of any matter raised to final review alleging a violation of the <u>ICU vs Shapp</u> Consent Decree.

It is the intent of the Department of Corrections to provide inmates with a complete and timely review of all appeals properly raised to final review. These amendments have been established to ensure timeliness at final review while continuing to provide a thorough, impartial review of the issues.



| | | |
|---|---|---|
| | **Bulletin** | |
| | **Commonwealth of Pennsylvania • Department of Corrections** | |
| **To:** Executive Staff<br>Superintendents<br>Regional Directors<br>Boot Camp Commander | **Policy Subject:** | Consolidated Inmate Grievance Review System |
| | **Policy Number:** DC-ADM 804-3 | |
| | **Policy Issue Date:** July 20, 1994 | |
| **Date of Issue:**<br>October 21, 1997 | **Authority:** | **Effective Date:**<br>November 1, 1997 |

The purpose of this bulletin is to facilitate timely responses from the Chief Hearing Examiner's Office to all appeals to final review.

(1) All appeals to final review should be addressed to the Chief Hearing Examiner,

> Chief Hearing Examiner
> 1451 S. Market Street
> Elizabethtown, PA 17022

Appeals which are addressed to the Commissioner, Chief Counsel, to other Central Office staff, are of course, delivered to these individuals first, then have to be referred to the Chief Hearing Examiner. Improperly addressed appeals may cause a delay in the response to final appeal.

(2) Inmates appealing to final review are responsible for providing the reviewing body with any available paperwork relevant to the appeal. A proper appeal to final review should include photocopies of the initial grievance, initial grievance response, and the Superintendent's response. Appeals without proper records will be reviewed, but the review will be delayed until the appropriate paperwork can be obtained.



| To: | Policy Subject: |
|---|---|
| Executive Staff<br>Superintendents<br>CCC Regional Directors<br>Boot Camp Commander | Consolidated Inmate Grievance Review System |
| | **Policy Number:** DC-ADM 804-4 |
| | **Policy Issue Date:** July 20, 1994 |
| **Date of Issue:** April 29, 1998 | **Authority:** /s/ Martin F. Horn | **Effective Date:** May 1, 1998 |

The purpose of this bulletin is to amend the section VI. Procedures, A.4. to read,

"All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text must be legible and presented in a courteous manner. The Grievant should identify any persons who may have information which could be helpful in resolving the grievance. The Grievant may specifically raise any claims concerning violations of Department of Corrections directives, regulations, court orders, or other law. The Grievant may also include a request for compensation or other legal relief normally available from a court. The inmate may request to be personally interviewed at initial review. Any inmate who submits a grievance containing false information may be subject to disciplinary action. Inmates who have not already completed final review may request compensation or legal relief on appeal to final review."

And to amend Section VI. Procedures, B. Initial Review, 2. to read:

"Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause. Such extensions will normally be granted if the events complained of would state a claim of violation of federal right.

# Exhibit   B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL C. PEOPLES,              :
          Plaintiff,             :    CIVIL ACTION NO. 3:CV-97-0205
                                 :
     vs.                         :
                                 :    (JUDGE CONABOY)
COMMISSIONER HORN, et al.        :
                                 :
          Defendants.            :

FILED SCRANTON
DEC 31 1997
DEPUTY CLERK

## MEMORANDUM AND ORDER

Presently before the Court is a Report and Recommendation filed by United States Magistrate Judge Thomas M. Blewitt. (Doc. 90). The Magistrate Judge recommends that the Plaintiff's complaint be dismissed in its entirety because the Plaintiff has failed to exhaust his administrative remedies. The Plaintiff has not filed any objections to the Magistrate Judge's disposition. Thus, after carefully reviewing the Report and Recommendation only for plain error or manifest injustice, Cipollone v. Liggett Group, Inc., 822 F.2d 335, 340 (3d Cir. 1987) cert. denied, 484 U.S. 976 (1987); Henderson v. Carlson, 812 F.2d 875, 878 (3a Cir. 1987), cert. denied 484 U.S. 837 (19487), we shall adopt the Report and

---

[1] Although the Plaintiff has filed a motion for enlargement of time to file an objection to the Magistrate Judge's recommended disposition (Doc. 92), we deny it as moot in light of our determination made in this Memorandum and Order. Based upon our review, the Plaintiff has clearly failed to exhaust his administrative remedies. Accordingly, his complaint is dismissed without prejudice.

EXHIBIT "B"

Recommendation of the Magistrate Judge and dismiss the complaint in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 claiming numerous violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Doc. 1). He is an inmate at the State Correctional Institution at Smithfield and is proceeding pro se. The Plaintiff filed an amended complaint on May 6, 1997. (Doc. 16).

The Defendants have filed a number of motions to dismiss. (Docs. 19, 27, 44, 47 and 50). However, not all of the motions are ripe for disposition. Nevertheless, our preliminary review of this action directs us to dismiss the complaint based upon the Plaintiffs failure to exhaust his administrative remedies.

## DISCUSSION

With respect to the applicability of administrative remedies, 42 U.S.C. § 1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This provision makes no distinction between an action for damages, injunctive relief, or both. Thus, prisoners are required to exhaust available administrative remedies prior to initiating a

2

prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Central Office Review Committee. If the grievance concerns an alleged medical problem any appeal must be taken to the Central Office Medical Review Committee.

The instant suit concerns the Plaintiffs alleged violation of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. On the question of administrative exhaustion, the complaint includes a question relating to what steps the prisoner took in the state prisoner grievance procedure. The Plaintiff indicates that although he filed "DC-804 Part I Grievances" with respect to his medical and non-medical grievances, they "were put down via semantics, et., etc., etc. And I was pursecuted (sic) because of my efforts to obtain relief." (Doc. 1, p. 2). There is no indication that he appealed the dismissal of this grievance. In that connection, the procedure contemplates several tiers of review and the Grievance Review System is not exhausted when an inmate files a grievance and then takes no other action through established chan-

3

nels when a grievance is not resolved to his or her satisfaction. Plaintiff's apparent failure to comply with 42 U.S.C. § 1997e(a), as amended, warrants the dismissal of his complaint but without prejudice. See Pew v. Imschweiler, et al., Civil Action No. 96-0760 (M.D. Pa. September 12, 1996) (Kosik, J.); Johnson v. Gillis, et al., Civil Action No. 96-1569 (M.D. Pa. August 29, 1996) (Conaboy, J.); Lubawski v. Horn, et al., Civil Action No. 96-1371 (M.D. Pa. July 29, 1996) (Rambo, C.J.); Smith v. Giza, Civil Action No. 96-1167 (M.D. Pa. July 2, 1996) (Rambo, C.J.); Brooks v. Superintendent Lunk of Div. 10, et al., No. 96C3221, 1996 WL 308263 (N.D. Ill. June 5, 1996).

/Richard P. Conaboy
United States District Judge

DATE: 12/31/97

4

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee of the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this __24th__ day of October, 2000, I served a true and correct copy of the foregoing APPENDIX OF EXHIBITS by U.S. First Class mail, postage prepaid, addressed as follows:

Mr. Jason Eric Benson
SCI-SM
#DS-6483
1120 Pike Street
P.O. Box 999
Huntingdon, PA  16652
**LEGAL MAIL***

John R. Kantner, Esquire
Post & Schell, P.C.
240 Grandview Avenue
Camp Hill, PA  17011

David L. Schwalm, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA  17101

_Linda L. Gustin_
Linda L. Gustin