Copy (43) 1/11/01 CF

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON E. BENSON, Plaintiff : CIVIL ACTION

v. : (Judge Caldwell) (Magistrate Judge Blewitt)

THOMAS DURAN, et al., Defendants : NO. 1:CV-00-1229

FILED SCRANTON JAN 2001 PER [illegible] DEPUTY CLERK

PLAINTIFF'S RESPONSE TO DEFENDANT WILLIAM ELLIEN'S MOTION TO DISMISS

The plaintiff Jason E. Benson, herein responds to the def., William Ellien's Motoin to Dismiss the Amended Complaint and states the following in support of his posi ion.

Contrary to def., Ellien's asertion that plaintiff did not exhaust administrative remedies, plaintiff attempted to do just that last year but, was dissuaded when his grievance was denied as frivolous. It was brought to plaintiff's attention that filing a grievance was not required to settle a request for damages. See Wright v. Hollingsworth, 201 F.3d 663 (5th Cir.2000).

Subsequently, plaintiff filed another grievance and has exhausted the administrative remedies of the Department of Corrections despite, the fact that def., Ellien, is not in any way a [p]rison [o]fficial per se. In the defendant's motion to dismiss two (2) claims are advanced:

> (a) Benson has failed to state a claim pursuant to 42 U.S.C. § 1983 Because he has not exhausted his available administrative remedies as required by 42 U.S.C. § 1997 (e)(a); And

(b) Benson has failed to state a cause of action against Ellien pursuant to 42 U.S.C. § 1983 Because he has not plead the subjective knowledge required to allege deliberate indifference.

Even with the ruling in Wright supra, the Appellate Court for the Third Circuit, has barred all § 1983 actions where the plaintiff has failed to exhaust the administrative remedies. See Nyhuis v. Reno, 204 F.3d 65, 72 (3rd Cir.2000); Booth v. Churner, 206 F.3d 289, 300 (3rd Cir.2000). To resolve any/all ambiguity pertaining to § 1997(e)(a), plaintiff recently avanced the same issues and requests for relief as in the case sub judice, to the administrative remedies set forth in the Department of Corrections i.e., DC-ADM 804 et seq., on October 23, 2000, by giving a relevant summary of what actually took place and the relief requested.

On November 2, 2000, plaintiff was issued a summary of the grievance coordinators findings. In the findings the coordinator stated that "Dr. Ellien noted we reviewed for each medicine its benefits and indications, its side effects and precautions and medicine to medicine interactions. The Doctor goes on to write, he noted his understanding and gave his consent." See exhibit "A" [Pl-aintiff's grievance] and "B" [Grievance coordinators findings]. The grievance coordinator came up with quite a few instances in the findings whereas, plaintiff does remeber telling the def., Ellien that the medicine he was about to prescribe, should not be taken by a person with epilepsy because it lowers the seizure threshold but, there are circumstances/events that I frankly, do not believe ever actually happened.

For example, the grievance officer states that "Dr. Ellien noted...The doctor goes on to write...it was your decision to stop taking the imipramine after three doses...it was your decision to abruptly stop taking the Dilantin/Phenytoin...Dr. Long accepted your decision to abruptly stop taking the medication..." First, no doctor in his right mind is going to let a patient just give up a medication that's necessary for him to take and; second, in this plaintiff's grievance he specifically stated that "I requested that Dr. Long remove me from the anti-seizure drug Dilantin and place me back on the anti-seizure drug I was on prior to Dilantin...Dr. Long refused to change or even replace the Dilantin..." See exhibit A".

Furthermore, all of the things the grievance officer stated about the Doctor's stating/writing this and that, is by far exclusively disingenious. Considering none of the quotes or the notes can be found anywhere in the record. Should these aspersions find their way into a duplicate record, plaintiff is attaching an undisturbed copy of the record from 6/4/99 (when the Dilantin was stopped); 7/27/99 (when the Imipramine Began); 8/19/99 (when the imipramine stopped); and 8/31/00 (someone must have notified the medical dept., because they started plaintiff on Dilantin again). See exhibit "C".

Plaintiff appealed the initial review response of the grievance pursuant to DC-ADM 804 VI. C. 1. All the procedures were followed and the appeal was sent to the Chief Hearing Examiner with all relevant documentation by First Class Mail on November 4, 2000. The Chief Hearing Examiner is supposed to respond directly to the plaintiff with twenty-one (21) days.

