IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON E. BENSON                    :        CIVIL ACTION

    V.                             :        NO. 1:CV-00-1229

WILLIAM G. ELLIEN, M.D., et al.    :        (Judge Caldwell)
                                            (Magistrate Judge Blewitt)

FILED
SCRANTON
MAY 15 2001
PE:
DEPUTY CLERK


EXHIBITS OF WILLIAM G. ELLIEN, M.D.'S RESPONSE TO THE PLAINTIFF'S
RESPONSE TO WILLIAM ELLIEN, M.D.'S MOTION TO DISMISS

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL C. PEOPLES,                    :
                                       :          CIVIL ACTION NO. 3:CV-97-0205
             Plaintiff,                :
                                       :
      vs.                              :                        FILED
                                       :       (JUDGE CONABOY)   SCRANTON
COMMISSIONER HORN, et al.              :
                                       :                        DEC 31 1997
             Defendants.               :

                                                                      C/C
                                                            DEPUTY CLERK

                        MEMORANDUM AND ORDER

      Presently before the Court is a Report and Recommendation

filed by United States Magistrate Judge Thomas M. Blewitt. (Doc.

90).   The Magistrate Judge recommends that the Plaintiff's com-

plaint be dismissed in its entirety because the Plaintiff has

failed to exhaust his administrative remedies.   The Plaintiff has

not filed any objections to the Magistrate Judge's disposition.[1]

Thus, after carefully reviewing the Report and Recommendation only

for plain error or manifest injustice, Cipollone v. Liggett Group,

Inc., 822 F.2d 335, 340 (3d Cir. 1987) cert. denied, 484 U.S. 976

(1987); Henderson v. Carlson, 812 F.2d 875, 878 (3d Cir. 1987),

cert. denied 484 U.S. 837 (19487), we shall adopt the Report and

_____

      [1] Although the Plaintiff has filed a motion for enlargement of
time to file an objection to the Magistrate Judge's recommended
disposition (Doc. 92), we deny it as moot in light of our
determination made in this Memorandum and Order.   Based upon our
review, the Plaintiff has clearly failed to exhaust his
administrative remedies.   Accordingly, his complaint is dismissed
without prejudice.

                                    1

Recommendation of the Magistrate Judge and dismiss the complaint in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 claiming numerous violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth amendment rights. (Doc. 1). He is an inmate at the State Correctional Institution at Smithfield and is proceeding pro se. The Plaintiff filed an amended complaint on May 6, 1997. (Doc. 16).

The Defendants have filed a number of motions to dismiss. (Docs. 19, 27, 44, 47 and 50). However, not all of the motions are ripe for disposition. Nevertheless, our preliminary review of this action directs us to dismiss the complaint based upon the Plaintiffs failure to exhaust his administrative remedies.

## DISCUSSION

With respect to the applicability of administrative remedies, 42 U.S.C. § 1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This provision makes no distinction between an action for damages, injunctive relief, or both. Thus, prisoners are required to exhaust available administrative remedies prior to initiating a

2

prison conditions case brought pursuant to 42 U.S.C. § 1983 or any other federal law.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance review System. DC-ADM 804 (effective October 20, 1994). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that , after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Central Office Review Committee. If the grievance concerns an alleged medical problem any appeal must be taken to the Central Office Medical Review Committee.

The instant suit concerns the Plaintiffs alleged violation of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. On the question of administrative exhaustion, the complaint includes a question relating to what steps the prisoner took in the state prisoner grievance procedure. The Plaintiff indicates that although he filed "DC-804 Part I Grievances" with respect to his medical and non-medical grievances, they "were put down via semantics, et., etc., etc. And I was pursecuted (sic) because of my efforts to obtain relief." (Doc. 1, p. 2). There is no indication that he appealed the dismissal of this grievance. In that connection, the procedure contemplates several tiers of review and the Grievance Review System is not exhausted when an inmate files a grievance and then takes no other action through established chan-

3

nels when a grievance is not resolved to his or her satisfaction. Plaintiff's apparent failure to comply with 42 U. S. C. § 1997e(a), as amended, warrants the dismissal of his complaint but without prejudice.  See Pew v. Imschweiler, et al., Civil Action No. 96-0760 (M.D. Pa. September 12, 1996) (Kosik, J.); Johnson v. Gillis, et al., Civil Action No. 96-1569 (M.D. Pa. August 29, 1996) (Conaboy, J.); Lubawski v. Horn, et al., Civil Action No. 96-1371 (M.D. Pa. July 29, 1996) (Rambo, C.J.); Smith v. Giza, Civil Action No. 96-1167 (M.D. Pa. July 2, 1996) (Rambo, C.J.); Brooks v. Superintendent Lunk of Div. 10, et al., No. 96C3221, 1996 WL 308268 (N.D. Ill. June 5, 1996).

/Richard P. Conaboy
United States District Judge

DATE: 12/31/97

4

FILED  SEP 30 '9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREGORY GARRETT BROWN

        v.

ROBERT O'CONNOR, M.D., et al.

:
:
:
:
:

CIVIL ACTION
NO. 96-3149

## O R D E R

AND NOW this _30_ day of September, 1996 upon consideration of defendants' motions to dismiss plaintiff's amended complaint and the parties' filings related thereto it is hereby ORDERED that defendants' motions are GRANTED and the Complaint is DISMISSED.

