

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON E. BENSON, | : | CIVIL ACTION NO. **1:CV-00-1229** |
| Plaintiff | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| THOMAS DURAN, et al., | : | |
| Defendants | : | |

**FILED SCRANTON**

**JUN 4  2001**

PER _____ /s/ _____
DEPUTY CLERK

## REPORT AND RECOMMENDATION

This action is presently proceeding *via* an amended complaint which was filed on September 11, 2000. (Doc. 18). Named as Defendants are the following: Thomas Duran, Warden; Bruce Cluck and Debra Hanky, Associate Wardens; John Jennings and William Orth, Lieutenants; Rae Hientzelman, Sergeant; Briton Shelton and David Vazquez, Correctional Officers; William J. Steinour, a physician employed at Gettysburg Hospital; Dr. Ronald Long, a physician employed at the State Correctional Institute at Smithfield; and Dr. William Ellien, a psychiatrist employed at the State Correctional Institute at Smithfield.  Presently pending are several motions to dismiss the amended complaint.[1]  On October 10, 2000, a motion to dismiss the Plaintiff's amended complaint was filed on behalf of William Steinour, M.D. **(Doc. 22)**.  Also filed on October 10, 2000, was a motion to dismiss the Plaintiff's amended complaint which was filed on behalf of Dr. Long. **(Doc. 21)**.  Then, on October 20, 2000, a motion to dismiss the amended complaint was filed on behalf of William G. Ellien, M.D. **(Doc. 28)**.  The motions are ripe for disposition.

---

1. An Answer was timely filed on behalf of the Adams County Defendants.

## I. Allegations of the Amended Complaint.

The Plaintiff alleges that on August 25, 1999, he was transferred to the Adams County Prison for the purpose of attending a Post Conviction Relief Act Hearing. On August 27, 1999, after attending the hearing, he was returned to the Adams County Prison and, upon arrival, was handcuffed behind his back and shackled about the ankles by Defendant Shelton. Thereafter, the Plaintiff was led into a small room and, in the presence of Defendants Jennings, Duran, Hankey, Hientzelman and John Doe, Defendant Cluck ordered the Plaintiff to strip. The Plaintiff alleges that he was unable to comply with the order due to the fact that he was handcuffed behind the back and shackled at the ankles. After refusing the order, the Plaintiff was then, without warning, "shot in the face with O.C. Pepper Foam." (Doc. 18, p. 3). The Plaintiff was having difficulty breathing and seeing. He lost his balance and hit his head on a computer monitor. Defendant Duran then gave the order to take the Plaintiff down. Plaintiff alleges that Defendants Cluck, Jennings, Hankey, Hientzelman, and Shelton knocked the Plaintiff to the floor, twisted his arms, and kicked and kneed him in his back and side.

The Plaintiff was then thrown into a concrete shower stall, where he was knocked unconscious. Defendant Duran forcibly removed the Plaintiff from the shower, knocked him to the floor, and stomped his foot into the Plaintiff's neck. The restraints were then removed and the Plaintiff consented to the strip search. Thereafter, the Plaintiff requested that he be taken to the Gettsyburg Hospital Emergency Room as there are no medical facilities at the Adams County Prison.

The Plaintiff alleges that Dr. Steinour of the Gettysburg Hospital refused to address the Plaintiff's request for anti-seizure medications as well as his complaint of loss of consciousness. Dr.

2

Steinour diagnosed the Plaintiff with multiple contusions and released him back to the care of the Adams County Prison.

On or about August 30, 1999, the Plaintiff alleges that Defendants Orth and Vazquez witnessed him in a state of convulsions for 1 ½ hours before transporting him to the Gettysburg Hospital. Once at Gettysburg, he was immediately admitted to the critical care unit. According to the Plaintiff, the attack was brought on by "a series of pharmacological deviations prescribed by defendant's Dr. Ronald Long and Dr. William Ellien of SCI-Smithfield." (Doc. 18, p. 4). Apparently, in June of 1999, Dr. Long abruptly discontinued the Plaintiff's anti-seizure medication. Subsequently, the Plaintiff questioned both Dr. Long and his psychiatrist, Dr. Ellien, about why the seizure medication was discontinued but was never provided with a satisfactory answer.

It is the Plaintiff's position that "[t]he abrupt discontinuance of Dilantin by defendant Dr. Ronald Long, as well as the prescription anti-depressant Imipramine, in combination with the physical and emotional trauma sustained during the use of excessive force in A.C.P. synergistically caused plaintiff to enter into the aforementioned life threatening "Status Epilepticus" seizures that occurred on August 29, 1999." (Doc. 18, p. 4).

II. Motions to Dismiss.

A. Standard.

When evaluating a motion to dismiss, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim

3

which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

B. *Motion of Dr. Steinour.*

In order for the Plaintiff to state a 42 U.S.C. §1983 claim, Plaintiff must first show that this Defendant acted under color of state law. Action under color of state law requires "that the defendant in a §1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48 (1988). The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself. *Gorman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

"Supreme Court jurisprudence outlines several approaches or discrete tests for detecting the presence of action under color of state law. The tests have included the exclusive government function approach, the joint participation or symbiotic relationship approach and the nexus approach." *Id.* at 639. The traditional exclusive governmental function test concerns whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Klavan v. Crozer-Chester Medical Center*, 60 F. Supp.2d 436, 441, f.n. 5 (E.D. Pa. 1999) *quoting Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). "The 'symbiotic relationship' test examines the relationship between the state and the alleged wrongdoer to discern whether there is a great degree of interdependence between the two." *Klavan*, 60 F.Supp.2d at 441. And, the nexus approach

4

"focuses on the connection between the state and the specific conduct that allegedly violated the plaintiff's civil rights...." Id. at 442.

