IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
JUN - 1 2001

PER _____
DEPUTY CLERK

JASON E. BENSON,                    :        CIVIL ACTION
                Plaintiff           :
        V.                          :
                                    :        (Judge Caldwell)
                                    :        (Magistrate Judge Blewitt)
THOMAS DURAN, et al.,               :
                Defendants          :        NO.1:CV-00-1229

REPLY TO DEFENDANT WILLIAM ELLIEN'S
RENWED MOTION TO DISMISS

        The defendant William Ellien, has been allowed to respond

to plaintiff's response to his motion to dismiss. After an examination

of plaintiff's response, Ellien, has come to the conclusion that there

is no reason why plaintiff's complaint should not be dismissed. Nothing

could be further from the truth.

        Defendant Ellien, asserts that plaintiff has failed to show

"that he has utilized the two tiers of appeals" made available to him

by DC-ADM804. To begin with, there are not two tiers of appeals for

"Medical Grievances;"  DC-ADM804 C. 1. "An Initial Review Decision of

a grievance on a Health Care or medical treatment issue may be appealed

directly to the Central Office Medical Review Committee for Final

Review within five (5) days of the receipt by the inmate Initial Review

decision. A drievance for which the Corrections Health Care Administra-

tor conducted the Initial Review will usually be considered a Medical

Grievance."

        Plaintiff has submitted in his response (12/28/00) at

exhibit "A" which, is the Initial Review Response to his medical issues

in greivance #SMI-383-00, and the plaintiff also submitted as an exhibit

his Appeal of Grievance #SMI-383-00, to the Chief Hearing Examiner/

COMRC.

Plaintiff's appeal was/is in accord with the Department of Corrections policies; perhaps defendant Ellien, overlooked the three paged appeal, in any event, here is a copy for the court's review. See exhibit "A". Furthermore, the Department of Corrections Officials are aware of the fact that the ICU (Inmate Citizens Union) Consent Decree, is no longer in effect and therefore, certain rules are overlooked and certainly medical grievances are routinely dismissed on final review as plaintiff's has been.

The defendant Ellien, also states that plaintiff "never requested monetary relief in the administartive process." Again, nothing could be further from the truth, plaintiff stated on page 2 of his grievance, "To rectify this situation, I am seeking $500,000 in monetary relief." More often than not, appeals are answered and te grievant is never notified; Hence, the reasoning of the Honorable Maryanne Trump Barry, Third Circuit Judge, "In response to the inatte- ntion in this case, [w]e issue a simple yet [s]tern reminder: federal courts and prisoners alike depend upon prison officials to take seriously their roles within the relevant administrative grievance shceme. Only prompt attention and formal, guided response to timely prisoner grievances will facilitate the overarching policies of the PLRA." Geisler.

The plaintiff cannot quite figure out defendant Ellien's, second argument: "Benson has failed to show that he has pled subject- ive awareness of a substantial 'risk of harm to Ellien.' Instead, he contends that  Ellien's supposed statement that Benson repeats in the complaint that antiseizure medication was not his field of experience

since he was a psychiatrist and that he should go to Dr. Long shows he had subjective knowledge. Benson misses the point totally. Benson has to plead that Ellien knew that [his referral of Benson to Long] presented a substantial risk of harm to Benson. No such averment appears anywhere in the complaint. Benson persists in utilizing a 'should have known standard' which has been rejected by every federal court to consider it." Def., Ellien, also asserts that "the complaint failed to state that the defendant physician knew that his treatment presented a substantial risk of harm to the prisoner...Benson depends on the obviousness of the harm." Plaintiff submitts that that argument is also misfigured.

The plaintiff has stated in his complaint at "Facts ¶ 11," the circumstances/details that he believes he can prove and which were relevant to his legal claims.  And in the complaint there is a section called/titled "Claims for Relief", this is also sometimes called [causes of action], and they explain which of my legal rights have been violated and identifies the facts that establish that violation of the law. For example, at ¶ 5, plaintiff states "The...actions of... Dr. William Ellien...in prescribing an anti-depressant drug [k]nown to lower seizure threshold placed plaintiff in direct risk of serious injury,...and death constitutes deliberate indifference..." That is subjective knowledge. Moreover, in ¶ 2, of the Initial Response to plaintiff's Grievance, defendant Ellien was quoted as follows: "We reviewed for each medicine its benefits and indications, its side effects and precautions and medicine to medicine interactions..." He noted "his understanding and gave consent." This is also known as subjective knowledge.

