FILED
SCRANTON
AUG 3 0 2001
PER_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON E. BENSON | : | CIVIL ACTION |
| V. | : | NO. 1:CV-00-1229 |
| WILLIAM G. ELLIEN, M.D., et al. | : | (Judge Caldwell)<br>(Magistrate Judge Blewitt) |

**DEFENDANT'S, WILLIAM G. ELLIEN, M.D., RESPONSE TO PLAINTIFF'S "MOTION FOR ORDER COMPELLING DISCLOSURE AND DISCOVERY AND FOR EXPENSES AND SANCTIONS"**

### 1. Introduction

On or about June 1, 2001, Plaintiff, Jason E. Benson ("Benson") apparently filed with the Court, a motion titled "Motion for Order Compelling Disclosure or Discovery and for Expenses and Sanctions," directed against Defendant, William G. Ellien, M.D. ("Ellien") regarding various responses to Benson's discovery requests which Benson believes are deficient. This motion was not served at that time upon Ellien. The first notice of the motion which Ellien received was through the July 23, 2001 order entered by Magistrate Judge Thomas M. Blewitt, requiring the "defendants" to respond to Benson's discovery requests.

Ellien at that time filed with the Court a response detailing the failure of Benson to serve defendant with the motion, and by Order dated August 24, 2001, Magistrate Judge Blewitt directed the Clerk to forward to counsel for Ellien a copy of the motion, and permitted Ellien until August 31, 2001, to file his response to the motion in question. Herein, Ellien responds to Benson's motion.

Initially it must be noted that there exists no prior Order of this Court as to which defendant, Ellien has failed to comply, and therefore no basis exists for the imposition of discovery sanctions. As is evident by the Motion itself, Benson is not complaining that Ellien has failed to respond to his discovery requests, but that he (Benson) believes that those responses are deficient. Second, it also appears that Benson has failed to provide, as part of this Motion, copies of the requests at issue and the responses, as required for the determination of any motion to compel. On that basis alone, Benson's motion to compel should be denied.

### 2. Plaintiff's Request from Dr. Ellien for a Copy of his Prison Medical Records File.

Under a cover letter dated March 30, 2001, counsel for Ellien timely provided Benson with responses to his Request for Admissions, and his "Interrogatories and Request for Production of Documents." (See a copy of the March 30, 2001, letter, attached hereto as Exhibit "A") By letter dated March 23, 2001, Benson's had requested that Ellien provide him at that time with "a complete copy of my medical records." Via the March 30, 2001 letter to Benson, counsel for Ellien clearly and concisely responded as to why it was not possible for Dr. Ellien to fulfill this request:

> Please be advised, that our client, Dr. Ellien, is not and has never been the custodian of your medical records and, while he, as any other of your medical providers has access to your records for the purpose of providing treatment, the records are and remain the property of the Department of Corrections. As such, our client does not have the authority, legal or otherwise, to produce for you a copy of your medical records file. Any such request for your medical

> records file must be made to the Department of Corrections, pursuant to their policies and procedures applicable to the provision of such records to inmates. We are not able to fulfill this request. (See EX. "A")

Dr. Ellien has no more legal authority to copy and forward to Benson a copy of his prison medical records file that anyone walking into the prison from off the street. Ellien is not the owner of the records. Ellien is not the custodian of the records. Ellien's access to the medical records of any inmate is limited to access for the purpose of providing and documenting treatment to the inmate. It is not his job nor his place to copy and distribute to inmates copies of their medical records files. Benson's medical records are the property of the Pennsylvania Department of Corrections. The Department of Corrections has its own policies and procedures as to the means and the method by which an inmate my view and copy his medical records file, a frequent request from inmates. There can be no question but that, at least as of March 30, 2001, Benson was aware that he had to contact the Department of Corrections to access his records. This procedure requires that Benson make a written request directly to the Department of Corrections for access to his medical records. It is unknown why Benson has chosen to disregard this policy and fail to make a request to the Department of Corrections for these records. Benson's Motion as it relates to obtaining a copy of his medical records file must be denied as Dr. Ellien is without authority to fulfill this request, and Benson may easily obtain these records directly from the Department of Corrections by following the applicable policy.

