



UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON ERIC BENSON,<br>Plaintiff | CIVIL ACTION |
| v. | NO. 1:00-CV-01229 |
| THOMAS DURAN; BRUCE CLUCK;<br>DEBRA HANKEY; JOHN JENNINGS;<br>WILLIAM ORTH; RAE HIENTZELMAN;<br>RONALD LONG and WILLIAM ELLIEN;<br>BRITON SHELTON; ADAMS COUNTY<br>PRISON | JUDGE CALDWELL |
| Defendants | |

### AFFIDAVIT OF WARDEN THOMAS DURAN

1. My name is Thomas Duran and I am the former Warden of the Adams County Prison.

2. On August 27, 1999, at about 11:10 a.m., I was notified by Lieutenant Jennings that upon his return from court, inmate Jason Benson was refusing to be strip searched. I went to the Lieutenant's office where Lieutenant Jennings briefed me on what had occurred to that point. We had a situation where an inmate was refusing to comply with a mandatory prison rule. The situation posed a potential threat to Corrections Officers and the inmates and I decided to personally intervene to ensure that the situation was handled properly.

3.  When I arrived at the medical room, Deputy Wardens Cluck and Hankey were attempting to reason with Benson. He repeatedly refused to comply with the strip search procedure.

4.  When I arrived, Lieutenant Jennings, Sergeant Heintzelman, Corrections Officer Shelton and Deputy Warden Cluck were all present. The presence of so many members of the staff was intended to demonstrate a show of force to the inmate and to make it clear that he would not be allowed to avoid strip search procedure.

5.  At the time of this occurrence, it was Adams County Prison policy and procedure to avoid conflict and actual application of force whenever possible. However, Mr. Benson repeatedly and steadfastly refused to respond first to a verbal request, second, to a verbal command and third, to a show of physical force.

6.  After repeated refusals to comply with the strip search procedure, on my authority, Lieutenant Jennings sprayed Benson with OC foam. The purpose for the use of the foam was to obtain compliance with a minimal use of force and without placing any of the officers or the inmate at risk for personal injury. Because of Benson's steadfast refusal to comply with the strip search procedure, he was deliberately kept in restraint (handcuffs and leg shackles) until he voluntarily agreed to comply with this procedure.

7.  After being sprayed, Benson rose to his feet, began shouting profanities and threats and then began to bang his head on a computer screen which was on a nearby desk. He was then taken to the floor to prevent him from hurting himself or breaking things in the office. He was held down on the floor until he agreed to stop resisting, at which point he was placed in the shower.

8. After a few minutes in the shower, Benson sat up and began to again use profane language and also began to spit on several of those present, including CO Shelton. He was again taken to the floor to prevent further spitting. As the prison warden, I was and am particularly sensitive to the health risks associated with spitting and the possibility of disease transmission that can occur from spitting. Because Benson continued to spit on and at the staff members present, he was forcefully restrained on the floor and eventually a "Spit Guard" was applied to keep him from spitting on or at those present.

9. After the "Spit Guard" was put in place, Lieutenant Jennings and I escorted Benson to E Block where he did comply with strip search procedure. Following this, Benson requested to be taken to the hospital and his request was honored at about 1:10 p.m. Mr. Benson returned to prison later that day.

10. The incident with Jason Benson on August 27, 1999, was handled with the bare minimum application of force. The use of pepper spray was indicated due to the prisoner's conduct and was, in my estimation, the best and least dangerous way to obtain compliance with the mandatory strip search procedure.

11. On August 27, 1999, and for as long as I was affiliated with the Adams County Prison, the strip searching of prisoners returning to the jail was a mandatory procedure and strip searches were conducted without exception. The purpose of the strip search procedure is to prevent contraband from coming into the prison and helps to ensure safety of the prisoners, the prison staff and helps maintain the orderly operation of the prison.

12. I personally videotaped much of the incident described above. I decided to videotape this incident to document the use of reasonable force. A true and correct copy of the

video tape is attached to this Affidavit. There was no other video tape made of the incident and the attached tape shows all of the events that were taped on the date of this occurrence.

I declare under penalty of perjury that the foregoing is true and correct. Executed on SEPTEMBER 27, 2001.

_____
Warden Thomas Duran

:143928.1