

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON ERIC BENSON, | : | CIVIL ACTION NO. 1:CV-00-1229 |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| vs. | : | |
| | : | |
| THOMAS DURAN, et al., | : | (Magistrate Judge Blewitt) |
| Defendants | : | |

### CONCISE STATEMENT OF
### UNDISPUTED MATERIAL FACTS

AND NOW, comes Defendant, Ronald M. Long, M.D., by and through his attorneys, Lavery, Faherty, Young & Patterson, P.C., and files this Statement of Undisputed Material Facts pursuant to Local Rules 7.4 and 56.1 of the United States District Court for the Middle District of Pennsylvania and in support thereof, avers as follows:

1. Dr. Long is a medical doctor licensed by the Commonwealth of Pennsylvania and has been so licensed continuously since 1984. Dr. Long

is Board certified in family practice and has added qualifications in geriatric medicine. (Dr. Long's Declaration par. 1)

2. Since September, 1996, Wexford Health Sources, Inc. has been the contracted medical provider at the State Correctional Institution-Smithfield ("SCI-Smithfield") to provide medical services to inmates at the facility, including utilization review and case management. (Dr. Long's Declaration par. 2)

3. Dr. Long has served as the Medical Director at SCI-Smithfield from September, 1996 until the present. He has provided medical services to inmates at SCI-Smithfield, including the examination, diagnosis and treatment of inmates at the facility. (Dr. Long's Declaration par. 3)

4. It is the policy, practice and custom of Wexford Health Sources, Inc. that all inmates are to receive reasonable and medically necessary care in accordance with state and federal law and the United States Constitution. (Dr. Long's Declaration par. 4)

5. In the ordinary course of business, SCI-Smithfield maintains prison medical records on each of the inmates incarcerated at the facility including the Plaintiff, Jason Benson. (Dr. Long's Declaration par. 1; Exhibit "C" pp. 1-26)

2

6. Dr. Long is personally familiar with inmate Benson's medical history as reflected in his medical records from SCI-Smithfield. (Dr. Long's Declaration par. 6)

7. At no time during Mr. Benson's incarceration at SCI-Smithfield was Dr. Long ever deliberately indifferent to any serious medical need of the Plaintiff nor did he ignore any excessive and/or intolerable risk of harm to the Plaintiff. To the contrary, throughout his incarceration at SCI-Smithfield, Mr. Benson was evaluated, monitored and treated appropriately and in accordance with acceptable medical standards. (Dr. Long's Declaration par. 7)

8. In February, 1999, inmate Benson was transferred from SCI-Camp Hill to SCI-Smithfield. While incarcerated at SCI-Camp Hill, inmate Benson was prescribed Phenobarbitol for his seizure disorder condition. (Dr. Long's Declaration par. 8; Exhibit "C" pp. 3, 16; Benson Deposition p. 113)

9. On the morning of February 24, 1999, Dr. Long examined inmate Benson at SCI-Smithfield. At that time, inmate Benson's neurological examination revealed that he was oriented x 3 and there were no focal findings. Inmate Benson related that his last seizure occurred

prior to Christmas, 1998, and that his past seizures had usually occurred when he was intoxicated. Given that Plaintiff had a significant past history of drug abuse; that Phenobarbitol is an addictive barbituate; that Phenobarbitol is not a good seizure medication for the long term; and given the fact that Mr. Benson's seizures usually occurred when intoxicated -- an unlikely condition while incarcerated, in the exercise of Dr. Long's professional judgment he believed that it would be more appropriate to prescribe Dilantin for Plaintiff's seizure disorder. Dr. Long discussed this matter with inmate Benson who was agreeable to the change to Dilantin. At that time, Dr. Long stopped the Phenobarbitol and prescribed Dilantin, 200 mgs. two times per day. Dr. Long also ordered that the Dilantin levels be tested in six weeks. (Dr. Long's Declaration par. 9; Exhibit "C" pp. 3, 11)

10. On March 17, 1999, Dr. Long saw inmate Benson in the seizure clinic. At that time, inmate Benson reported that he had no seizures, but he was complaining of two moles on his lower right abdomen. At that time, Dr. Long prescribed Dilantin, 200 mgs. to be taken at 7:00 a.m. and 10:00 p.m. for six months. He also scheduled inmate Benson for removal of the moles in two weeks. (Dr. Long's Declaration par. 10; Exhibit "C" pp. 4, 11; Benson Deposition pp. 114, 115)

4

11. Inmate Benson's Dilantin levels were tested on March 18, 1999 and again on April 5, 1999. Inmate Benson continued to be seizure free and his seizure disorder condition was stable. (Dr. Long's Declaration par. 11; Exhibit "C" pp. 12, 24-25)

12. On March 31, 1999, Dr. Long removed the two moles from inmate Benson's lower right abdomen. At that time, inmate Benson had no complaints concerning his seizure disorder condition. (Dr. Long's Declaration par. 12; Exhibit "C" p. 12)

13. On June 3, 1999, Nurse Grove noted on Plaintiff's prison medical chart that "inmate has been non-compliant [with] Dilantin x 9 days". Dr. Long discussed this situation with Nurse Grove and scheduled inmate Benson to be seen on his doctor line on June 4, 1999. The medication administration record sheets for May and June, 1999 indicated that inmate Benson had been non-compliant with his anti-convulsive medication for a number of days. (Dr. Long's Declaration par. 13; Exhibit "C" pp. 14, 19-20)

