119
Copy

# JUDGE'S COPY

FILED
HARRISBURG, PA

NOV 3 0 2001

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON ERIC BENSON, | : | CIVIL ACTION NO. 1:CV-00-1229 |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| vs. | : | |
| | : | |
| THOMAS DURAN, et al., | : | (Magistrate Judge Blewitt) |
| Defendants | : | |

## BRIEF IN SUPPORT OF DEFENDANT, RONALD M. LONG, M.D.'S MOTION FOR SUMMARY JUDGMENT

I.     **STATEMENT OF FACTS AND PROCEDURAL HISTORY:**

Plaintiff, Jason Eric Benson, a pro se prisoner incarcerated at SCI-Smithfield, initiated this civil action by filing a Complaint on July 10, 2000 arising out of an incident which occurred on August 27, 1999, at the Adams County Prison.   The Plaintiff then obtained leave of court to file an Amended Complaint adding Ronald Long, M.D., and William G. Ellien, M.D., as Defendants.  In his Amended Complaint, inmate Benson averred

that Dr. Long violated Plaintiff's Eighth Amendment rights by discontinuing Benson's seizure medication, Dilantin, on June 4, 1999.

On July 20, 2001, Dr. Long filed a Waiver of Reply to Plaintiff's Amended Complaint pursuant to 42 U.S.C. § 1997(e). In that responsive pleading, Dr. Long denied any and all liability to the Plaintiff and asserted all available affirmative defenses to the Amended Complaint. On November 15, 2001, Dr. Long filed a Motion for Summary Judgment, Concise Statement of Undisputed Material Facts and Appendix of Exhibits. Paragraphs 1 through 26 of Dr. Long's Concise Statement of Undisputed Material Facts are incorporated by reference as if fully set forth at length herein. This Brief is in support of Dr. Long's Motion for Summary Judgment.

II.    **QUESTIONS PRESENTED**:

    A.    **STANDARD OF REVIEW.**

    B.    **WHETHER DR. LONG IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE THE RECORD IS DEVOID OF ANY EVIDENCE THAT DR. LONG EXHIBITED DELIBERATE INDIFFERENCE TO ANY SERIOUS MEDICAL NEED OF THE PLAINTFF?**

        **[SUGGESTED ANSWER: YES]**

## III.  ARGUMENT:

### A.  STANDARD OF REVIEW.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In determining whether genuine issues of material fact exist, the United States Supreme Court in Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986), held that: "The mere existence of a scintilla of evidence in support of the [non-moving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." Id., at 2525. More-over, the inquiry focuses on "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party may prevail as a matter of law." Id., at 2512.

"Where the record taken as a whole could not lead a rational trier of facts to find for the non-moving party, there is no 'genuine issue for trial' ". Matshushita Electrical Industrial Company v. Zenith Radio Corp., 106 S.Ct. 1348, 1386 (1986). "A plaintiff may not obtain a trial merely by showing that there is 'some metaphysical doubt as to the material facts' ". Id., at 1356 (citations omitted). Accordingly, "there is no genuine issue for trial

unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 264 (1986).

Once a party has shown an absence of evidence to support the claims of the non-moving party, the non-moving party must do more than simply sit back and rest on the allegations in the complaint. The plaintiff must go beyond the pleadings and by his own affidavits or the discovery on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The substantive law defines which facts are material, that is, which facts may affect the outcome of the lawsuit. Id. If the non-movant bears the burden of persuasion at trial, the moving party may meet its burden by showing that the evidentiary materials of record, if reduced to admissible form, would be insufficient to carry the non-movant's burden at trial. Chippollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir. 1987); cert. dismissed, 483 U.S. 1052 (1987).