Unfortunately, over forty-five days have passed since plaintiff submitted his appeal for final review. Clearly, a decision has been made to disregard my grievance and any appeal alike. Therefore, administrative remedies have been exhausted and def., Ellien's request for dismissal on the grounds of failure to exhaust said remedies is moot. The Honorable Maryanne Trump Barry, Third Circuit Judge, reasoned that "The failure of a prison officials to formally respond in writing to these grievances did not,...relieve him of the obligation of exhausting the requisite administrative remedies...We make however, one observation... exhaustion is a two-way street with obligations on the part of prison officials as well as on the part of the prisoners...failure is wholly inconsistent with the coorperative ethos...between inmate and jailer...In response to the inattention...we issue a simple yet stern reminder: federal courts and prisoners alike depend upon prison officials to take seriously their roles within the relevant administrative greivance scheme. Only prompt attention and formal, guided response to timely prisoners grievances will facilitate the overarching policies of the PLRA." See Geisler v. Hoffman, D.C. Civil No. 99-CV-3764 (3rd Cir. 2000). Plaintiff is not required to wait forever for a final decision.

With respect to the second component of def., Ellien's motion to dismiss is that plaintiff failed to state a cause of action and/or that in order to allege deliberate indifference, plaintiff must set forth factual averments which if proven at trial will establish that Ellien, had subjective knowledge that his conduct presented a substantial risk of harm to plaintiff.

He also asserts that plaintiff merely "contends that Ellien, should have known" that prescribing the drug Tofranil to him while he was epileptic presented a substantial risk of harm to him; or that plaintiff never states that def., Ellien, did know this.

Again, def., Ellien's argument cannot be any further from correctness. Accord    the United States Supreme Court reasoned that deliberate indifference requires a showing that prison medical staff had subjective awareness of a substantial risk of harm to the prisoner. See Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994). Contrary to def., Ellien's assertions, the facts are that plaintiff stated in his amended complaint at "Claims for Relief" ¶ A-6, that "The actions of def., Ellien in prescribing the drug Tofranil 'known to decrease' the seizure threshold." Clearly that affirms Ellien's knowledge of the drugs potential hazzards to plaintiff. Furthermore, also in the Amended Complaint at "Facts ¶ 11" it states that "Plaintiff was seen by Def., Ellien...at this time, 'plaintiff inquired as to why he wasn't on anti-seizure medication.' Defendant Ellien's reply was that this wasn't his field of expertise and that I should talk to def., Long." However, last year ('99), as well as this year (11/2/00, def., Ellien conceded "subjective knowledge" when he declared to the grievance officer that "we reviewed for each medicine, its benefits, and 'indications its side effects' and precautions and medicine to medicine interactions." See exhibit "B-¶ 2"

Thus, def., Ellien's, assertion that plaintiff has failed to state a cause of action with respect to the subjective knowledge requirement to support deliberate indifference, is misfigured.

To wit, def., Ellien's most recent pleadings i.e., Motion to Depose Plaintiff, in and of itself affirms that Ellien is seeking evidence to determine whether or not plaintiff's claims are in any way defendable or subjugated. Because plaintiff's claims were pled in the proper fashion, def., Ellien, now urges this Court to grant him permission pursuant to Federal Rules Of Civil Procedure, Rule 30(a), to depose plaintiff. And also claims that "No reason exists to deny the motion," to depose, that is.

Perhaps there is no reason to deny his motion to depose but, there is sufficient reason to deny the motion to dimiss the amended complaint. In addition, there are observably numerous material and unquestionably disputable facts presented by plaintiff for this Court to consider, a motion for summary judgment by def., Ellien.

WHEREFORE, Jason E. Benson, plaintiff, herein respectfully requests that this Honorable Court, deny the motion to dismiss the amended complaint.

Respectfully submitted,

Jason E. Benson, Plaintiff

Date: 12/28/00

CERTIFICATE OF SERVICE

I do hereby certify that I have sent a true and correct copy of Plaintiff's Response to Defendant William Ellien's Motion to Dismiss Plaintiff's Amended Complaint by First Class Mail on this date to the following individuals:

| | | |
|---|---|---|
| James D. Young, Esquire<br>Lavery, Faherty, Young & Patterson, P.C.<br>301 Market Street, Suite 800<br>Harrisburg, PA 17108 | )<br>)<br>)<br>)<br>) | David L. Schwalm, Esquire<br>Thomas, Thomas & Hafer<br>305 Norht Front Street<br>P.O. Box 999<br>Harrisburg, PA 17101 |

Alan S. Gold, Esquire
Monaghan & Gold, P.C.
7837 Old York Road
Elkins Park, PA 19027

BY: [signature]

Mr. Jason E. Benson, Plaintiff
DS-6483, SCI-Smithfield
P.O. Box 999, 1120 Pike Street
Huntingdon, PA 16652

Date: 12/28/00

"A"

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

OFFICIAL INMATE GRIEVANCE

GRIEVANCE NO. SMI-383-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| FROM: (Commitment Name & Number) DS6483 JASON E. BENSON | INMATE'S SIGNATURE [signature] | |
| WORK ASSIGNMENT — | QUARTERS ASSIGNMENT CB/11 | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