Plaintiff alleges that: (1) defendant Dr. O'Connor failed to examine plaintiff or provide him a requested pillow when plaintiff reported "extreme pain in [his] neck and back . . . from not having a pillow;" and (2) defendants Shannon and Smith, who received a grievance about Dr. O'Connor, "went along with Doctor O'Connor in the denial."

In reviewing defendants' motions to dismiss I must accept plaintiff's factual allegations as true and construe them favorably to plaintiff. Colburn v. Upper Darby Township, 838 F.2d 663, 664-65 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989). Even accepting the complaint's allegations as true and construing them liberally in light of plaintiff's pro se status, see Haines v. Kerner, 404 U.S. 519, 520 (1972), I cannot find that plaintiff has stated a claim of deliberate indifference to a serious medical need.

The amended complaint raises no allegations against Smith and Shannon that were not present in the original complaint. Plaintiff's claims against Smith and Shannon must therefore be dismissed for the reasons stated in this Court's Order dated August 19, 1996.

Plaintiff's claim against Dr. O'Connor must also be dismissed. As stated in this Court's

ENTERED: 1 _____ 10/1/96

CLERK OF COURT

EXHIBIT
B

Order dated August 19, 1996 dismissing plaintiff's original complaint.

> [a] prison official's conduct does not violate a prisoner's constitutional rights "unless the official knows of and disregards an excessive risk to inmate health or safety. . . . The official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). Thus, to state a claim a complaint must allege both the objective fact that there is a substantial risk of serious harm and the subjective fact that the official was aware of the serious risk. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The amended complaint does not meet these requirements that were explicitly set forth for plaintiff. The amended complaint alleges "I told Doctor O'Connor that the extreme pain in my neck and back was from not having a pillow to support my neck while sleeping. . . . Doctor O'Connor refused to examine me." It does not allege any facts that would support an inference that Dr. O'Connor subjectively knew that denying plaintiff a pillow would pose a substantial risk of serious harm. Even if I were to assume that the lack of a pillow actually posed a substantial risk of serious harm, the amended complaint would still fail to state a claim because it does not allege that Dr. O'Connor was aware of that risk.

_____
THOMAS N. O'NEILL, JR.,          S.J.

17

2

UNREPORTED/NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 99-1971

---

LARRY GEISLER,
Appellant

v.

STANLEY HOFFMAN, DR.;
DONALD T. VAUGHN

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-CV-3764
District Judge: The Honorable John R. Padova

---

Argued: September 12, 2000

---

Before: NYGAARD, ROTH, and BARRY, Circuit Judges

(Opinion Filed: September 29, 2000 )

---

MEMORANDUM OPINION OF THE COURT

---

BARRY, <u>Circuit Judge</u>

Appellant Larry Geisler, a former prisoner at SCI-Graterford, appeals separate orders

of the District Court which granted motions to dismiss his civil rights action against appellees

and arranged to have an inmate file a second grievance on his behalf, he admittedly never went beyond that initial step within the formal appeals process outlined in DC-ADM 804. Moreover, the failure of the prison officials to formally respond in writing to these grievances did not, contrary to Geisler's argument, relieve him of the obligation of exhausting the requisite administrative remedies. DC-ADM 804 does not prohibit prisoners from appealing the failure of prison officials to act on initial grievances and, therefore, Geisler was statutorily constrained to bring his grievances to the next level within the prison grievance scheme before pursuing relief in the judicial forum. And, we note, Geisler's grievances sought relief wholly different from the monetary remedy that he subsequently sought from the District Court. To this end, even if Geisler had brought his grievances before the two appellate tiers provided for by DC-ADM 804, exhaustion in that setting clearly would not have exhausted his current claim for monetary relief, a claim which he never even began to pursue administratively.

In this connection, Geisler cannot be heard to argue that seeking monetary damages in the administrative setting would have been "futile." First of all, DC-ADM 804 made awards of monetary relief available to inmates as of May 1, 1998 – well before Geisler filed his federal complaint in July 26, 1999; if the very relief Geisler sought in the judicial forum was first available to him in the administrative forum, a grievance in that forum could not have been "futile." Second, even if administrative remedies had not been available to Geisler via DC-ADM 804, any attempt to invoke a "futility" exception would be denied in light of

4

Nyhuis and Booth.  See Nyhuis, 204 F.3d at 70-77 (explaining that Congress, via the PLRA, intended for exhaustion to be an unqualified requirement in prisoner civil rights litigation in an attempt to conserve judicial resources and to give deference to and promote the efficacy of administrative processes); Booth 206 F.3d at 300 (same).

In sum, Geisler's complaint fits squarely within the dictates of § 1997e(a), as interpreted by this court in Nyhuis and Booth, that a prisoner exhaust the administrative remedies available to him or her prior to initiating suit in federal court.  Because Geisler failed to exhaust the three-tiered administrative appeals process with respect to both (1) his request to have his J tube reimplanted and (2) his current request for monetary damages attributable to the time he was deprived of the J tube, the District Court properly granted Dr. Hoffman's motion to dismiss.