The Plaintiff alleges that on August 27, 1999, "Dr. William J. Steinour, who is familiar with plaintiff's past history of epilepsy, refused to address plaintiff's request for anti-seizure medications, as well as his complaint of losing consciousness, diagnosing the Plaintiff with, 'Multiple contusion' and released plaintiff to the care of A.C.P." (Doc. 18, p. 3 ¶ 6).

The Plaintiff has failed to sustain his burden, in that Defendant, as a physician employed at Gettysburg Hospital, was not acting under color of state authority. "[C]ourts have held that the provision of hospital services is not a traditional public function exclusively reserved to the state." Klavan, 60 F. Supp.2d at 441, f.n. 5. There is no indication that 'the State has so far insinuated itself into a position of interdependence with [Dr. Steinour] that it must be recognized as a joint participant in the challenged activity....' Id. at 442. Nor has the Plaintiff demonstrated that there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Id. Since 42 U.S.C. §1983 provides relief for infringement of civil rights by an individual who acts under color of state law, and does not apply to purely private conduct, Plaintiff is unable to maintain a Section 1983 action against Defendant Steinour. It will therefore be recommended that the motion to dismiss filed on behalf of Defendant Steinour be granted.

### C. *Motions to Dismiss of Dr. Long and Dr. Ellien.*

#### 1. Failure to exhaust administrative remedies.

Both defendants move to dismiss the complaint, arguing that the Plaintiff has failed to exhaust his administrative remedies. Prior to initiation of an action such as this, the Plaintiff is required to exhaust his administrative remedies. 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System. DC-ADM 804 (1994). After attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Chief Hearing Examiner. DC-ADM 804-2 (1997).

In response to the Defendants' motions to dismiss the complaint, the Plaintiff states that he was initially erroneously informed that it was not necessary to file a grievance.[2] However, upon

---

2. The Plaintiff filed two separate responses to the motion to dismiss of Dr. Ellien. He filed a brief on November 3, 2000 (Doc. 37). A second brief was filed on January 9, 2001 (Doc. 43). Defendant Ellien then moved to strike the Plaintiff's second response. That motion was denied by order dated May 1, 2001, (Doc. 52) and Defendant was afforded an opportunity to respond to the Plaintiff's contentions regarding exhaustion of his administrative remedies. Defendant Ellien availed himself of that opportunity by filing a response to the Plaintiff's second response on May 15, 2001. (Doc. 54).

6

becoming aware that it was necessary, he utilized the grievance procedure as required. For instance, he submits a copy of a grievance that he filed on October 26, 2000, dealing with the issues raised in his complaint, as well as a copy of the grievance officer's summary denying the Plaintiff's grievance. (Doc. 18, Exhibits A and B). The Plaintiff also represents that he appealed to the Chief Hearing Examiner pursuant to DC-ADM 804 VI. C. 1., but that the Chief Hearing Examiner never responded. Defendant Ellien takes the position that because the Plaintiff has not submitted proof of his appeals, it should be concluded that the Plaintiff failed to exhaust his administrative remedies and the complaint should be dismissed. (Doc. 54, p. 3).

In deciding a Motion to Dismiss, the allegations set forth in the Complaint must be accepted as true. Accordingly, the Plaintiff need only sufficiently allege that he has exhausted his remedies. Defendants' argument is more appropriately considered in the context of a motion for summary judgment. Since the Plaintiff has sufficiently alleged exhaustion, it will be recommended that the Complaint will not be dismissed for failure to exhaust administrative remedies.

We would note that Dr. Long has only moved to dismiss the complaint on this ground. It will therefore be recommended that the motion filed on behalf of Dr. Long be denied. However, Dr. Ellien has also moved to dismiss the complaint on the grounds that the Plaintiff has failed to allege that he was deliberately indifferent to the serious medical needs of the Plaintiff. We turn to that issue next.

### 2. Failure to plead deliberate indifference.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v.*

7

*McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).

As stated above, Dr. Ellien moves to dismiss the complaint on the grounds that the Plaintiff has failed to allege the Dr. Ellien was deliberately indifferent. However, on page five (5), ¶A6 of the Amended Complaint, the Plaintiff specifically alleges that "[t]he actions of defendant Dr. William Ellien in prescribing the drug Tofranil known to decrease the seizure threshold, with

8

foreknowledge that plaintiff was epileptic and had been abruptly withdrawn from his anti-seizure medications and the seizure risk associated with the withdrawal of said medication and the addition of the drug Tofranil he prescribed constitutes deliberate indifference to the Eighth Amendment of the United States Constitution." Clearly, such allegations are sufficient to state a claim of deliberate indifference to a serious medical need under the Eighth Amendment. It will therefore be recommended that the motion to dismiss filed on behalf of Dr. Ellien be denied.

### III. Recommendation.

Based on the foregoing, it is respectfully recommended that the Motion to dismiss filed on behalf of Dr. Steinour **(Doc. 22)** be granted. It is further recommended that the motions to dismiss filed on behalf of Drs. Ellien and Long **(Docs. 21 and 28)** be denied and that the matter be remanded to the undersigned for further proceedings.

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: June 4, 2001

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON E. BENSON, | : CIVIL NO. **1:CV-00-1229** |
| Plaintiff | : |
| | : (Judge Caldwell) |
| v. | : |
| | : (Magistrate Judge Blewitt) |
| THOMAS DURAN, et al., | : |
| Defendants | : |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 4, 2001.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: June 4, 2001

2