Plaintiff directs the Court's attention to what defendant Ellien was quoted as say i.e., the reviewing of medications side effects, precautions and interactions; The plaintiff has attempted to question def., Ellien about the same statements made above and Ellien continuously evades answering plaintiff's Interrogatories and requests for Admissions with unfounded objections. The plaintiff submitted the following interrogatory to def., Ellien, "Are there any conditions, warnings, or concerns that must be heeded to with Imipramine Hydro-chloride and epileptics?  A. Objection. Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant. In addition, this interrogatory [s]eeks an expert opinion." This answer is totally evasive and submitted for the purposes of counteraction or to thwart plaintiff's evidence gathering.

Out of twenty two (22) interrogatories submitted to def., Ellien, eighteen (18) of them were objected to despite the fact that the defendant can and certainly has the capcity to answer. The very interrogatory illustrated above should have been answered by defendant Ellien, whereas he stated that [w]e reviewed the side effects of the medications, precautions and interactions. Majority of his answers are to say the least, prevarications/lies. In those (22) interrogatories def., Ellien asserts that plaintiff "seeks an expert opinion" six (6) times to matters that should be easily answered by him. See exhibits "B & B-1"

Plaintiff has met with the same results in his requests for Production of Documents, and Admissions. Defendant Ellien refuses to turn over or even submit the waiver form plaintiff sent counsel, in order to receive plaintiff's medical file.

Not only will they not attempt to get plaintiff's records with the waiver, they've lied and told plaintiff that they could not get them although, prison official's have told plaintiff that they never requested the medical files. Plaintiff has not requested any documents that are privileged yet, the defendant claims either attorney-client or work product privilege without citing any authority.

The defendant is in direct violation of Fed.R.Civ.P. 37 et seq., especially "failure to disclose; false or misleading disclosure; and refusal to admit" to things he knows to be fact and relevant. In plaintiff's request for admissions, the def., Ellien, objects obtusely and/or objects on the grounds that "it appears that this request for admission is in reality a request for an expert opinion,..." Since the def., Ellien, cannot answer these simple interrogatories or admit to the facts that plaintiff has put before him it would only be fair to do as the Appeals Court have done, "Often, whether an instance of medical misdiagnosis resulted form deliberate indifference or negligence is a factual question requiring exploration [b]y expert witnesses. Rogers, 792 F.2d at 1058; see also Greason, 891 F.2d at 835(conflicting expert testimony concerning extent to which psychiatrist may have departed from professional standards in abruptly discontinuing inmates psychiatric medication must [b]e resolved by trier of fact); Waldrop v. Evans, 871 F.2d 1030,1035 (11th Cir.1989)(same)"quoting Smith v. Jenkins, 919 F.2d 90 (8th Cir.1990). Likewise, Information is not privileged if it is available to others i.e., prison employees, their attorney's, insurance companies, etc etc. See Fed.R.Civ.P. 26 (b)(5); In re Natta, 48 F.R.D. 319, 322 (D.Del.1969); accord, 732 F.2d 1302,1314 (7th Cir. 1984); Bergman v. Kemp, 97 F.R.D. 413,416 (W.D.Mich.1983)(A privilege "should not be regarded as a right which can be disclosed to some and

withheld from others); <u>Clark v. Township of Falls</u>, 124 F.R.D. 91,94
(E.D.1988).

In light of the above, plaintiff believes that defendant
Ellien's motion to dismiss be denied.

CONCLUSIONS

Do to the defendant Ellien's failures to disclose, false
and misleading information, andhis refusal to admit to common, yet,
relevant situations pertaining to his profession; the plaintiff is
requesting that this Honorable Court, order def., Ellien, to reanswer
all of plaintiff's interrogatories and admission under oath and pursuant
to penalty of perjury again. And for willfully  obstructing plaintiff's
efforts to obtain discovery.

WHEREFORE, for the foregoing reasons plaintiff respectfully
requests that defendant Ellien's motion to dismiss be denied.