**3. Benson's Interrogatories and Responses Thereto.**

Benson's motion contains a number of general objections to Ellien's responses to both his interrogatories and requests for admissions. He asserts generally that the responses contained "flat out lies; failures to disclose documents; and for the lack of a better phrase, dummied-upped responses." Benson fails to related this assertion directly to any specific discovery request, and therefore it is not possible to generally respond, except to state that the assertion is both denied and unsupported.

Benson also asserts that objections made to certain of his requests were made "unjustifiably or unlawfully." He fails, however, to explain which of the objections were unjustifiable or "unlawful," or in what manner they were unjustifiable or "unlawful." Again, this failure to be specific in his assertion, makes it impossible to provide any specific response, except to state that the assertion is denied and unsupported.

Next, Benson refers this Court generally to a letter sent by him to counsel dated April 24, 2001, in which Benson complains at length that he is not satisfied with the responses provided to his discovery requests. In this respect, he goes through he interrogatory responses and the requests for admissions, and asserts over and over again that a response or objection is baseless or meritless, and attempts to convince counsel that some other response should have been required. The great bulk of Benson's "commentary" as to Ellien's responses takes the form of challenges to repeat the responses to the jury at the time of trial, and ad hominem attacks upon the professionalism or abilities of Dr. Ellien. Benson's April 24, 2001 letter contains very little of substance that may be

addressed in the context of his motion to compel. The letter contains almost nothing in terms of addressing the legal sufficiency of the responses, and Benson cannot simply rely upon it as the basis for this motion to compel. Counsel for Dr. Ellien stands behind the responses and objections made to Benson's discovery requests. He may not like the responses, he may wish that the responses were otherwise, but fails to cure any of the deficiencies, or to even attempt to address the deficiencies, which required that counsel interpose certain objections to improper discovery requests.

In his Motion itself, Benson at least attempts to articulate the legal bases for his dissatisfaction with certain of the discovery responses. He specifically addresses responses to Interrogatories Nos. 11 and 19; and Request for Admissions Nos. 3 and 5. These are discussed below.

It must also be noted that Dr. Ellien is a psychiatrist, and that his treatment of Benson was solely for his psychiatric condition.

**Interrogatory No. 11**: This question seeks a hypothetical response from Dr. Ellien concerning what would be the interactions of three different medications "when mixed together." Not only is this question improper in the context of this case, where Dr. Ellien solely treatment Benson for his psychiatric conditions, and where Benson alleges problems with his medication (or lack thereof) for his epilepsy, but because this question, even if asked in a coherent, and non-ambiguous manner, would seek an expert opinion which Dr. Ellien, as a defendant in this matter, is not obliged to provide to the Plaintiff. Benson seeks an opinion from Dr. Ellien as to issues relating to his medication or lack thereof

for his epilepsy condition, a condition for which he was treated by other physicians, and not Dr. Ellien. Benson, in essence, seeks an expert opinion from a psychiatrist, as to the appropriateness of treatment rendered by non-psychiatrists for a medical and not psychiatric condition. Dr. Ellien is not obliged to do so under the rules, and Dr. Ellien's opinion as to issues relating to Benson's treatment for epilepsy is not relevant to any claim or defense of a party to this matter. Finally, the question as written is vague and confusing: there is no information provided as to which medications were hypothetically given, at what times, in what dosages, and in conjunction with what if any other medications. It fails to state how long each medication was hypothetically given, and what the medication history was relevant to the hypothetical patient's treatment for epilepsy. Each of these factors will affect even a hypothetical response to this hypothetical question. As states, this question cannot fairly or reasonably be responded to.