14. On the morning of June 4, 1999, Dr. Long examined inmate Benson who indicated that he had stopped his Dilantin for the past ten days. At that time, inmate Benson indicated, "I feel jittery when I take it

and I won't take it." Inmate Benson also indicated that when he discontinued the Dilantin, that the jittery feeling was gone. At that time, Dr. Long did not believe that it was medically necessary to continue the patient on the Dilantin in that he had been seizure free for six months; the patient had effectively taken himself off of the anti-convulsive medication for a number of days; and his seizure disorder condition had been stable throughout his time at SCI-Smithfield. (Dr. Long's Declaration par. 14; Exhibit "C" pp. 5, 14, 19-20)

15. When Dr. Long discontinued inmate Benson's Dilantin on June 4, 1999, he had not been prescribed and was not taking any other medications at that time. (Dr. Long's Declaration par. 15; Exhibit "C" pp. 5, 20)

16. On June 8, 1999, Physician Assistant Ray McMullen saw inmate Benson in the seizure clinic. At that time, inmate Benson reported that he was doing okay and had "recently stopped Dilantin of his own choice." (Dr. Long's Declaration par. 16; Exhibit "C" p. 15)

17. Dr. Long did not examine, evaluate and/or treat inmate Benson again at any time between June 4, 1999 to August 24, 1999, the date of his transfer to the Adams County Prison. Moreover, inmate Benson's prison

medical chart does not indicate that there were any complaints and/or problems with respect to his seizure disorder during that time. (Dr. Long's Declaration par. 17; Exhibit "C" pp. 5-7, 15)

18. Dr. Long does not recall receiving any request for anti-convulsive medications from inmate Benson after June 4, 1999 and before his transfer to the Adams County Prison. Even if such a request had been made, in Dr. Long's professional judgment, given Plaintiff's history of non-compliance with the Dilantin and the fact that he had been seizure free for more than six months, it was not medically necessary to continue the Plaintiff on Dilantin. Moreover, in Dr. Long's professional judgment, there were contra-indications to prescribing Phenobarbitol at that time. In that regard, Dr. Long had just discontinued Dilantin (a more appropriate anti-convulsive medication) secondary to inmate Benson's noncompliance; the inmate had a significant history of drug abuse; and Phenobarbitol is an addictive, barbituate. Thus, even if a request was received, in Dr. Long's professional judgment, there was no medical need to change my previous orders discontinuing the Phenobarbitol and the Dilantin. (Dr. Long's Declaration par. 18)

7

19. Dr. Long was unaware that inmate Benson was seen by Dr. Ellien on July 27, 1999 through the telepsyche program. Moreover, he was unaware of and had no discussions with Dr. Ellien with respect to his treatment on that date and/or any medications prescribed by Dr. Ellien at that time. (Dr. Long's Declaration par. 19)

20. Following his transfer to SCI-Smithfield in February, 1999, inmate Benson complained that the Phenobarbital was making him feel lethargic or sluggish. (Benson Deposition p. 114)

21. Inmate Benson admits that he has no personal knowledge regarding the information communicated on June 3, 1999 to Dr. Long by a staff nurse concerning Plaintiff's non-compliance with his Dilantin medication. (Benson Deposition p. 117)

22. Inmate Benson told Dr. Long on June 4, 1999, that Dilantin was causing side effects – it made Benson jittery, shaky and things of that nature – and he wanted to switch back to Phenobarbital, the medicine he wanted discontinued a couple of months earlier. (Benson deposition pp. 118-119)

23. Inmate Benson acknowledged that prior to June 4, 1999, his last seizure has occurred prior to Christmas of 1998. (Benson Deposition p. 119)

24. Between June 4, 1999 and August 24, 1999, the date of his transfer to the Adams County Prison, inmate Benson had no seizures nor did he report any problems with his seizure disorder. (Benson Deposition pp. 120-121)

25. When he was committed to the State Correctional System, Plaintiff received an inmate handbook which explained how to submit a request to be seen at sick line and/or Dr. Long's M.D. line. (Benson Deposition p. 124)

26. Inmate Benson admits that between June 4, 1999, the date his Dilantin was discontinued, and August 24, 1999, the day he was transferred to Adams County Prison, Benson had not submitted any sick call requests or to be seen on Dr. Long's M.D. line. (Benson Deposition pp. 124-125)

Respectfully submitted,

Lavery, Faherty, Young & Patterson, P.C.


By: _____
James D. Young, Esquire
Atty No. 53904
301 Market St., Suite 800
P.O. Box 1245
Harrisburg, PA 17108-1245
Attys for Defendant,
Ronald Long, M.D.

DATE: 11/15/2001

10

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this 15th day of November, 2001, I served a true and correct copy of the foregoing CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS via U.S. First Class mail, postage prepaid, addressed as follows:

Mr. Jason Eric Benson
SCI-SM
#DS-6483
1120 Pike Street
P.O. Box 999
Huntingdon, PA 16652

David L. Schwalm, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17101

Alan Gold, Esquire
Monaghan & Gold
7837 Old York Road
Elkins Park, PA 19027

_____
Linda L. Gustin