**B.    DR. LONG IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE THE RECORD IS DEVOID OF ANY EVIDENCE THAT DR. LONG EXHIBITED DELIBERATE INDIFFERENCE TO ANY SERIOUS MEDICAL NEEDS OF THE PLAINTIFF WITH RESPECT TO THE TREATMENT PROVIDED AT SCI-SMITHFIELD.**

In his Amended Complaint, Plaintiff attempts to assert a §1983 claim against Dr. Long for allegedly depriving Benson of his Eighth Amendment rights.  Section 1983 "is not a source of substantive rights" but merely provides a "method of vindicating federal rights elsewhere conferred." Baker v. McCollam, 443 U.S. 137, 144  n.3 (1979).  The first inquiry in any §1983 suit is to isolate the precise constitutional violation for which the defendant is charged.  Id.  The validity of the claim must then be judged by reference to the specific constitutional standard, which governs that right. Graham v. Connor, 490 U.S. 386 (1989).

According to the Amended Complaint, the central thrust of the Eighth Amendment claim against Dr. Long was that he "abruptly discontinued" Plaintiff's anti-seizure medication (Dilantin) on June 4, 1999, without prescribing an alternative medication.  The Amended Complaint also avers that in late July, 1999, Co-Defendant Ellien prescribed an antidepressant (Imipramine) which allegedly "lowered the seizure

5

threshold" and "placed Plaintiff at risk of serious injury." Plaintiff further alleges that in late August, 1999, Benson was transferred to the Adams County Prison where he had several seizures following incidents with the prison staff.

In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court ruled that deliberate indifference to the serious medical needs of a prisoner constitutes a violation of that prisoner's Eighth Amendment right to be free from cruel and unusual punishment. In the context of medical care, the relevant inquiry is whether a defendant was: (1) deliberately indifferent (the subjective element), (2) plaintiff's serious medical needs (the objective element). See, Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979). In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court clarified the definition of these components. Following Farmer, prison officials will be liable in an Eighth Amendment condition case only if "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 114 S.Ct. at 1997.

Estelle, supra. found that prisoner complaints which are directed at the wisdom or quality of the medical care received will not state an Eighth

6

Amendment violation under §1983, even if the treatment was so negligent as to amount to malpractice. Estelle, 429 U.S. at 107. "It is well settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute `deliberate indifference.'" Rouse v. Planter, 182 F.3d 192, 197 (3d Cir. 1999). Only flagrantly egregious acts or omissions can violate the standard. Mere medical malpractice cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a healthcare provider. White v. Napoleon, 897 F.2d 103, 108-10 (1989).

In Little v. Lycoming County, 912 F.Supp. 809, 815 (M.D.Pa. 1996), the court explained that deliberate indifference is more than an inadvertent or good faith error, it is characterized by obduracy and wantonness. The court went on to explain that prison medical authorities are given considerable latitude with respect to diagnosis and treatment of inmates. Id. "Courts will disavow any attempt to second guess the propriety or inadequacy of a particular course of treatment... which remains a question of sound professional judgment." Id. "The key question... is whether defendants have provided defendant with some kind of treatment, regardless of whether it is what the plaintiff desires." Id. at 816. "Absent

evidence of the requisite [mental] intent to establish indifference [a] plaintiff cannot sustain a §1983 action ...." Bednar v. County of Schuylkill, 29 F.Supp. 2d 250, 253-54 (E.D.Pa. 1998) (citations omitted).

On the morning of February 24, 1999, Dr. Long examined inmate Benson at SCI-Smithfield. At that time, inmate Benson's neurological examination revealed that he was oriented x 3 and there were no focal findings. Inmate Benson related that his last seizure occurred prior to Christmas, 1998, and that his past seizures had usually occurred when he was intoxicated. Given that Plaintiff had a significant past history of drug abuse; that Phenobarbitol is an addictive barbituate; that Phenobarbitol is not a good seizure medication for the long term; and given the fact that Mr. Benson's seizures usually occurred when intoxicated -- an unlikely condition while incarcerated, in the exercise of Dr. Long's professional judgment he believed that it would be more appropriate to prescribe Dilantin for Plaintiff's seizure disorder. Dr. Long discussed this matter with inmate Benson who was agreeable to the change to Dilantin. At that time, Dr. Long stopped the Phenobarbitol and prescribed Dilantin, 200 mgs. two times per day. Dr. Long also ordered that the Dilantin levels be tested in six weeks. (Dr. Long's Declaration par. 9; Exhibit "C" pp. 3, 11)