On 6.4.99 I was seen by Dr. Ronald Long for "Seizure Clinic" @ the S.C.I.S. med. dept. At this time I requested that Dr. Long remove me from the anti-seizure drug Dilantin, and place me back on the anti-seizure drug I was on prior to Dilantin, a drug called phenobarbitol, due to severe side effects I was experiancing on Dilantin. Dr. Long refused to change, or even replace the Dilantin, and abruptly discontinued the Dilantin prescribing no other anti-epileptic drugs. On 6.15.99 I wrote Dr. Long a request asking him to reconsider and place me back on some kind of anti-seizure med. This was request was ignored. On 7.27.99 I saw Dr. William Ellien, psychiatrist, on the Telemed @ S.C.I.S. I explained to Dr. Ellien that I was no longer on any anti seizure meds, but he refused to address the issue stating that he was not a neurologist. At this time he prescribed me Impramine, an anti depressant, however a seizure antagonist as well. (as noted in the 1994 edition Physicians Desk Reference "Extreme caution should be used when this drug is used with Patient w/a history of seizure disorder because this drug has been shown to lower the seizure threshold".) Also, in referencing the 1994 P.D.R. "Abrupt withdrawl of of phenytoin

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

[signature] 10/26/00

Signature of Grievance Coordinator — Date

"A"

DC-804
PART 1

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

OFFICIAL INMATE GRIEVANCE

GRIEVANCE NO. SMI-383-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

PT 2

A. Brief, clear statement of grievance:

"Dilantin" in epileptic patients may precipitate in status epilepticus (a severe state of back to back seizures) Fast forward to August 30, 1999. While I was on ATA to Adams County Prison without antiepileptic meds, went to bed, waking up in Gettysburg Hospital Critical Care Unit under a diagnosis of "Severe Status Epilepticus attack due to discontinuance of Dilantin and effects of other drugs on seizure threshold." I had 3 back to back seizures (witnessed by prison staff and hospital personnel).

Due to Dr. Ronald Long and Dr. William Elliens actions in abruptly discontinuing my Dilantin and prescribing the seizure antagonist drug Imipramine, they were in direct violation of my Eighth Amendment Rights by being deliberately indifferent to my medical condition, putting me in direct risk of serious injury, disease and death.

To rectify this situation, I am seeking $500,000.00 in monetary relief. Your swift responce is appreciated.

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

[signature] Signature of Grievance Coordinator

10/26/00 Date

DC-804
PART II

"B"

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P. O. BOX 598
CAMP HILL, PA 17001-0598

**OFFICIAL INMATE GRIEVANCE**

**INITIAL REVIEW RESPONSE** **GRIEVANCE NO.** SMI-383-00

| To: (Name and DOC No. | Institution: | Quarters: | Grievance Date: |
|---|---|---|---|
| Jason Benson DS-6483 | Smithfield | C/B | Not Dated |

**The following is a summary of my findings regarding your grievance:**

You list dates on which you have received medical and/or psychiatric interventions and you give your version of what occurred on each of these occasions. For example, you state that on 6/4/99 Dr. Long "abruptly discontinued the Dilantin", however, you neglect to include the fact that you abruptly stopped taking your anti-seizure medication on 5/26/99 through 6/4/99. Nurses discussed medication compliance with you and referred you to Dr. Long due to your persistent non-compliance. After discussing your treatment on 6/5/99, Dr. Long accepted your decision to abruptly stop taking the medication as your expression of autonomy.

You claim that Dr. Ellien prescribed a "seizure antagonist", Imipramine on 7/27/99. Upon reviewing the documentation, I find that Dr. Ellien noted, "We reviewed for each medicine its benefits and indications, its side effects and precautions and medicine to medicine interactions." The doctor goes on to write, "He noted his understanding and gave consent." I find it worth noting that you were scheduled with Dr. Polmueller, earlier than your scheduled appointment, due to the fact that you chose to stop taking the Imipraine after <u>three</u> <u>doses</u>. It is interesting that you quote the PDR's warning against the abrupt withdrawal of Phenytoin in epileptic patients and the subsequent risk of seizures, especially when it was your decision to abruptly stop taking the Dilantin/Phenytoin.

It is your claim that the actions of Dr. Long and Dr. Ellien were deliberately indifferent to your medical condition. Your medical record contains extensive documentation to show that these doctors, as well as other doctors, physician assistants and nurses made every effort to educate you in order to elicit your cooperation in attending to your medical and psychiatric conditions. Many hours have been spent in all aspects of intervention on your behalf and yet you continue to refuse to take medications that have been prescribed to manage your medical and psychiatric conditions.

This grievance has no merit.