We make, however, one observation.  While Nyhuis and Booth compel us to uphold the dismissal of Geisler's complaint for failure to exhaust, we note that exhaustion is a two-way street with obligations on the part of prison officials as well as on the part of the prisoner. In Nyhuis, this Court stated that "applying § 1997e(a) without exception promotes the efficacy of the administrative process itself . . ." Nyhuis, 204 F.3d at 76. We anticipated that under a strict exhaustion requirement "prison grievance procedures will receive enhanced attention and improved administration." Id. While the state's failure to formally respond to Geisler's grievances – and on a motion to dismiss both the filing of the grievances and the failure to respond must be accepted as true –  does not constitute a ground for

excusing Geisler from exhausting the administrative appeals process, such failure is wholly inconsistent with the "cooperative ethos . . . between inmate and jailer" which this Court envisioned a strict exhaustion requirement would promote. Id. at 77. In response to the inattention in this case, we issue a simple yet stern reminder: federal courts and prisoners alike depend upon prison officials to take seriously their roles within the relevant administrative grievance scheme. Only prompt attention and formal, guided response to timely prisoner grievances will facilitate the overarching policies of the PLRA.

TO THE CLERK OF THE COURT:

  Kindly file the foregoing Memorandum Opinion.

  /s/ Maryanne Trump Barry
  Circuit Judge

6

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 99-1971

---

LARRY GEISLER,
Appellant

v.

STANLEY HOFFMAN, DR.;
DONALD T. VAUGHN

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 99-CV-3764
District Judge: The Honorable John R. Padova

---

Argued: September 12, 2000

---

Before: NYGAARD, ROTH, and BARRY, Circuit Judges

(Opinion Filed: September 29, 2000 )

---

JUDGMENT

---

This cause came to be heard on the record from the United States District Court for

the Eastern District of Pennsylvania and was argued on September 12, 2000.

After consideration of all contentions raised by the appellant, it is

ADJUDGED and ORDERED that the judgments of the District Court be and are hereby affirmed.

Costs taxed against appellant.

*Marcia M. Waldron*

Marcia M. Waldron, Clerk

Dated: September 29, 2000

*opinion footer*

Not Reported in F.Supp.
(Cite as: 1997 WL 43015 (E.D.Pa.))

Page 1

Bilal A. MUHAMMAD, Plaintiff,
v.
Dr. Arnold SCHWARTZ, Dr. John Roeder and
Dr. Josey Malabranch, Defendants.

Civil Action No. 96-CV-6027.

United States District Court, E.D. Pennsylvania.

Jan. 27, 1997.

Bilal A. Muhammad, Graterford, PA, Pro Se.

Alan S. Gold, Monaghan & Gold, P.C., Elkins
Park, PA, for Defendants.

MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

I. INTRODUCTION

*1 On August 29, 1996 Plaintiff Bilal A.
Muhammad filed a complaint against Dr. Arnold
Schwartz, Dr. John Roeder, and Dr. Josey
Malabranch pursuant to 42 U.S.C. § 1983 alleging
cruel and unusual punishment via deliberate
indifference to his medical needs in violation of
the Eighth and Fourteenth Amendments to the
United States Constitution. Mr. Muhammad also
asserts a Pennsylvania state law claim of medical
malpractice. This court has jurisdiction via        §
1983, and through our assertion of pendent
jurisdiction over the state law claim per 28 U.S.C.
§ 1367.

In their instant motion, Dr. Schwartz and Dr.
Roeder request that the action against them be
dismissed for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dr. Malabranch was
never properly served; the complaint against her
is therefore dismissed without prejudice. The
issue before us consists solely of whether Mr.
Muhammad alleged sufficient facts within his
complaint to support his § 1983 action against Dr.
Schwartz and Dr. Roeder.

II. DISCUSSION
A. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure
12(b)(6), this court must dismiss a complaint if it

fails to state a claim upon which relief can be
granted. A complaint should not be dismissed for
failure to state a claim unless the plaintiff has
alleged no set of facts in support of his claim
which would entitle him to relief. Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974); Haines v.
Kerner, 404 U.S. 519, 520 (1972). This court's
inquiry is essentially limited to the content of the
complaint. Biesenbach v. Guenther, 588 F.2d
400, 402 (3d Cir.1978). All allegations in the
complaint and all reasonable inferences that can be
drawn therefrom must be accepted as true and
viewed in the light most favorable to the non-
moving party. Nami v. Fauver, 82 F.3d 63, 65
(3d Cir.1996); Holder v. City of Allentown, 987
F.2d 188, 194 (3d Cir.1993). However, "we are
not required to accept legal conclusions either
alleged or inferred from the pleaded facts." Kost
v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993).
Further, if "the facts alleged in the complaint,
even if true, fail to support the ... claim," we
must dismiss the complaint. Id. (citing Ransom v.
Marrazzo, 848 F.2d 398, 401 (3d Cir.1988). In a
Section 1983 action, a motion to dismiss will be
granted if the plaintiff does not sufficiently allege
in his complaint the deprivation of any right
secured in the Constitution. Nami, 82 F.3d at 65.