Respectfully submitted,

Date: 5/24/01

Jason E. Benson, Plaintiff

-6-

<u>CERTIFICATE OF SERVICE</u>

      I, Jason E. Benson, Plaintiff, hereby certify that a true and correct copy of the foregoing document was served upon the following via, postage prepaid mail:

```
THOMAS, THOMAS & HAFER, LLP
   ATTORNEY'S AT LAW
305 North Front Street
Sixth Floor, P.O. Box 999
Harrisburg, PA 17108

MONAGHAN & GOLD, P.C.
   ATTORNEY'S AT LAW
Manor Professional Building
7837 Old York Road
Elkins Park, PA 19027
```

Respectfully,

Jason Benson, Plaintiff

Date: 5/24/01

-7-

Please be advised, these exhibits
are applicable to Plaintiff's
Motion for order compelling
disclosure or discovery and for
expenses and sanctions;  AND For

Reply to Defendant William Ellien's
Renewed Mtion to Dismiss.

THANK YOU

Exhibit "A"    Appeal Pg. 1

**DC-804**
**PART 1**

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.    SMI-383-00

| TO: GRIEVANCE COORDINATOR Chief Hearing Examiner | INSTITUTION S.C.IS | DATE 11/4/00 |
|---|---|---|
| FROM: (Commitment Name & Number) D96483 Jason E. Benson | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT HB-11 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Enclosed please find the goldenrod copy of grievance # SMI-383-00, as well as a copy of the DC-804 PT I response to said grievance as written by Grievance Coordinator Sharon Burks. This is an appeal to her findings. Mrs. Burks begins her response by writing "... you neglect to include the fact that you abruptly stopped taking your anti-seizure medication (Dilantin) on 5.26.99 through 6.4.99. Nurses discussed medication compliance w/ you and referred you to Dr. Long." What Mrs. Burks fails to note is that I submitted a sick call slip & numerous request slips to the Med. Dept./Dr. Long explaining that I was experiencing adverse reactions to the Dilantin. Her claim that I had stopped taking the Dilantin is articulated to illustrate resistance to treatment on my behalf, however the claim is false. Mrs. Burks goes on to write "After discussing your treatment on 6.5.99 Dr. Long accepted your decision to abruptly stop taking the medication on your expression of autonomy." Again, Mrs. Burks' eloquent articulation of what transpired is illustrated to the benefit of Dr. Long. That specific visit, I had come to request Dr. Long to remove me from

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____    _____
Signature of Grievance Coordinator                    Date

DC-804
PART 1

*Appeal Pg.2*

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

the Dilantin and to place me back on phenobarbital, a seizure med I was on prior to the Dilantin.
Dr. Long adamantly refused and abruptly discontinued my Dilantin without prescribing at least an
adequate substitute. In the 1994 Physicians Desk Reference under "Dilantin" it states "Abrupt
withdrawl from Dilantin in epileptic patients may precipitate in status epilepticus" (a deadly
form of seizures) Please read paragraph 2 of D.C. 804 II. Never did Dr. Ellien discuss, at any
length, the seizure antagonist quality of Imipramine. At this point I was at risk for severe
(if not deadly) seizures, and prescribed a seizure antagonist. On August 30, 1999 just 2 months
after the aforementioned pharmacological deviations imposed upon me by Dr. Long and Dr.
Ellien I was in Adams County Prison on ATA when I fell into a deep state of status
epilepticus seizures, landing me in the Gettysburg Hospitals Critical Care Unit.
The consulting neurologist reported his impressions as "Status Epilepticus due to
the abrupt withdrawl of ~~Dalmane~~ Dilantin and the effects of other drugs on the

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                                    _____
Signature of Grievance Coordinator                                            Date

**DC-804**
**PART 1**

*Appeal*
*Pg. 3*

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**          GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

seizure threshold. Dr. Long and Dr. Ellien are my primary medical and psychiatric caregivers, and the only physicians able to write me a script for medication. Dr. Long and Dr. Ellien both knew of and disregarded the risks of thier pharmeceutical deviations that nearly killed me on 8.30.99. I have significant documentation from both the S.C.I.S Medical Dept. and Gettysburg Hospital to demonstrate these claims, and am willing to provide you w/ copies of any and all of them if necessary to help you decide these matters.

Due to the severity and significance of the trauma and injuries sustained during the aforementioned events I am seeking relief in damages at $500,000 from both Dr. Long & Dr. Ellien.