**Interrogatory No. 19**: Again, this interrogatory seeks information which is pertinent to Benson's treatment for epilepsy, and not his psychiatric treatment. Benson fails to inform the Court that by the time he was seen by Dr. Ellien the first time for psychiatric treatment, another physician had seven (7) weeks earlier, discontinued his epilepsy medication (Dilantin). At no time was Dr. Ellien responsible for Benson's epilepsy treatment, management or medication, nor did Dr. Ellien make any decisions concerning this treatment. Dr. Ellien treated and medication Benson for his psychiatric conditions solely. Benson also fails to

inform the Court that his Dilantin was discontinued at his own insistence, long before he saw Dr. Ellien for the first time.

In this interrogatory, Benson asks that Dr. Ellien "explain ... as if you were explaining it to a layman" a specific statement: "Seizure disorder, Status Epilepticus due to the discontinuation of Dilantin plus the effects of other drugs on the seizure threshold." Not only is this quoted statement vague and confusing on its face, but it, again, seeks commentary by Dr. Ellien relating to the treatment (or hypothetical treatment) of a patient for epilepsy, a condition for which Dr. Ellien did not treat the Plaintiff. Benson asks, in essence, what would you tell a patient about this statement? How would you explain to a lay person a squib of what is apparently a medical diagnosis concerning an epilepsy condition? Again, this does not relate to the psychiatric conditions for which Dr. Ellien treated the Plaintiff. The information sought in this question is therefore irrelevant to any claim or defense in this matter by any party. Further, this question seeks an expert opinion from Dr. Ellien, and does so concerning an area of treatment which does not fall within his psychiatric practice, or relate to the treatment which he rendered to the Plaintiff.

**Requests for Admission No. 3**: Dr. Ellien responded to this request for admission that he was without sufficient information to either admit or deny the request. This request seeks an admission that Plaintiff had not been on anticonvulsant medications for 52 days prior to the first time that he saw Dr. Ellien. Again, this relates to an area of treatment, and a time period, as to which Dr. Ellien was not involved. The only possible source of information in response

to this request is a reading of the medical records, and not from any information personally possessed by Dr. Ellien. Dr. Ellien neither admits to nor denies the truth of this request for admission, and leaves the medical records to speak for themself. This is a perfectly appropriate response to this request for admission.

**Request for Admission No. 5**: Here, Dr. Ellien objected to the request on the grounds that it was confusing and made no sense as it was written. A party cannot be required to admit or deny the truth of a statement that is confusion, incomprehensible as written, vague or subject to varying interpretations. A party responding to a request for admission is entitled to be certain of the meaning of the request, and the effect of admitting or denying the truth of that request. In this case, it is not possible for Dr. Ellien to admit or deny the truth of this request because, as it is written by the Plaintiff, simply makes no sense. The request states: "Imipramine does not bother the seizure threshold, or the effectiveness of anti-convulsants." It is impossible to know what Benson means by a drug "bothering" a "seizure threshold," he fails to indicate what type of seizure he refers to, he fails to state the dosage or frequency of the Imipramine hypothetically being given, and he fails to state what "anticonvulsants" he is referring to, the dosages or frequency of their administration, or what other drugs the hypothetical patient may be taking. While Benson, in his motion, attempts to personally attack Dr. Ellien for his response, legal objections which (obviously) are interposed at the advice of counsel, Dr. Ellien has the right to be certain of the meaning of the questions being asked of him, and the right to be certain that any responses thereto cannot be

misinterpreted or misunderstood due to a poorly or impossibly phrased question. Despite his status as a pro se Plaintiff, Benson's interrogatories and requests for admissions must still be understandable, clear, and unambiguous in their meaning and interpretation. Despite the Plaintiff's pro se status, the defendants are no less entitled to object to improper questions or requests.