8

On June 3, 1999, Nurse Grove noted on Plaintiff's prison medical chart that "inmate has been non-compliant [with] Dilantin x 9 days". Dr. Long discussed this situation with Nurse Grove and scheduled inmate Benson to be seen on his doctor line on June 4, 1999. The medication administration record sheets for May and June, 1999 indicated that inmate Benson had been non-compliant with his anti-convulsive medication for a number of days. (Dr. Long's Declaration par. 13; Exhibit "C" pp. 14, 19-20)

On the morning of June 4, 1999, Dr. Long examined inmate Benson who indicated that he had stopped his Dilantin for the past ten days. At that time, inmate Benson indicated, "I feel jittery when I take it and I won't take it." Inmate Benson also indicated that when he discontinued the Dilantin, that the jittery feeling was gone. At that time, Dr. Long did not believe that it was medically necessary to continue the patient on the Dilantin in that he had been seizure free for six months; the patient had effectively taken himself off of the anti-convulsive medication for a number of days; and his seizure disorder condition had been stable throughout his time at SCI-Smithfield. (Dr. Long's Declaration par. 14; Exhibit "C" pp. 5, 14, 19-20)

When Dr. Long discontinued inmate Benson's Dilantin on June 4, 1999, Plaintiff had not been prescribed and was not taking any other medications at that time. (Dr. Long's Declaration par. 15; Exhibit "C" pp. 5, 20) On June 8, 1999, Physician Assistant Ray McMullen saw inmate Benson in the seizure clinic. At that time, inmate Benson reported that he was doing okay and had "recently stopped Dilantin of his own choice." (Dr. Long's Declaration par. 16; Exhibit "C" p. 15) Dr. Long did not examine, evaluate and/or treat inmate Benson again at any time between June 4, 1999 to August 24, 1999, the date of his transfer to the Adams County Prison. Moreover, inmate Benson's prison medical chart does not indicate that there were any complaints and/or problems with respect to his seizure disorder during that time. (Dr. Long's Declaration par. 17; Exhibit "C" pp. 5-7, 15)

Dr. Long does not recall receiving any request for anti-convulsive medications from inmate Benson after June 4, 1999 and before his transfer to the Adams County Prison. Even if such a request had been made, in Dr. Long's professional judgment, given Plaintiff's history of non-compliance with the Dilantin and the fact that he had been seizure free for more than six months, it was not medically necessary to continue the Plaintiff on

10

Dilantin.   Moreover, in Dr. Long's professional judgment, there were contra-indications to prescribing Phenobarbitol at that time.  In that regard, Dr. Long had just discontinued Dilantin (a more appropriate anti-convulsive medication) secondary to inmate Benson's noncompliance; the inmate had a significant history of drug abuse; and Phenobarbitol is an addictive, barbituate.  Thus, even if a request was received, in Dr. Long's professional judgment, there was no medical need to change his previous orders discontinuing the Phenobarbitol and the Dilantin.   (Dr. Long's Declaration par. 18)

Dr. Long was unaware that inmate Benson was seen by Dr. Ellien on July 27, 1999 through the telepsyche program.  Moreover, he was unaware of and had no discussions with Dr. Ellien with respect to his treatment on that date and/or any medications prescribed by Dr. Ellien at that time. (Dr. Long's Declaration par. 19)

Dr. Long's Declaration attests to the fact that at no time during Mr. Benson's incarceration at SCI-Smithfield was Dr. Long ever deliberately indifferent to any serious medical need of the Plaintiff nor did he ignore any excessive and/or intolerable risk of harm to the Plaintiff.   To the contrary, throughout his incarceration at SCI-Smithfield, Mr. Benson was

11

evaluated, monitored and treated appropriately and in accordance with acceptable medical standards. (Dr. Long's Declaration par. 7)

Based upon the facts of record, Dr. Long's treatment of Plaintiff while at SCI-Smithfield was anything but deliberately indifferent. In fact, the record demonstrates that Dr. Long exercised sound professional judgment in treating Plaintiff's seizure disorder. While at SCI-Smithfield, Plaintiff received considerable treatment for an evaluation of his seizure disorder and other medical conditions. The record is devoid of any evidence establishing that Dr. Long knew of and disregarded an excessive risk to inmate health or safety, Farmer, 114 S. Ct. 1997, as required for a cognizable Eighth Amendment claim. Plaintiff's Amended Complaint sets forth nothing more than a disagreement with the course of treatment provided by Dr. Long and Plaintiff is asking the court to second-guess Dr. Long's medical judgment.