Category: Medical

cc: Superintendent Morgan
Deputy Biviano
Major Norris
Captain Glenny
DC-15
File

[signature]
Grievance Officer 11/2/00

| Refer to DC-ADM 804, Section VIII for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE OFFICER | Date: |
|---|---|---|
| | Sharon M. Burks [signature] | 11/6/00 |

Appeal pg. 1

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. SMI-383-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| [illegible] | S.C.I. | 11/4/00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| [illegible] | [signature] | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| — | HB-11 | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

[illegible] from the [illegible] of grievance # SMI-383-00 [illegible]
[illegible] PT II [illegible] to said grievance [illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator

Date

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator

Date

Appeal pg. 3

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE** GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
| --- | --- | --- |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator

Date

# PHYSICIAN'S ORDERS

Exhibit

Benson JASON
DS6483
9-27-76
SCISM

Drug Allergies:
NKA

Self-Medication Program ☐ Yes ☐ No

| Date/ Military Time | Prob # | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS |
|---|---|---|
| 0910 4-28-99 | | ① HIV test |
| 4-28-99 | | |
| | | S. CRAIG HOFFMAN PA - C |
| 6/4/99 0915 | A | ① D/c Dilantin |
| 6-4-99 0920 | | RONALD A LONG, M.D. |
| 6-8-99 1515 | A | ① Cont on seizure clinic |
| | | Ray McMullen PA-C |
| | | RAY McMULLEN, PA-C WHS |
| 7-23-99 | | [illegible] TST PPD O. [illegible] ID |
| | | per V.O. Dr. Salomon [illegible] |
| | | DR. MIGUEL SALOMON M.D. |
| | | DR. MIGUEL SALOMON M.D. |

This information is strictly CONFIDENTIAL and is for the use of only the person or agency to whom it is addressed. These reports are not to be made available to any person or party.

PLEASE USE BALL POINT PEN ONLY

# PHYSICIAN'S ORDERS

Exhibit

Inmate Name: Jason Berson
Inmate Number: DS 6483
DOB: 9-27-76
Institution: Smithfield C

Drug Allergies: NKA

Self-Medication Program ☐ Yes ☑ No

| Date/ Military Time | Prob # | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS 1 |
|---|---|---|
| 7-27-99 | 6 | ① Next appointment in 1 month |
| 1615 hrs | | ② Ativan 1mg PO q 6 hrs PRN anxiety attack: |
| | | · max 2 doses/day · max 6 doses/week for 1 month |
| | | ③ Begin Imipramine 50mg PO hs daily, through 3 Aug '99 |
| | | ④ On 4 Aug 99 - increase Imipramine to 75mg PO hs, |
| | | daily, through 10 Aug 1999 |
| | | ⑤ On 11 Aug 99 - increase Imipramine to 100mg PO hs, |
| | | daily for 5 months |
| | ✓ | ⑥ On/about 19 Aug 1999 - obtain Tofranil (Imipramine |
| | | + desipramine) blood level in AM. |
| | | [signature] William F. [illegible] MD |
| [signature] 7/27/99 2000 | | |
| | | Barb Grove, L.P.N. |

Received JUL 27 1999 SCI-Smithfield Medical Records Department

This information is strictly CONFIDENTIAL and is for the use of only the person or agency to whom it is addressed. These reports are not to be made available to any person

Filed JUL 2_ 1999 SCI-SMITHFIELD Medical Records Dept.

PLEASE USE BALL POINT PEN ONLY

# PHYSICIAN'S ORDERS

Benson, Jason

DS 6483

9-27-76

SCI-Smithfield

Drug Allergies:

Self-Medication Program ☐ Yes ☐ No

| Date/ Military Time | Prob # | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS |
|---|---|---|
| 8/19/99 | B | Serzone 100mg po HS x 3 days |
| | | then Serzone 200mg po HS x 30 days |
| | | Review [illegible] with Dr. Ellien as previously ordered 7/27/99 (scheduled) |
| | | D/C imipramine. [signature] |
| 1445 8-31-99 | A | ① Dilantin 100mg [illegible] pills P.O. QD x 30 days (today) |
| | | ② Dilantin level in 1 wk |
| | | ③ Seizure Graph 5 x daily x 3 days |
| | | ④ Motrin 600mg i tab Q 8H PRN x 2 days (today) |
| | | ⑤ Rand PRN, Add to seizure clinic |
| | | ⑥ Serzone 200mg i tab P.O. QHS x 30 days |
| | | ⑦ To Psych 9-1-99 for f/u |

S. CRAIG HOFFMAN PA - C

[signature] 9/1/99 C0725

Ronald Long, M.D.

This information is strictly CONFIDENTIAL and is for the use of only the person or agency to whom it is addressed. These reports are not to be made available to any person or party.

PLEASE USE BALL POINT PEN ONLY