B. Factual Allegations

We therefore review Mr. Muhammad's
allegations as contained solely within his
complaint in the light most favorable to him. Mr.
Muhammad is currently incarcerated at S.C.I.
Graterford Prison in Graterford, Pennsylvania.
He states in his complaint that on December 19,
1994 at approximately 5:00 p.m. he was rushed to
the dispensary with complaints of severe stomach
and back pains. Complaint at 2. Mr. Muhammad
was seen by Defendant Dr. Roeder, and
complained to him that was vomiting and thought
he had food poisoning. Mr. Muhammad alleges
that Dr. Roeder then prescribed Donatol and
Maalox to him; however, Dr. Roeder did not take
"blood pressure readings and/or a finger stick for
blood sugar reading along with temperature
readings to determine whether infection was
present." Complaint at 3. Mr. Muhammad
alleges that his medical records indicated a pre-
existing problem with diabetes, hypertension, and
kidney stones. Id. In addition, he states that a
nurse at the infirmary "attempted to convince

Not Reported in F.Supp.                                                                          Page 2
(Cite as: 1997 WL 43015, *1 (E.D.Pa.))

defendant Dr. Roeder that [he] had problems in
the past dealing with kidney stones." Id. Mr.
Muhammad does not allege that he suggested any
alternative diagnosis to Dr. Roeder other than his
initial complaint of food poisoning.

*2 Later on December 19, 1994, at
approximately 8:00 p.m., Mr. Muhammad alleges
that he was brought back to the dispensary to see
Dr. Malabranch for vomiting and pains. After a
discussion about Mr. Muhammad's concerns with
his kidneys, Dr. Malabranch prescribed Demoral.
Mr. Muhammad alleges that "at no time [were
his] procedural vital signs taken by defendant Dr.
Malabranch." Complaint at 5. Mr. Muhammad
then returned to his cell; he states that he was in
severe pain. He alleges that a nurse requested that
he be sent to a hospital, but this request was
denied at that time. Id.

At approximately 6:00 a.m. on December 20,
1994 Mr. Muhammad states that he applied for
sick call for treatment "relating to his stomach and
back pains" and vomiting. Complaint at 7. He
was now seen by Dr. Schwartz, who prescribed
Motrin for the pain and referred him to the
Medical Director, Dr. Dennis Moyer. [FN1] Dr.
Moyer ordered that x-rays be taken and placed
Mr. Muhammad on medical layin from work.
Mr. Muhammad returned to his cell and, being in
pain, took the Motrin previously prescribed. Id.

> FN1. Dr. Moyer is not a defendant in this
> matter.

Two days later, on December 22, 1994, Mr.
Muhammad signed up for "routine sick call" and
was seen again by Dr. Schwartz. He complained
of "severe back pains associated with kidney stone
presence and intense chills, along with vomiting."
Complaint at 7. Mr. Muhammad alleges that Dr.
Schwartz did not take his blood pressure, but did
prescribe Motrin. He also alleges that
approximately one half hour later he "fell to the
floor" and was brought to the dispensary.
Complaint at 8. There, he was seen by Dr.
Moyer. Mr. Muhammad's allegations are unclear
subsequent to that, but it appears that he was
admitted to Suburban General Hospital on
December 24, 1994 with severe kidney problems.

C. Deliberate Indifference

1. Legal Standard

The gravamen of Mr. Muhammad's Section 1983
action is that Drs. Roeder and Schwartz subjected
him to cruel and unusual punishment in violation
of the Eighth Amendment, made applicable to the
states by the Fourteenth Amendment. See
Robinson v. California, 370 U.S. 660 (1962).
Because an inmate must rely on prison officials
for their medical care, denial of same can result in
pain and suffering that rises to the level of a
constitutional violation. See Estelle v. Gamble,
429 U.S. 97, 103 (1976). However, the law is
clear that failure to provide adequate medical
treatment is a violation of the Eighth Amendment
only when it results from "deliberate indifference
to a prisoner's serious illness or injury." Id. at
105.

The Supreme Court clarified this standard in
Wilson v. Seiter, 501 U.S. 294 (1991). They held
that "to establish an Eighth Amendment violation
an inmate must allege both an objective element--
that the deprivation was sufficiently serious--and a
subjective element--that a prison official acted
with a sufficiently culpable state of mind, i.e.
deliberate indifference." Nami v. Fauver, 82 F.3d
63, 67 (3d Cir.1996) (citing Wilson 501 U.S. at
304); Young v. Quinlan, 960 F.2d 351, 359-60
(3d Cir.1992). The first element requires that the
doctor's act or omission "result in the denial of the
minimal civilized measure of life's necessities."
Rhodes v. Chapman, 452 U.S. 337, 347 (1981);
Farmer v. Brennan, 511 U.S. 825, 114 S.Ct.
1970, 1977 (1994) ("the inmate must show that he
is incarcerated under conditions posing a
substantial risk of serious harm"). To be sure,
Mr. Muhammad has alleged a very serious injury:
that he suffered bilateral kidney failure. For
purposes of this discussion only, we will accept
that this is sufficient to satisfy the first element.