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____
Signature of Grievance Coordinator                              Date

Exhibit "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON E. BENSON                    :        CIVIL ACTION

       V.                          :        (Judge Caldwell)
                                            (Magistrate Judge Blewitt)
Thomas Duran, et al.               :        NO. 1:CV-00-1229

PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION
OF DOCUMENTS

Pursuant to Rules 33 and 34, Fed.R.Civ.P., the plaintiff submits the following interrogatories and requests for documents to the defendant William C. Ellien. You are directed to answer each of the interrogatories in writing under oath, and produce each of the requested documents within 30 days of service.

1. How long have you practiced medicine?

2. As a physician, are you trained in pharmacology

3. Were you taught what medications should and should not be administered to epileptic patients?

4. Prior to seeing your patients, do you review each patients medical record to ascertain what medications they're taking before you prescribe any medications for them?

5. State the duties  of defendant Ellien, M.D., at the State Correctional Facility ("Smithfield"). If those are set forth in any job description or document, produce the document.

6. Are you licensed to prescribe medications, and if so by what authority?

7. during the time you treated the plaintiff, were you aware that he suffers from epilepsy?

8. During the time you treated the plaintiff, were you aware of the medications plaintiff was taking for his seizure disorder?

9. What medications did you prescribe to plaintiff in July of 1999?

10. Have you ever had disciplinary or civil actions brought against you in your professional capacity, at SCI-Smithfield, or anywhere else that you have worked?

11. What effects would Tofranil, Serzone, and Ativan [when mixed together] have on an unmedicated epileptic patient?

12. How are you insured?

13. What is your job at Magellan Behavioral Health Services?

14. Produce any and all insurance agreements that you have personally, and/or by Magellan Behavioral Health Services under which the defendant Ellien, may be liable to satisfy part or all of a judgment which may be entered in an action or to indemnify or reimburse for payments made to satisfy a judgment or settlement?

15. Please explain how you have met with the plaintiff during your treatment sessions?

16  What were you treating plaintiff for?

17. What would happen to an epileptic patient that has been abruptly withdraw  from Phenytoin Sodium?

18. Are there any conditions, warnings, or concerns that must be heeded to with imipramine hydrochloride and epileptics?

19. Explain the following statement as if you were explaining it to a laymen to medical terms: "[Seizure disorder, Status Epilepticus due to the discontinuation of Dilantin plus the effects of other drugs on the seizure threshold?"]

20. What causes a "status epilepticus?"

21. Produce the "Vital Statistics" **and** any warnings, possible interactions, side effects, or special information pertaining to the following drugs: Tricyclic Antidepressants, Benzodiazepines (Ativan or Imipramine), or Serzone), and Dilantin, and Phenobarbitol.  In addition, to all of the drugs that the plaintiff is currently on.

21. Where are you currently employed and why are you not treating patients at SCI-Smithfield anymore?

22. How many other times have you prescribed tofranil, serzone, and ativan to unmedicated epileptic patients?

Date: March 23, 2001

Jason Benson, Plaintiff
DS-6483, SCI-Smithfield
P.O.Box 999, 1120 Pike Street
Hu  ingdon, PA 16652

Exhibit "B-1"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON E. BENSON                     :        CIVIL ACTION

        V.                          :        NO. 1:CV-00-1229

WILLIAM G. ELLIEN, M.D., et al.     :        (Judge Caldwell)
                                             (Magistrate Judge Blewitt)

**DEFENDANT'S, WILLIAM ELLIEN, M.D.,**
**RESPONSES TO PLAINTIFF'S, JASON E. BENSON,**
**INTERROGATORIES**

Answering defendant, William Ellien, M.D., by and through his attorneys,

Monaghan & Gold, P.C., hereby responds to Plaintiff's, Jason Benson,

Interrogatories, and states as follows:

Answering defendant objects to these Interrogatories to the extent that

they seek information which is beyond the scope of permissible discovery under

the Federal Rules of Civil Procedure, seek information which is protected by the

attorney-client and work product privileges, and which is otherwise privileged or

non-discoverable under the Rules.  Further, the objections contained herein are

made upon advice of counsel.

1.      Objection.  Answering defendant objects to this interrogatory on the

grounds that it seeks information which is irrelevant to any claim asserted in

Plaintiff's complaint against answering defendant.

2.      Objection.  Answering defendant objects to this interrogatory on the

grounds that it seeks information which is irrelevant to any claim asserted in

Plaintiff's complaint against answering defendant.  In addition, this interrogatory

is vague and ambiguous, and subject to varying interpretation as written. Without waiving said objections, and by way of further response, answering defendant states that as a general matter, subjects relating to the field of pharmacology are part of all medical school curriculum.