### 4. Benson's Further Complaints

In the bulk of the remainder of Benson's motion to compel, he attempts to complain that Dr. Ellien has, somehow, waived attorney-client privilege because he has made certain objections based upon the advice of counsel. This is patently and obviously nonsensical. It goes without saying that a party represented by counsel is entitled to act upon the advice of counsel, and the mere fact that he does so, does not, as Benson asserts dissolve the privilege. Benson's brief on these issues is rambling and equally nonsensical. Benson appears to predicate this line of thought upon the general preamble made to Ellien's discovery responses:

> Answering defendant objects to these Interrogatories to the extent that they seek information which is beyond the scope of permissible discovery under the Federal Rules of Civil Procedure, seek information which is protected by the attorney-client and work product privileges, and which is otherwise privileged or non-discoverable under the Rules. Further, the objections contained herein are made upon advice of counsel.

This is a catch-all, general objection, which is phrased as "to the extent" that the requested information either exceeds the permissible scope under the Rules, or impinges upon information which is protected by the attorney-client or attorney

work product privileges. A review of the responses to Benson's interrogatories and his requests for admission demonstrates that no specific objection was made based upon either privilege. Therefore, no information was withheld in either the responses to interrogatories, document requests or request for admissions based upon privilege. Benson's entire discussion concerning privilege is therefore moot.

Benson also briefly makes reference to a request for "a copy of the contract between Ellien's employer [Magellan Behavioral Health Services]." Benson fails to indicate with whom this contract with "Ellien's employer" is between, whether it is with Ellien or with the state. In any event, no such contract has been requested in Ellien's discovery requests.

Finally, in the conclusion of this motion, Benson asks that the Court order Dr. Ellien to identify expert witnesses that will be used at trial and the substance of their testimony. This is premature for several reasons. First, Dr. Ellien has not yet made any determinations as to the use or the retention of experts for the trial of this matter. Dr. Ellien intends to retain an expert for the purpose of performing an evaluation of the Plaintiff, and to review his treatment, but has not yet done so. At such time as an examination and evaluation has been conducted and a report rendered, the Plaintiff will be provided with a copy of that report and the curriculum vitae of the expert. There is no basis nor need at this time for the entry of an order compelling the production of expert information where it is premature, discovery is ongoing, an expert has not yet been retained, and the Plaintiff himself has identified no experts in this matter. Discovery should be

permitted to continue and conclude, and an expert report produced in the normal course of these events.

### 5. Plaintiff's Request for Sanctions

Benson asks that this Court impose sanctions upon the defendant and counsel for discovery "violations". There is absolutely no basis for such a request. No such discovery violations have occurred. Defendant, Ellien and counsel have provided good faith responses and objections to Benson's discovery requests. Benson has failed to demonstrate otherwise through his motion to compel, nor has he justified the imposition of any sanctions. Further, there exists no basis for awarding "attorney fees" to a non-lawyer, pro se litigant, especially, as Benson puts it, "to pay off plaintiff's filing fee and enable him to get his inmate account out of the negative...."

### 6. Conclusion

Accordingly, and in view of the foregoing, it is respectfully requested that this Honorable Court deny Plaintiff's "Motion for Order Compelling Disclosure or Discovery and for Expenses and Sanctions" directed against Defendant, William G. Ellien, M.D.

CERTIFICATE OF SERVICE

      I hereby certify that I have sent a true and correct copy of defendant, William G. Ellien, M.D.'s Response in Opposition to Plaintiff's Motion for an Order Compelling Disclosure or Discovery and expenses and sanctions by U.S. First Class Regular Mail on this date to the following individuals:

Jason Eric Benson
SCI-Smithfield
#DS-6483
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652

James D. Young, Esquire
Lavery, Faherty, Young & Patterson, P.C.
301 Market Street, St. 800
Harrisburg, PA 17108

David L. Schwalm, Esquire
Thomas, Thomas & Hafer
305 North Front Street
P.O. Box 999
Harrisburg, PA 17101

_____
ALAN S. GOLD

DATE: 8-29-01