More than a decade ago, the Third Circuit ruled that "while the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). See

also, Estelle, 429 U.S. at 107 ("a medical decision not to order an x-ray, or other measures, does not represent cruel and unusual punishment"); Palladino v. Wackenhutt Corrections, Civ. No. 97-CV-2401, 1998 WL 855489, at *2 (E.D.Pa. 1998) ("a doctor's decision whether to order specific diagnostic techniques or forms of treatment is within his medical judgment, and does not represent cruel and unusual punishment under the Eighth Amendment"); Solt v. Prison Health Services Polk County Jail, 806 F.Supp. 251 (M.D. Fla. 1992) (granting a motion to dismiss complaint alleging plaintiff needed MRI and referral to specialists for back, stating, in part, that "whether diagnostic techniques or particular forms of treatment are indicated is a matter for medical judgment.").

Moreover, taking as true the allegations of Plaintiff's Amended Complaint, he fails to allege a viable constitutional claim against Dr. Long. The Third Circuit has ruled that one doctor's disagreement with the medical judgment of another doctor does not state an actionable Eighth Amendment claim. White, 897 F.2d at 109-10. The Third Circuit has also ruled that "no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example be several ways to treat an illness." White, 897 F.2d at 110. In this case, Plaintiff, who has no

13

medical training, asserts that he believes that the Dilantin should not have been discontinued and/or an alternative medication should have been prescribed. Such an allegation, without more, simply does not rise to the level of a constitutional claim. It is also important to note that Plaintiff has not produced any expert report substantiating the conclusory assertions of his Amended Complaint. Thus, Plaintiff cannot designate specific facts of record showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Consequently, Dr. Long is entitled to summary judgment as a matter of law.

Moreover, to the extent that the allegations of the Amended Complaint can be construed as alleging negligence in the course of treatment, which is denied, those allegations still fail to state an actionable §1983 claim against Dr. Long. Simple negligence cannot serve as a predicate to liability under §1983. Hudson v. Palmer, 486 U.S. 517 (1984); Estelle, 429 U.S. at 106 (holding that even "medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) ("the law is clear that simple medical malpractice is insufficient to present a constitutional violation.") Therefore, even accepting as true Plaintiff's allegations of

14

negligence, the Complaint fails to state a viable §1983 claim against Dr. Long.  See, White, 897 F.2d at 108-110.  Consequently, summary judgment must be entered in favor of Dr. Long and against Plaintiff as a matter of law.

## IV.    CONCLUSION:

For the reasons advanced herein, Dr. Long respectfully requests that this Honorable Court grant his Motion for Summary Judgment and enter judgment in favor of Dr. Long and against the Plaintiff.

Respectfully submitted,

Lavery, Faherty, Young & Patterson, P.C.

By:_____
        James D. Young, Esquire
        Atty No. 53904
        301 Market St., Suite 800
        P.O. Box 1245
DATE: __11/30/2001__      Harrisburg, PA 17108-1245
        Attys for Defendant,
        Ronald M. Long, M.D.

15

## CERTIFICATE OF SERVICE

I, Linda L. Gustin, an employee with the law firm of Lavery, Faherty, Young & Patterson, P.C., do hereby certify that on this 30th day of November, 2001, I served a true and correct copy of the foregoing **Brief in Support of Defendant, Ronald M. Long, M.D.'s Motion for Summary Judgment** via U.S. First Class mail, postage prepaid, addressed as follows:

Mr. Jason Eric Benson
SCI-SM
#DS-6483
1120 Pike Street
P.O. Box 999
Huntingdon, PA  16652

David L. Schwalm, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA  17101

Alan Gold, Esquire
Monaghan & Gold
7837 Old York Road
Elkins Park, PA  19027


_____
Linda L. Gustin