*3 However, it is not clear that he has alleged
sufficient facts to show the second element: that
Drs. Schwartz and Roeder acted with a
sufficiently culpable state of mind. The Supreme
Court has held that when a prison official commits
an act or omission that does not purport to be
"punishment," there must be more than an
ordinary lack of due care; there must be
deliberate indifference, or the "unnecessary and

Not Reported in F.Supp.                                                        Page 3
(Cite as: 1997 WL 43015, *3 (E.D.Pa.))

wanton infliction of pain." Estelle, 429 U.S. at
104; Whitley v. Albers, 475 U.S. 312, 319
(1985); Young v. Quinlan, 960 F.2d 351, 359 (3d
Cir.1992). In Farmer v. Brennan, 114 S.Ct. 1970
(1994), the Supreme Court discussed "deliberate
indifference" in more detail. It is clear that the
required state of mind is more than negligence in
diagnosing or treating a medical condition, but
less than acts or omissions committed for the very
purpose of causing harm or with the knowledge
that the specific harm will result. Farmer, 114
S.Ct. at 1978. The Farmer court adopted
subjective recklessness as the appropriate test,
holding that a "prison official cannot be found
liable under the Eighth Amendment ... unless the
official knows of and disregards an excessive risk
to inmate health or safety; the official must both
be aware of facts from which the inference could
be drawn that a substantial risk of serious harm
exists and he must also draw the inference." Id.
at 1979; see also, Nami, 82 F.3d at 67. If the
official should have perceived a risk, but did not,
his acts or omissions cannot establish a
constitutional violation. Alleging obviousness or
constructive notice is insufficient to state a claim
because liability may not be prefaced on these
alone, and if a prison official was not aware of
even an obvious risk there can be no constitutional
violation. Farmer, 114 S.Ct. at 1980, 1982.

   In this light, it is clear that to establish his claim,
Mr. Muhammad must allege facts that at a
minimum show recklessness on the part of Dr.
Schwartz and Dr. Roeder. [FN2] It is insufficient
to allege that the doctors "misdiagnosed [his]
condition, that [the doctors'] method of physical
examination and treatment may not have followed
community standards, or that [the doctors]
disagreed with [his] suggested course of
treatment." Bellecourt v. United States, 994 F.2d
427, 431 (8th Cir.1993), cert. denied, 510 U.S.
1109 (1994); see also Estelle, 429 U.S. at 106.
Malpractice, while not condoned by this court, is
simply not actionable under Section 1983. See
Durmer v. O'Carroll, 991 F.2d 64, 67 (3d
Cir.1993); Sample v. Diecks, 885 F.2d 1099,
1109 (3d Cir.1989). Malpractice indicates
negligence on the part of the physician, and
"negligence in the administration of medical
treatment is not itself actionable under the
Constitution." Inmates of Allegheny County Jail v.
Pierce, 612 F.2d 754, 762 (3d Cir.1979) (citing

Estelle, 429 U.S. at 105); see also Jordan v. Fox,
20 F.3d 1250, 1277 (3d Cir.1994). Neither,
certainly, is a disagreement between the plaintiff
and the doctor on the medical diagnosis.
Monmouth County Correctional Institutional
Inmates v. Lanzaro, 834 F.2d 326 (3d Cir.1987),
cert. denied, 486 U.S. 1006 (1988); Smith v.
Marcantonio, 910 F.2d 500, 502 (8th Cir.1990).
Because "there may, for example, be several ways
to treat an illness," prison doctors have been
accorded considerable latitude in the diagnosis and
treatment of prisoners. Durmer, 991 F.2d at 67;
Inmates of Allegheny County Jail, 612 F.2d at
762; White, 897 F.2d at 110.

> FN2. Some courts have held that because the
> element of deliberate indifference involves a
> discussion of intent, this sort of Eighth
> Amendment claim cannot be resolved at
> summary judgment; however, the complaint is
> certainly subject to dismissal for failure to state a
> claim if no such subjective intent is alleged in the
> first place. See Young 960 F.2d at 360.

   *4 In finding deliberate indifference, courts have
generally noted length of time without treatment,
the types of complaints made by the prisoner, and
the specific responses of the doctor. See Durmer,
991 F.2d at 67 (prisoner went over seven months
without treatment, prisoner complained repeatedly
of pain over that time, non-medical reasons given
for denial); White v. Napoleon, 897 F.2d 103,
109 (3d Cir.1990) (well over ten different
instances with several prisoners over many
months, repeated complaints, direct comments and
actions by doctor which indicate no medical
purpose); Lanzaro, 834 F.2d at 347 ("deliberate
indifference is also evident where prison officials
erect arbitrary and burdensome procedures that
result in interminable delays and outright denials
of medical care to suffering inmates"). The Third
Circuit specifically found that allegations that a
doctor "intended to inflict pain on prisoners
without any medical justification," or a large
number of "specific instances in which the doctor
insisted on continuing courses of treatment that the
doctor knew were painful, ineffective, or entailed
substantial risk of serious harm to the prisoners"
were distinguishing factors of a case that went
beyond mere malpractice. White, 897 F.2d at
109.

2. Discussion

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1997 WL 43015, *4 (E.D.Pa.))

For Mr. Muhammad's claims of deliberate indifference, each doctor must be examined separately from the other. See Polk County v. Dodson, 454 U.S. 312, 325 (1981) (holding that because respondeat superior is not a basis for liability under § 1983, one doctor at a prison cannot be held liable for actions of others); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993). We will therefore examine Mr. Muhammad's allegations with respect to Dr. Roeder first.