3.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.  In addition, this interrogatory is vague and ambiguous, and subject to varying interpretation as written. Without waiving said objection, and by way of further response, issues relating to the appropriateness of the use of any particular medication for any particular purpose are addressed in various ways, including formal training, such as medical school, through experience, through reading of articles and textbooks, and through materials and information supplied by pharmaceutical manufacturers.

4.    Prior to the treatment of patients, answering defendant acquires the appropriate familiarity with their medical history and medical records.

5.    The provision of psychiatric services to inmates at SCI-Smithfield.

6.    Yes.  The Commonwealth of Pennsylvania and the federal Drug Enforcement Administration (DEA).

7.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.  Without waiving said objection, and by way of further response, answering defendant states that he is

aware that the Plaintiff has been diagnosed with a seizure disorder and status epilepticus.  Plaintiff's medical records speak for themselves.

8.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.  Without waiving said objection, and by way of further response, answering defendant states that he was aware, at the relevant times, of the medications that Plaintiff had been prescribed.

9.    On July 27, 1999, answering defendant ordered the following medications for the plaintiff: Tofranil, 50 mg. daily for a period of one week, to be increased to 75 mg. daily for a period of one week, then increased to 100 mg. daily thereafter.  Ativan, 1 mg. q 6 hours PRN for anxiety attacks, with a maximum of 2 doses per day, and 6 doses per week.

10.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.

11.    Objection.  Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.  In addition, this interrogatory seeks an expert opinion.

12.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.

13.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.

14.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.

15.    Objection.  Answering defendant objects to this interrogatory on the grounds that it is unclear as to its meaning, is confusing, and makes no sense as written, and is therefore not capable of being responded to as stated.

16.    During the time that answering defendant was treating the Plaintiff, he was being treated psychiatrically primarily for panic attacks without (and at times with) agoraphobia.  Plaintiff has also been diagnosed during the time in question as having mixed personality disorder.

17.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.  In addition, this interrogatory seeks an expert opinion.

18.    Objection.  Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.  In addition, this interrogatory seeks an expert opinion.

19.    Objection.  Answering defendant objects to this interrogatory on the grounds that it is vague as to what is being asked, and very confusing as written,

and as such cannot be responded to as stated. In addition, it appears that Plaintiff attempts to seek an expert opinion through this interrogatory, and it is objected to on that basis as well. In addition, although vague and confusing, this interrogatory appears to seek information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.

     20.    Objection. Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant. In addition, this interrogatory seeks an expert opinion.

     21.    [First #21]    Objection. Answering defendant objects to this interrogatory on the grounds that it makes no sense as written, is vague, and contain terms which are undefined, and which have various or indeterminate meanings under the circumstances. Answering defendant does not know what Plaintiff means or intends by "vital statistics" or "special information" as relates to medications, plaintiff fails to explain, and this interrogatory is therefore not capable of being responded to as stated. In addition, this interrogatory seeks an expert opinion.

     21.    [Second #21]    Objection. Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant.

     22.    Objection. Answering defendant objects to this interrogatory on the grounds that it seeks information which is irrelevant to any claim asserted in Plaintiff's complaint against answering defendant. In addition, this interrogatory

assumes the existence of facts not in evidence, and is based upon a false

premise, and therefore is not capable of being responded to as stated.

MONAGHAN & GOLD, P.C.

BY: _____
ALAN S. GOLD
SEAN ROBINS
Attorneys for Defendant,
William Ellien, M.D.

7837 Old York Road
Elkins Park, PA  19027
(215) 782-1800

DATE: _3/30/01_

Exhibit "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON E. BENSON | : | CIVIL ACTION |
| V. | : | NO. 1:CV-00-1229 |
| WILLIAM G. ELLIEN, M.D., et al. | : | (Judge Caldwell) |
| | | (Magistrate Judge Blewitt) |

**DEFENDANT'S, WILLIAM ELLIEN, M.D.,
RESPONSES TO PLAINTIFF'S, JASON E. BENSON,
REQUEST FOR ADMISSIONS**

Answering defendant, William Ellien, M.D., by and through his attorneys,

Monaghan & Gold, P.C., hereby responds to Plaintiff's, Jason Benson, Request

for Admissions, and states as follows:

Answering defendant objects to these Request for Admissions to the

extent that they seek information which is beyond the scope of permissible

discovery under the Federal Rules of Civil Procedure, seek information which is

protected by the attorney-client and work product privileges, and which is

otherwise privileged or non-discoverable under the Rules.