Dr. Roeder saw Mr. Muhammad once, when he was first brought to the dispensary on December 19, 1994. Mr. Muhammad complained of stomach and back pains and indicated that he thought it might be food poisoning. Based on this, Dr. Roeder prescribed Donatol and Maalox for treatment of the pain and possible food poisoning, and returned Mr. Muhammad to his cell. Mr. Muhammad does not allege that Dr. Roeder was involved subsequent to this. He does allege that a Nurse, Connie Chubb, told Dr. Roeder about his history of kidney stones.

These allegations are insufficient, even when taken in a light most favorable to Mr. Muhammad, to make out a § 1983 action. Mr. Muhammad does not allege that Dr. Roeder actually knew that the prescriptions issued to Mr. Muhammad would cause further harm. He merely disagrees with the diagnosis, with the ease of twenty-twenty hindsight. He does not allege that Dr. Roeder knew that Mr. Muhammad faced the serious risk of kidney failure, and issued a prescription for Donatol and Maalox in reckless disregard for that risk. He merely states that a history of kidney stones and diabetes was listed in his medical records. This is not deliberate indifference per Farmer v. Brennan. Without alleging actual knowledge, any reference to obviousness via the medical records available, or what the doctor "should have known" is unavailing.

*5 Dr. Schwartz saw Mr. Muhammad twice. The first time was on the morning of December 20, 1996 at a "sick call screening." Mr. Muhammad alleges in his complaint that he had continued stomach and back pains, and vomiting. Dr. Schwartz prescribed Motrin to alleviate his pain, and referred him to the Medical Director,

Dr. Moyer. Mr. Muhammad does not allege any conversation or discussion of his case between Dr. Schwartz and his supervisor, only that the doctor screened him, prescribed him medication for his pain, and referred him to the director.

Dr. Schwartz did not see Mr. Muhammad again until two days later, on December 22, 1994, when Mr. Muhammad signed up for "routine sick call." Dr. Schwartz listened to Mr. Muhammad's complaints, and again prescribed Motrin for his pain. Mr. Muhammad does not state whether or not he took that medication, but it was soon thereafter that he was brought to the dispensary to again be examined by Dr. Moyer. Mr. Muhammad does not allege that Dr. Schwartz had any other contact with him. He does not allege that Dr. Schwartz did or said anything with the knowledge that his actions would cause Mr. Muhammad further harm. Rather, he disagrees with his method of diagnosis, and the diagnosis itself. He does not contest that at any time his complaints were ignored, or that prescriptions were not provided. Mr. Muhammad, simply, has alleged malpractice; in this case, his allegations do not rise to the level required by the deliberate indifferent indifference. See Farmer 114 S.Ct. at 1984; Bellecourt, 994 F.2d at 431.

For both Dr. Schwartz and Dr. Roeder, Mr. Muhammad asserts that their diagnosis was wrong, and that they therefore delayed his admittance at a local hospital. However, Mr. Muhammad first complained of pains in the afternoon of December 19, 1994, and was admitted to the hospital on December 24, 1994 after being in Dr. Moyer's care for two days. While Mr. Muhammad undoubtedly suffered a severe injury, he has not—and, it seems, can not—alleged that Drs. Schwartz and Roeder both were actually aware of the risks to his health caused by their actions, and that they recklessly disregarded those risks. Mere mention of a medical record listing a history of kidney stones is insufficient to show that the risk to Mr. Muhammad was so obvious it had to have been known. Cf., Farmer, 114 S.Ct. at 1981. The facts reveal instead a pattern of Mr. Muhammad complaining of pain and receiving a responsive prescription, and then within five days of the onset of pain being sent to an outside hospital for further treatment. While the negligent malpractice of medicine upon

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1997 WL 43015, *5 (E.D.Pa.))

Page 5

prisoners is unfortunate and will certainly not be condoned by this court, the actions of Dr. Schwartz and Dr. Roeder do not rise to "cruel and unusual punishment" prohibited by the Eighth and Fourteenth Amendment. The complaint must therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

### D. State Malpractice Claim

*6 We had originally exerted jurisdiction over the second count in Mr. Muhammad's complaint, a state malpractice claim, via pendent jurisdiction. However, because we have dismissed the federal Section 1983 claim above, we have no independent basis to hear the state law claim. Ordinarily, when a court dismisses a federal claim early on in the case, it will not use its discretion to retain jurisdiction over any pendent claims, but rather will dismiss the state claims without prejudice to raise the matters in state court. Angst v. Mack Trucks, 969 F.2d 1530, 1534-5 (3d Cir.1989); Panis v. Mission Hills Bank, 60 F.3d 1486 (10th Cir.1995), cert. denied, 116 S.Ct. 1045 (1996); See 28 U.S.C. § 1367(c)(3). We see no reason to do otherwise in this case. We do not express any opinion on the outcome of the malpractice claim in the appropriate state court.

### III. CONCLUSION

Despite an examination of Mr. Muhammad's complaint in a light most favorable to him, we find that he has not alleged facts sufficient to make out a Section 1983 claim.