Request for Admission No. 1:  That plaintiff was and/or is epileptic in July

27, 1999, as well as to date.

Response:  Objection.  Answering defendant objects to this request

on the grounds that it seeks information which is irrelevant to any issue in this

matter relating to answering defendant, and that it is not reasonably calculated to

lead to the discovery of admissible evidence as to any issue relating to

answering defendant.  Answering defendant is a psychiatrist, and provided the

plaintiff with psychiatric treatment and medication.


Request for Admission No. 2:  You discontinued the plaintiff's psychiatric

medication, then start them again in between July and August 1999.

Response:  Denied.  Plaintiff was first seen by answering defendant

while at SCI-Smithfield on July 27, 1999.


Request for Admission No. 3:  When you saw and treated the plaintiff on

7/27/99, the plaintiff was not on any anticonvulsants for over 52 days.

Response:  Answering defendant is without information sufficient to

either admit or deny this request.  Answering defendant is a psychiatrist, and

provided the plaintiff with psychiatric treatment and medication.  Plaintiff was first

seen by answering defendant while at SCI-Smithfield on July 27, 1999.  Plaintiff's

medical records speak for themselves.


Request for Admission No. 4:  You are trained in pharmacology and

authorized to prescribe medications to epileptics.

Response:  Answering defendant objects to this request on the

grounds that it is vague and ambiguous, and capable of differing interpretations,

unclear, and as such not capable of being responded to as stated.  Plaintiff does

not explain what "medications" he refers to, and the use of the term

"pharmacology" in this context is too broad to be reasonably interpreted.  Without

waiving said objections, and by way of further response, answering defendant states that he is a psychiatrist, and provided the plaintiff with psychiatric treatment and medication.  Answering defendant, as a medical doctor, as well as a psychiatrist, has training in various aspects of pharmacology, and within his practice as a psychiatrist prescribes medication relating to that practice.

Request for Admission No. 5:  Imipramine does not bother the seizure threshold, or the effectiveness of anticonvulsants.

Response:  Objection.  Answering defendant objects to this request on the grounds that it is confusing as written and makes no sense.  It is unknown what Plaintiff means by imipramine "bothering" the "seizure threshold," what Plaintiff means by "seizure threshold," or what "anticonvulsants" plaintiff is refers to in this request.  As written, this request makes no sense, and is not capable of being responded to as stated, and is therefore denied.  In addition, it appears that this request for admission is in reality a request for an expert opinion, and as such, answering defendant objects on that grounds.

Request for Admission No. 6:  Ativan must be taken in combination with Tofranil when prescribed for an epileptic.

Response:  Objection.  Answering defendant objects to this request on the grounds that it is in reality a request for an expert opinion.  Without waiving said objection and by way of further response, answering defendant stated "denied."

Request for Admission No. 7:  An epileptic should periodically be removed from anticonvulsants and prescribed imipramine bringing up their depressive state.

Response:  Objection.  Answering defendant objects to this request on the grounds that it is in reality a request for an expert opinion.  Without waiving said objection and by way of further response, answering defendant states, "denied."

Request for Admission No. 8:  You prescribed Ambien and Klonopin on 9/23/99.

Response:  It is admitted that on 9/23/99 answering defendant ordered Ambien 10 mg. daily and continued Klonopin 0.5 mg. in the morning, and 1 mg. in the evening.

Request for Admission No. 9:  You should have prescribed Ativan and Tofranil on 9/23/99, instead of the drugs in item 8 of this request.

Response:  Denied.

Request for Admission No. 10:  There are no rules to be followed when prescribing medications to epileptics.

Response:  Objection.  Answering defendant objects to this request on the grounds that it is in reality a request for an expert opinion.  In addition, this

request is vague and ambiguous, and incapable of being responded to as stated.

Without waiving said objection and by way of further response, answering

defendant states that there exist protocols pertinent to the prescription of all

medications.

MONAGHAN & GOLD, P.C.

BY: _____

ALAN S. GOLD
SEAN ROBINS
Attorneys for Defendant,
William Ellien, M.D.

7837 Old York Road
Elkins Park, PA  19027
(215) 782-1800

DATE: _3/30/01_