For the foregoing reasons, we will grant Defendants Dr. Schwartz and Dr. Roeder's motion to dismiss count one of Mr. Muhammad's complaint for failure to state a claim. We will dismiss Mr. Muhammad's pendent state malpractice claim without prejudice to bring the claim in the appropriate state court. We also dismiss without prejudice the complaint against Dr. Malabranch for failure to provide service.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of January, 1997, upon consideration of Defendants Dr. Arnold Schwartz and Dr. John Roeder's Motion to Dismiss filed on January 3, 1997 and Plaintiff Bilal A. Muhammad's response thereto filed on January 13, 1997, it is hereby ordered, consistent with the foregoing opinion as follows:

1. Defendants' Motion to Dismiss is GRANTED as to Count I of the complaint;

2. Plaintiff's Count II is DISMISSED for lack of jurisdiction without prejudice to bring the action in the appropriate state court;

3. Plaintiff's complaint against Defendant Dr. Josey Malabranch is DISMISSED without prejudice for failure to provide service;

4. This case is CLOSED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

JUN-08-2000  15:47                                                      P.01/09

*Telephone for tye*
*keep my unreales*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BENNIE OUTTERBRIDGE, as Administratrix  :
of the ESTATE OF EDDIE SAMUEL    :
OUTTERBRIDGE and in her own right,    :
               :
    Plaintiff,       :  CIVIL ACTION
               :  NO. 00-1541
    v.           :
               :
COMMONWEALTH OF PENNSYLVANIA  :
DEPARTMENT OF CORRECTIONS, et al.  :
               :
    Defendants.     :

FILED

JUN - 8 2000

MICHAEL E. KUNZ, Clerk
By_____
       Dep. Clerk

## MEMORANDUM

BUCKWALTER, J.               June 7, 2000

    Presently before the Court is the Medical Defendants' Motion to Dismiss. For the

reasons stated below, the Motion is Granted.

## I. BACKGROUND

    Plaintiff is the alleged Administratix of a decedent prisoner, Eddie Samuel

Outterbridge ("Outterbridge"). She filed the Complaint on March 24, 2000 alleging federal and

state claims against both the moving Medical Defendants[1] and the non-moving Commonwealth

Defendants. This Court dismissed all claims against the Commonwealth Defendants by an

---

1. The Medical Defendants will be the term used to refer to the following Defendants who provided medical services at SCI-Mahanoy: Lazlo Kiraly, M.D. ("Kiraly"), John Hipps, M.D. ("Hipps"); Stanley Hoffman, M.D. ("Hoffman"); John Rush, P.A.C. ("Rush"); Ronald Scott, P.A.C. ("Scott"). All five of these individuals were hired by or contracted with Defendant Correctional Physician Services ("CPS"). During the time period relevant to this suit, CPS entered into a contract to provide medical services to inmates at SCI-Mahanoy.

Order dated May 26, 2000.  The federal claims against the Medical Defendants include a violation of the Eighth Amendment and a conspiracy count.  The state law claims involve medical negligence, survival and wrongful death.  The Complaint arises from the treatment and medical care received by decedent Outterbridge that are alleged to have resulted in his death.

According to the Complaint, Outterbridge began his incarceration at SCI-Mahanoy in October, 1992.  After receiving a positive tuberculin test in October, 1997, Outterbridge began a prophylactic treatment termed INH.  Although Outterbridge complained repeatedly to treating physicians that the INH was making him ill, he was forced to continue the medication.  The Plaintiff alleges that Outterbridge's medical condition was continually misdiagnosed by the individual Medical Defendants.  He was finally removed from SCI Mahanoy on April 15, 1998 and died ten days later at Good Samaritan Hospital in Pottsville, Pennsylvania.

## II.  LEGAL STANDARD

Defendants argue that the case should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  A motion to dismiss on jurisdictional allegations should be judged by the same standards as a Rule 12(b)(6) motion to dismiss.  See Mortension v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 890 (3d Cir. 1977).  When deciding to dismiss a claim pursuant to Rule 12(b)(6) a court must consider the legal sufficiency of the complaint and dismissal is appropriate only if it is clear that "beyond a doubt ... the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McCann v. Catholic Health Initiative, 1998 WL 575259 at *1 (E.D. Pa. Sep. 8, 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46

JUN-08-2000  15:47                                                                                          P.03/09

(1957)).  The court assumes the truth of plaintiff's allegations, and draws all favorable inferences

therefrom.  See, Rocks v. City of Philadelphia, 868 F.2d. 644, 645 (3d. Cir. 1989).  However,

conclusory allegations that fail to give a defendant notice of the material elements of a claim are

insufficient. See Sterling v. SEPTA, 897 F.Supp. 893, 895 (E.D. Pa.1995).  The pleader must

provide sufficient information to outline the elements of the claim, or to permit inferences to be

drawn that these elements exist.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d. Cir. 1993).  A court

must determine whether, under any reasonable reading of the pleadings, the law allows the

plaintiff a remedy.  See, Nami v. Fauver, 82 F.3d 63, 65 (3d. Cir. 1996).

## III. DISCUSSION

A.  Count 1:  § 1983 claim for violation of the Eighth Amendment

The Plaintiff has included all of the Medical Defendants in Count 1.  The

Supreme Court has declared that, in accordance with the " 'broad and idealistic, concepts of

dignity, civilized standards, humanity, and decency' " embodied in the Eighth Amendment, the

government is obliged "to provide medical care for those whom it is punishing by incarceration."

Estelle v. Gamble, 429 U.S. 97, 102(1976).  Deliberate indifference to serious medical needs of

prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth

Amendment." Id. at 104.  To be in violation of the Eighth Amendment, there must be both

deliberate indifference on the part of the officials and a serious medical condition.  Monmouth

County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d. Cir. 1987).

The Supreme Court adopted a subjective test for what would constitute an Eighth

Amendment violation in Farmer v. Brennan, 511 U.S. 825, 837 (1994):

3

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". Id.

Therefore, the Court continued, "... an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment". Id. at 838. Therefore, to state a § 1983 claim for a denial of medical treatment, the Plaintiff must specifically allege that each defendant was aware of the serious risk Outterbridge faced and that the person disregarded such risk.

After reviewing the Complaint, the Court finds that the Plaintiff has never alleged that any of the Medical Defendants drew inferences that Outterbridge faced a risk of serious harm. The Complaint repeats that each Defendant continued to treat Outterbridge with INH even though he complained of its effects. Plaintiff also alleges that the Medical Defendants "consciously disregarded" abnormal findings resulting from the ingestion of INH. While these facts suggest medical malpractice, they do not sufficiently allege that the Defendants knew of and disregarded the serious risk faced by decedent Outterbridge. Therefore, the Plaintiff's §1983 claims against the Medical Defendants will be dismissed.

Plaintiff has likewise failed to state a cause of action against CPS, as the employer of the individual Medical Defendants. The Third Circuit has repeatedly concluded that no respondeat superior liability exists pursuant to § 1983 under any circumstance. See Robinson v. City of Pittsburgh, 120 F.3d 1285 (3d Cir. 1997). Nevertheless, a private corporation may be held liable for a constitutional violation if it knew of and acquiesced in the deprivation of the

4

plaintiff's rights. See Miller v. Hoffman, 1998 U.S. Dist. LEXIS 9934. A Plaintiff must state that the corporation, with deliberate indifference, established and maintained a policy which directly caused plaintiff's constitutional harm. See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). The Plaintiff has not alleged any policies of CPS that led to constitutional harm suffered by Outterbridge.

B. Count 2: Conspiracy to Violate the Eighth Amendment:

The elements of a conspiracy are a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose. Ammlung v. City of Chester, 494 F.2d 811, 814 (3rd Cir.1974). The plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events. See Panayotides v. Rabenold, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999). Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy and certain other actions of the alleged conspirators will be deemed sufficient. See Rose v. Bartle, 871 F.2d. 331,366 (3d Cir. 1989). Drawing inferences in favor of the Plaintiff, it can be assumed that the object of the conspiracy was to violate Outterbridge's constitutional rights by remaining deliberately indifferent to his medical needs. It can also be inferred that the period of the conspiracy lasted from the time IHN treatment was started until April 15, 1998, the day Outterbridge was transferred out of SCI-Mahanoy. However, there are no specific allegations that the Medical Defendant agreed to violate Outterbridge's right to medical treatment. In order to survive a motion to dismiss, the Plaintiff can not baldy claim that Defendants actions and omissions constituted a conspiracy without alleging what constituted concerted action. As stated

5

above, the Court finds that the Plaintiff did not sufficiently allege a substantive Eighth

Amendment violation.  Plaintiff has also failed to state a claim of conspiracy to violate decedent

Outterbridge's constitutional rights.  Therefore, Count 2 will be dismissed against all of the

Medical Defendants.

## IV.  CONCLUSION

The Plaintiff has failed to allege any claims against the Medical Defendants that

would give this Court jurisdiction under 28 U.S.C. § 1331.  Since the Court no longer has

original jurisdiction over any claim in this case, the Court declines to exercise supplemental

jurisdiction over the remaining state law claims (see 28 U.S.C. § 1367(c)), unless the plaintiff

can successfully replead its alleged § 1983 claim.

An order follows.

6

JUN-08-2000  15:48                                                      P.07/09

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BENNIE OUTTERBRIDGE, as Administratrix :
of the ESTATE OF EDDIE SAMUEL :
OUTTERBRIDGE and in her own right, :
 :
   Plaintiff, :  CIVIL ACTION
 :  NO. 00-1541
  v. :
 :
COMMONWEALTH OF PENNSYLVANIA :
DEPARTMENT OF CORRECTIONS, et al. :
 :
   Defendants. :

## O R D E R

AND NOW, this 7th day of June, 2000, upon consideration of the Medical

Defendants' Motion to Dismiss (Docket No. 5), and the Plaintiff's Response thereto (Docket No.

10); it is hereby **ORDERED** that the Motion is **GRANTED** as to Counts 1 and 2 with respect to

the Medical Defendants.  It is **FURTHER ORDERED** that plaintiff is granted leave to file an

amended complaint if he can do so in accordance with this opinion.

If no such amended complaint is filed on or before **June 30, 2000**, the court, on

motion of defendant, will dismiss Counts 1 and 2 and decline to exercise supplemental

jurisdiction over the state claims.  **COPIES BY FAX ON:** _____

  **TO:** _____

TERED: _____ 6-8-00

  BY THE COURT:

CLERK OF COURT

  RONALD L. BUCKWALTER, J.

    6/8/00

COPIES BY MAIL ON: