IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON E. BENSON | : | CIVIL ACTION |
| V. | : | NO. 1:CV-00-1229 |
| WILLIAM G. ELLIEN, M.D., et al. | : | (Judge Caldwell) |
| | | (Magistrate Judge Blewitt) |

**BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT, WILLIAM G. ELLIEN, M.D.**

## I. INTRODUCTION

Plaintiff, Jason E. Benson ("Benson"), commenced this action with the filing of a Complaint, and subsequently filed an Amended Complaint on or about September 11, 2000, a true and correct copy of which is attached hereto as Ex. "A". Benson, an inmate at the State Correctional Institution at Smithfield, Pennsylvania ("SCI-Smithfield), alleges in his Amended Complaint as against moving defendant, William G. Ellien, M.D. ("Ellien"), in essence, that the prescription to him of the antidepressant Imipramine (also called Tofranil), in conjunction with the previous cancellation of Dilantin by defendant, Dr. Ronald Long, some seven weeks earlier, as well as other factors, caused him to have an epileptic seizure on or about August 29, 1999, while temporarily incarcerated at Adams County Prison ("ACP"). (Ex. A", ¶¶11-12)

Benson alleges that on August 27, 1999, upon returning from court to ACP, shackled at the hands and feet, he was placed in a room, and ordered to strip by officers at ACP. When he was unable to comply, he was sprayed in the face with pepper spray, attacked by various correctional officers at ACP, knocked to the ground, and had his head "hammer[ed]" into the floor. (Ex. "A", ¶¶2-4) Benson then alleges that he was thrown into a concrete shower stall where he lost consciousness. Another correctional officer, Benson alleges, then yanked him out of the shower stall, threw him to the floor, and stomped on Benson's neck. Benson then complied with a strip search, requested to be taken to the

hospital, and was then taken to and examined at the Gettysburg Hospital emergency room. (Ex. "A", ¶¶5-6) Benson alternatively alleges that the seizures in question occurred on August 29, 1999 (Ex. "A", ¶12) or on August 30, 1999 (Ex. "A", ¶7). Benson alleges that correctional officers at ACP witnessed him having a seizure on August 30, 1999, refused to provide him with treatment, and against witnessed him having a seizure and hour-and-a-half later. He was then taken to the hospital. (Ex. "A", ¶7)

It is Benson's contention that Dr. Ellien's prescription to him of Tofranil (Imipramine) in late-July, 1999, some six to seven weeks after he was taken off of Dilantin, which Benson alleges was done unilaterally by Dr. Long, constituted deliberate indifference to a serious medical need. (Ex. "A", ¶¶8-12)

Benson describes further the alleged deliberate indifference on the part of Dr. Ellien as follows:

> The actions of defendant Dr. William Ellien in prescribing the drug Tofranil known to decrease the seizure threshold, with foreknowledge that plaintiff was epileptic and had been abruptly withdrawn from his anti-seizure medications and the seizure risk associated with the withdrawal of said medications and the addition of the drug Tofranil he prescribed constitutes deliberate indifference to the Eighth Amendment of the United States Constitution.

Ex. "A", ¶A6. Benson has no expert medical testimony or evidence to support these medical conclusions. Further alleges Benson in his Amended Complaint, he believes that the seizures which he states he suffered while in ACP in late-August, 1999, were caused by the combination of the aforementioned with physical abuse he alleged to have been subjected to while at ACP:

> The abrupt discontinuance of Dilantin by defendant Dr. Ronald Long, as well as the prescription anti-depressant Imipramine, in combination with the physical and emotional trauma sustained during the use of excessive force in A.C.P. synergistically caused plaintiff to enter into the aforementioned life threatening "Status Epilepticus" seizures that occurred on August 29, 1999.

Ex. "A", ¶12. Again, Benson has no medical evidence, expert or otherwise, which supports his lay conclusions as to the alleged causation of the seizures in question. In addition, in his deposition testimony, Mr. Benson further asserts that, because he had been previously taken off of Dilantin by Dr. Long, Dr. Ellien:

> placed me on a medication that lowers the seizure threshold that is

> contraindicated to people with seizure disorders. That is deliberate
> indifference because he would know at that point the chances of me
> having a life-threatening seizure are within the 100 percentile range.

Ex. "D", p. 49. As before, Benson has no evidence whatsoever to support his any of these lay assertions: that the use of Tofranil in question increases the likelihood of seizures, is contraindicated in his circumstances, or created a "100 percent" likelihood that he would have a "life-threatening seizure." These assertions have no basis in fact, and are not sustained by anything in the record in this matter other than Benson's own, bald assertions. Accordingly, his claims against Dr. Ellien should be dismissed.

## II. LAW AND DISCUSSION

Benson's claims against Dr. Ellien in this matter are limited to his assertion that Dr. Ellien's treatment of him for his psychiatric conditions constituted deliberate indifference because, according to Benson, Dr. Ellien knew that he should not have placed him on the antidepressant Tofranil (Imipramine) because Benson was an epileptic who at that time was not on seizure medication. For several reasons, as discussed below, Benson's claims against Dr. Ellien must fail, and summary judgment in favor of Dr. Ellien and against Benson should be granted. Benson has failed to demonstrate, pursuant to 42 U.S.C. §1983, that Dr. Ellien's psychiatric treatment of him constituted deliberate indifference as defined under applicable case law. Benson has failed to demonstrate that Dr. Ellien knew that his conduct in treating Benson presented a substantial risk of harm to Benson. Benson has failed to demonstrate through the use of expert testimony the existence of a serious medical need pertaining to Dr. Ellien's treatment of him. Third, Benson states at best, no more than a disagreement between himself and Dr. Ellien as to the appropriateness of the treatment which Dr. Ellien rendered, which disagreement fails to support a claim pursuant to 42 U.S.C. §1983. Finally, Benson has failed to demonstrate that he has fully exhausted his administrative remedies pursuant to 42 U.S.C. §1997e(a).

    A.    **BENSON HAS FAILED TO PROVE, PURSUANT TO 42 U.S.C. §1983, THAT DR. ELLIEN'S TREATMENT CONSTITUTED DELIBERATE INDIFFERENCE, AND THAT DR. ELLIEN HAD SUBJECTIVE KNOWLEDGE THAT HIS ACTIONS PRESENTED A SUBSTANTIAL RISK OF HARM TO BENSON. HIS CLAIMS SHOULD THEREFORE BE DISMISSED.**

To defeat the motion for summary judgment of Dr. Ellien's, Benson must show sufficient evidence to support a jury verdict in his favor on the issue of Dr. Ellien having acted with deliberate indifference to a serious medical need of Benson's. Farmer v. Brennan, supra, 511 U.S. 825. To establish deliberate indifference Benson must show that Dr. Ellien had actual knowledge that his actions presented a substantial risk of harm to Benson. The United States Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976) has set forth the elements of a cause of action brought by a prisoner pursuant to 42 U.S.C. §1983 raising allegations of the infliction of cruel and unusual punishment based on medical care. In upholding summary judgment in favor of the defendant/doctor in that case the Supreme Court stated:

> It suffices to note that the primary concern of the drafters was to prescribe 'tortures' and other 'barbarous methods of punishment'... it is safe to affirm that punishments of tortures...and all others in the same line of unnecessary cruelty, are forbidden by that amendment...We therefore conclude that deliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'. (citations omitted.)

Id. at 102-104.

Examples of the "unnecessary and wanton infliction of pain", which constitute deliberate indifference provided by the Supreme Court consists of the following:

> ...doctors choosing the easier and less efficacious treatment of throwing away the prisoner's ear and stitching the stump may be attributable to deliberate indifference... rather than an exercise of professional judgment...injection of penicillin with knowledge that prisoner was allergic, and refusal of doctor to treat allergic reaction ...prison physician refuses to administer the prescribed pain killer and renders leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon. (citations omitted.)

Id. at 104 f.n. 10. In Estelle v. Gamble, supra, the United States Supreme Court rejected a Constitutional claim based on medical malpractice, stating:

> Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind'. Thus a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because

> the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment. Id. at 106.

The United States Supreme Court has also defined the deliberate indifferent standard in its opinion in Farmer v. Brennan, supra, 114 S.Ct. 1970 (1994). According to the Supreme Court, deliberate indifference now requires a showing that prison medical staff were "subjectively" aware of a substantial risk of harm to the prisoner. Justice Souter, writing for the majority, stated:

> We reject [the] invitation to adopt an objective test for deliberate indifference. We hold...that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety...<u>The official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.

Id. at 114 S.Ct. at 1979. (Emphasis added).

Thus, under Farmer, supra, 114 S.Ct. at 1979, Benson must show that Dr. Ellien knew that he would cause harm to Benson through the prescription of a low dose of Tofranil (Imipramine) under the circumstances to Ellien. An examination of the record in this matter, however, other than Benson's own personal beliefs and speculations, is devoid of any evidence which would support the conclusion that Dr. Ellien subjectively believed that the use of Tofranil was even **minimally** likely to cause a serious adverse reaction in Mr. Benson. Likewise, the record is devoid of any medical evidence whatsoever linking Benson's brief use of the low dose of Tofranil to the seizure which he states he suffered in late-August, 1999 at Adams County Prison. (See generally Statement of Undisputed Facts; and Ex. "C", Verification of William G. Ellien, M.D.)

The dosage of Tofranil prescribed for Benson by Dr. Ellien was a very low dose. (Ex. "C", ¶¶19-20) If Benson had not stopped taking the Tofranil after a few days, Dr. Ellien's orders would have increased the dosage gradually from 50 mg per day to 100 mg per day, which is also a very low dosage. Benson's blood levels for the drug would also have been monitored. (Ex. "C", ¶¶19-20) Dr. Ellien

believed that the choice of Tofranil for Mr. Benson was an appropriate one, and has stated so to a high degree of medical certainty. (Ex. "C", ¶20) The incidence of adverse reaction of seizures among **all types** of antidepressants (of which Tofranil is but one example) is between one-half percent (1/2 %) and one-and-a-half percent (1-1/2 %). (Ex. "C", ¶21) There is no specific medical evidence of Tofranil being attributed as the cause of seizures, nor is there any medical evidence of which Dr. Ellien was aware linking the use of low doses of Tofranil to the cause of seizures. (Ex. "C", ¶21) Other antidepressants, such as Wellbutrin, have been known to be linked to seizures, but only when administered in very high doses, exceeding 600 mg per day. (Ex. "C", ¶21) Not only was the dose of Tofranil ordered for Mr. Benson a very low dose, but Dr. Ellien is and was unaware of any such use of Tofranil being linked to the cause of a seizure. (Ex. "C", ¶21)

It is Dr. Ellien's opinion, to a high degree of medical certainty, that it is not possible that the grand mal seizure which Mr. Benson states he suffered while in county custody in late-August, 1999 was in any way causally related to the low dose of Tofranil that he prescribed for him, and which Benson ceased taking, at least three to four weeks earlier. (Ex. "C", ¶22) It is also Dr. Ellien's opinion that, even if Benson had continued taking Tofranil through the date upon which he states he suffered the seizures in question, that there is no medical evidence that would attribute such a low dose of Tofranil to causing a seizure in someone who had been seizure free, according to Dr. Long, for six months. (Ex. "C", ¶22)

It is further clear from the record in this matter (see Statement of Undisputed Facts and Ex. "C", throughout) that Dr. Ellien, between July, 1999 and May, 2000, a ten month period which included eleven (11) evaluations by Dr. Ellien, as well as numerous other evaluations by other treating psychiatrists, spent a great deal of time evaluating and treating Mr. Benson's psychiatric conditions, and evaluating the use of a wide variety of medications in the treatment of Benson's psychiatric problems. The record of the treatment sessions of Benson is replete with the assessment and evaluation of numerous medications, each of which was considered for its appropriateness in the treatment of Benson's psychiatric symptoms, each of which was fully discussed and considered in concert with the patient, and

each of which was evaluated for its efficacy and progress once prescribed. (See Ex. "C", ¶¶6-18; Ex. "B", July 27, 1999 through May 17, 2000)

Benson predicates his entire "claim" of deliberate indifference upon the contention that since, according to Benson, Dr. Ellien "placed me on a medication that lowers the seizure threshold that is contraindicated to people with seizure disorders," it follows that Ellien "would know at that point the chances of me having a life-threatening seizure are within the 100 percentile range." (Ex. "D", p. 49) The problems with this rationale are simple: First, there is no evidence that Tofranil, particularly in the low doses prescribed, increases the risk of seizures in epileptic patients, let alone patients who have been seizure free for six months. Second, even when considering the class of drugs of **all antidepressants** as a whole, it has been determined that the rate of all adverse reactions such as seizures in patients to whom it is administered lies somewhere in the range of no more than one-half percent (1/2%) to one-and-a-half percent (1-1/2%). (Ex. "C", ¶¶21-22) There is no medical evidence of record in this matter that would link the short use of such a low dose of Tofranil by Mr. Benson to his having had seizures, while in the county prison, some three to four weeks later. (Ex. "C", ¶¶21-22) Further, Benson himself has asserted that the seizures in question took place shortly after, Benson alleges, correctional employees at Adams County Prison subjected him to the use of excessive force in obtaining a strip search, force which included slamming his head into the floor, throwing him bodily into a concrete shower stall, causing him to become unconscious, and standing on his neck with an officer's foot. All the day of or the day before the seizures Benson states he suffered.

A jury lacks the ability to infer subjective knowledge of substantial risk based on what a healthcare professional should have known. Benson must establish what Dr. Ellien actually knew. In Estate of Cole by Pardue v. Fromm, 94 F.3d 254 (7th Cir. 1996) the Court of Appeals concluded that it could not permit the fact finder to infer subjective knowledge of a substantial risk that the plaintiff would harm himself based on expert testimony that the risk was obvious because this would conflict with the defendant physician's subjective medical judgment evidenced by her diagnosis. Id. at 261. Here

permitting the fact finder to infer subjective knowledge of a substantial risk would conflict with the subjective medical judgment of Dr. Ellien.

In Muhammad v. Schwartz, Civil Action No. 96-CV-6027 (E.D. Pa. 1996) Judge Van Antwerpen granted a motion to dismiss a prisoner's claim based on 42 U.S.C. §1983 alleging inappropriate medical care. Judge Van Antwerpen held that the complaint failed to state that the defendant physician knew that his treatment presented a substantial risk of harm to the prisoner. Judge Van Antwerpen held that, "Without alleging actual knowledge, any reference to obviousness via the medical records available or what the doctor 'should have known' is unavailing." (See a true and correct copy of the Court's opinion attached hereto as Ex. "G")

Benson has failed to demonstrate that Dr. Ellien acted with deliberate indifference, or that he had subjective knowledge that his actions with respect to Benson's treatment presented a substantial risk of harm. It is Benson's obligation to make this proof, and he has failed to do so. To the contrary, the only evidence as to Dr. Ellien's subjective understanding with respect to the treatment rendered to Benson, and the use of Tofranil in his treatment, is that Dr. Ellien at all times believed that it was reasonable and appropriate treatment, and that it fell within the applicable standard of care. Benson's claims should accordingly be dismissed as to Dr. Ellien.

### B. BENSON HAS FAILED TO DEMONSTRATE, THROUGH THE USE OF EXPERT TESTIMONY, THE EXISTENCE OF A SERIOUS MEDICAL NEED IN REGARD TO DR. ELLIEN'S TREATMENT, AND HIS CLAIMS SHOULD THEREFORE BE DISMISSED.

Benson must next be able to establish the existence of a serious medical need sufficient to invoke the protections of the Eighth Amendment of the United States Constitution. In order to state a cause of action pursuant to 42 U.S.C. §1983 for deliberate indifference to a serious medical need, Benson must establish that the condition for which Dr. Ellien allegedly failed to provide appropriate treatment constituted a serious medical need. Hudson v. McMillan, __ U.S. __, 112 S.Ct. 995, 1000 (1992); Brewer v. Blackwell, 836 F.Supp. 631, 639 (S.D. Iowa 1993).

A medical need rises to the level of seriousness required for the Eighth Amendment if it has been

diagnosed by a physician as mandating treatment or if it constitutes a condition so obvious that even a lay person recognizes the necessity for a doctor's attention. Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 106 (1988). The serious medical need requirement contemplates a condition of urgency, one that produces death, degeneration, or extreme pain. See Monmouth County, supra; Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984). Not every injury or illness invokes Constitutional protection. Only those that rise to the level of seriousness have that affect. Monmouth County, 834 F.2d at 347.

The federal courts have extensively examined what does and does not rise to the requisite level of seriousness to support a cause of action under 42 U.S.C. §1983. In Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990), the United States Court of Appeals for the Fifth Circuit held that swollen wrists failed to constitute a serious medical need sufficient to state a cause of action under 42 U.S.C. §1983. In Johnson v. Ventura, 790 F.Supp. 898, 900 (E.D.Mo. 1992), the court held that a plaintiff inmate who suffered from headaches, neck pain and blurred vision did not establish a serious medical need sufficient to require that the prison provide him with whirlpool treatments. In Borrelli v. Askey, 582 F.Supp. 512, 513 (E.D.Pa. 1984), the court held that a prisoner suffering from a slight visual impairment causing mild headaches and mild tension did not have a serious medical need.

In Griffin v. DeRobertis, 557 F.Supp. 302, 306 (N.D.Ill. 1983), the court concluded that aches and sore throats do not constitute serious medical needs. In Dickson v. Colemen, 569 F.2d 1310 (3d Cir. 1978), the court concluded that headaches failed to rise to the level of a serious medical need. In Rodriguez v. Joyce, 693 F.Supp. 1250 (D.Me. 1988), the Court concluded that a broken finger failed to rise to the level of a serious medical. In Glasper v. Wilson, 559 F.Supp. 13 (W.D.N.Y. 1982), the court held that bowel problems failed to rise to the level of a serious medical need. In Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989), the United States Court of Appeals for the Sixth Circuit concluded that a mild concussion, together with a broken jaw failed to constitute a serious medical need sufficient to support a

claim based on the Eighth Amendment under 42 U.S.C. §1983. In <u>Hutchinson v. United States</u>, 838 F.2d 390 (9th Cir. 1988), the United States Court of Appeals for the Ninth Circuit concluded that a kidney stone failed to rise to the level of seriousness necessary to support a cause of action based on a violation of the Eighth Amendment under 42 U.S.C. §1983. In <u>Ware v. Fairman</u>, 884 F.Supp. 1201, 1206 (N.D.Ill. 1995), the court held that a failure to treat a rash, acne and flu failed to state a cause of action for an Eighth Amendment violation. None of these conditions, the Court held, constituted a serious medical need, including flu, which causes thousands of deaths per year.

    Here, Benson does not allege that Dr. Ellien treated him for his epileptic condition, nor does he dispute that Dr. Ellien had any responsibility for the treatment of his epilepsy. Dr. Ellien, a psychiatrist, solely treated him for his psychiatric conditions. Dr. Ellien, it is not disputed, treated Benson for his anxiety and panic disorder conditions. He did so, it is undisputed, through the use a wide variety of medications, that were prescribed variously over a ten-month period, and which were changed and/or "reconfigured" based upon Benson's reports as to their efficaciousness and Benson own personal reactions. Even if Benson could demonstrate that Dr. Ellien, in treating these psychiatric conditions, was somehow "indifferent" to them, Benson has failed to demonsotrate that under the circumstances, the anxiety and panic that he was being treated for constituted "serious medical needs" within the meaning of §1983 and the applicable case law as discussed above.

    Further, the United States Court of Appeals for the Third Circuit, in <u>Boring v. Kozakiewicz</u>, 833 F.2d 468 (3d Cir. 1987), affirmed the trial court's ruling that in order to prevail in a claim of deliberate indifference to a serious medical need, a plaintiff **must produce expert testimony that the injuries alleged were, in fact, "serious."** At issue in <u>Boring</u>, were plaintiffs' claims of numbness and spasm in the fingers, and throbbing pain in the left write, stemming from ulnar nerve neuropathy; seborrheic dermatitis; problems with dental fillings; periodic attacks of migraine headache; and a failure to provide a special diet. <u>Id</u>. at 469-470. In affirming the trial court's determination, the Third Circuit explained that expert testimony would be required to prove the existence of a serious medical need, except where

"the seriousness of injury or illness would be apparent to a lay person." Id. at 473. By example, the Court noted that a "serious" medical need that a jury could take note of without expert testimony would be something of the nature of "a gunshot wound." Id., citing City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 103 S.Ct. 2979 (1983). Such circumstances, explained the Court, were not present in the plaintiffs' complaints:

> As laymen, **the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as "serious."** In these circumstances, the district court properly required expert medical opinion, ... and in its absence properly withdrew the issue from the jury. (emphasis added)

Boring, 833 F.2d at 474. Here, as in Boring, Benson's anxiety and panic symptoms are such that no lay jury could reasonably conclude that they constitute "serious" medical conditions in the absence of expert testimony. Without expert testimony, a jury is not in the position to be able to determine whether these conditions constitute "serious" medical conditions. Unlike a gunshot would or a broken leg, these psychiatric conditions are not obviously "serious" medical conditions which would be "apparent to a lay person." Accordingly, Benson's claims against Dr. Ellien should be dismissed.

### C. BENSON STATES AT BEST NOTHING MORE THAN A DISAGREEMENT BETWEEN HIMSELF AND DR. ELLIEN AS TO THE APPROPRIATENESS OF THE TREATMENT RENDERED, AND HIS CLAIMS SHOULD THEREFORE BE DISMISSED.

Rather than establishing a failure to provide him with medical treatment, the records in this matter clearly demonstrate that Benson **was** provided with treatment, but that Benson **disagrees** with the choice of that treatment. Benson believes that he should have been treated with a medication other than Tofranil (Imipramine) at the time in question. Benson believes that he should have been given some other medication. Mere differences in medical opinion as to a course of treatment fail to state a cause of action for deliberate indifference to a serious medical need under 42 U.S.C. §1983. Farmer v. Carlson, 685 F.Supp. 1335 (M.D. Pa. 1988); Holy v. Rapone, 476 F.Supp. 226 (E.D. Pa. 1979).

Disagreements with the medical treatment provided fail to support a claim pursuant to 42 U.S.C.

§1983. A prisoner's right to medical care does not extend to the type of medical care which the prisoner personally desires. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979). A prisoner's complaints regarding the quality or appropriateness of the medical care received **never** support a claim of an Eighth Amendment violation. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 302, 346 (3d Cir. 1987).

In Farmer v. Carlson, 685 F.Supp. 1335 (M.D.Pa. 1988), the United States District Court for the Middle District of Pennsylvania, in granting the defendant physician's motion for summary judgment, held that questions regarding the timeliness of the treatment received or the provisions of medication were based in negligence or malpractice, and must be dismissed:

> Thus, "the key question...is whether defendants have provided plaintiff with some type of treatment regardless of whether it is what the plaintiff desired." (citations omitted)

Farmer, 685 F.Supp. at 1339. In Holly v. Rapone, 476 F.Supp. 226 (E.D.Pa. 1979), Senior Judge Davis held that:

> Denying plaintiff's Eighth Amendment claim I remain consistent with the ruling "[W]here the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." Roach v. Kligman, 412 F.Supp. 421, 425 (E.D.Pa. 1976), quoted approvingly in Norris v. Frame, supra, 585 F.2d at 1185.

Holly, 476 F.Supp. at 231.

In Sult v. Prison Health Services Polk County Jail, 806 F.Supp. 251 (M.D.Fla. 1992), the plaintiff contended that the conduct which constituted deliberate indifference was the failure to conduct an MRI or to refer him to a specialist for further evaluation of his back pain:

> Whether diagnostic techniques or particular forms of treatment are indicated is a matter for medical judgment. A medical decision not to order such measures does not represent cruel or unusual punishment.

Sult, 806 F.Supp. at 252. In Rodriguez v. Joyce, 693 F.Supp. 1250 (D.Me. 1988), the plaintiff, a prisoner, alleged that he injured his finger while playing volleyball. When he sought medical treatment from employees of the prison, where he served as an inmate, he received aspirin for the pain. The

medical personnel at the prison never took an x-ray. The plaintiff contended that he had fractured his finger. He maintained that the failure of the medical personnel at the prison to take the x-ray resulted in his receiving inadequate medical care. The court, in granting the motion for summary judgment, stated:

> But, as the Supreme Court clearly stated in Estelle, merely questioning the form of medical treatment does not constitute a cognizable section 1983 claim. Plaintiff has alleged nothing more than negligent diagnosis. A decision whether or not to order an x-ray 'is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measure, does not represent cruel and unusual punishment.' Estelle, (citation omitted.) This is quite apt in the context here, where the claim involves only a mere injury to a finger joint. The failure of the nurses to order an x-ray of plaintiff's injured finger is not cruel and unusual punishment. Our holding here is consonant with the approach towards preventing section 1983 from becoming a national state tort claims act administered in the federal courts. Quoting Estate of Bailey v. County of York, 768 F.2d 503, 513 (3d Cir. 1985) (Adams, J., dissenting).

Id. at 693 F.Supp. at 1253.

The United States Court of Appeals for the Eighth Circuit held that a prisoner had failed to state a cause of action for deliberate indifference to a serious medical need based on the Eighth Amendment of the United States Constitution. In that case, Smith v. Marcantonio, 910 F.2d 500 (8th Cir. 1990) plaintiff, an inmate, alleged that prison officials violated his constitutional rights by engaging in conduct deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. According to the plaintiff he needed more pain killing medication than the prison doctor was willing to dispense. The plaintiff also disagreed with the frequency of his bandage changes. He blamed the doctor for a one week delay in his first check up at the University Hospital. The United States Court of Appeals for the Eighth Circuit held that the plaintiff had failed to state a cause of action:

> Because Smith's complaints represent nothing more than mere disagreement with the course of his medical treatment, he has failed to state an eighth amendment claim of deliberate indifference.

Id. at 910 F.2d at 502.

The same analysis applies to Benson's claims in this matter. Benson believes that Dr. Ellien should not have prescribed Tofranil. Benson believes that Dr. Ellien should have prescribed something

else for him at that time. Benson does not allege that Dr. Ellien failed to treat him for any of his psychiatric conditions. He just disagrees with a portion of that treatment. This, however, constitutes a disagreement over the course of medical treatment, and fails to rise to the level of a claim under 42 U.S.C. § 1983. Accordingly, Benson's claims against Dr. Ellien should be dismissed.

>   D.   **BENSON HAS FAILED TO EXHAUST HIS AVAILABLE ADMINISTRATIVE REMEDIES AS REQUIRED BY 42 U.S.C. §1997e(a), AND HIS CLAIMS SHOULD THEREFORE BE DISMISSED.**

Benson brings his claims in this matter pursuant to 42 U.S.C. §1983. In order to proceed with his claims against moving defendants, Benson must be able to establish that he has exhausted the administrative remedies available to him by the Pennsylvania Department of Corrections through ADM-804. 42 U.S.C. §1997e(a) requires that Benson do so. Congress enacted §1997e(a) to bar any prisoner in any prisoner in the United States from initiating any action relating to any prison condition, without first exhausting his administrative remedies. 42 U.S.C. §1997e(a) provides in pertinent part that:

> No action shall be brought with respect to prison conditions under Section A 1979 of the revised statutes of the United States. (42 U.S.C. §1983) or any other Federal law by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This provision makes no distinction between an action for damages, injunctive relief or both. See Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000). Prisoners must exhaust their available administrative remedies prior to initiating a prison condition case brought pursuant to 42 U.S.C. §1983, or any other federal statute.

The Pennsylvania Department of Corrections has adopted a consolidated inmate grievance review procedure, Policy DC-ADM-804 ("ADM-804"), effective October 20, 1994, and amended effective May 20, 1996; November 1, 1997; and May 1, 1998. (A true and correct copy of which is attached hereto as Ex. "E"). ADM-804 provides that, as of May 1, 1998, an inmate "may also include a request for compensation or other legal relief normally available from a court." (Ex. "E", May 1, 1998 amendment)

The United Stated Court of Appeals for the Third Circuit, in <u>Nyhuis v. Reno</u>, 204 F.3d 65 (3d Cir. 2000), decisively concluded that 42 U.S.C. §1997e(a) made the exhaustion of all administrative remedies mandatory, whether or not they provide the inmate plaintiff with the relief he states he desires in his federal action. <u>Id</u>. at 67. In <u>Booth v. Churner</u>, 206 F.3d 289, 300 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit held that the holding in <u>Nyhuis</u> applied to claims brought by state prisoners pursuant to 42 U.S.C. §1983. The Court of Appeals stated that:

> Indeed, the <u>Nyhuis</u> rule has even greater force with respect to §1983 actions. First, as we explained in <u>Nyhuis</u>, additional comity consideration obtain in the §1983 context—which are not implicated by a <u>Bivens</u> action—given the strength of the interest that state prisons and state courts have in resolving complaints filed by state prisoners. (citations omitted)
>
> Second, additional federalism and efficiency considerations are implicated when reviewing §1983 actions—as compared to <u>Bivens</u> actions—because of the greater difficulty federal courts may have in interpreting and/or predicting the contours of state law and state administrative regulations and practice.

<u>Id</u>., 206 F.3d at 300. In <u>Booth, supra</u>, the Court of Appeals concluded that because the plaintiff inmate:

> failed to exhaust his available administrative remedies (rather than those he believed would be effective) before filing his §1983 action, the District Court appropriately dismissed his action without prejudice. <u>Id</u>.

The analysis of the United States Court of Appeals for the Third Circuit in <u>Nyhuis, supra</u>, 204 F.3d at 72, and in <u>Booth, supra</u>, 206 F.3d at 300, requires the dismissal of Benson's Amended Complaint. Brown has failed to exhaust his available administrative remedies.

In <u>Geisler v. Hoffman</u>, No. 99-1971 (3d Cir. Sep. 29, 2000)[1] (attached hereto as Ex. "F"), the United States Court of Appeals for the Third Circuit considered the inmate plaintiff's appeal of an order of the District Court dismissing his civil rights claims for failing to exhaust his administrative remedies. The Third Circuit affirmed the dismissal "because Geisler simply did not exhaust his administrative remedies as to the monetary relief he now seeks." The Court explained:

---

[1] Although <u>Geisler</u> is an unreported opinion of the Third Circuit, and therefore not binding upon this Court, it clearly supports the position of moving defendants, and should be considered.

> The plain language of 42 U.S.C. §1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), makes clear that: "No action shall be brought with respect to prison conditions under section 1983 of this title...by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" 42 U.S.C. §1997e(a) (emphasis added). As we determined in Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000), Congress intended for the PLRA to amend "§1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory—*whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action.*" The decision in Nyhuis—a Bivens action—to reject a "futility" exception to §1997e(a) and to regard the exhaustion requirement as unqualified had been extended to §1983 claims. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) ("[T]he rule we announced in Nyhuis has equal force in the §1983 context...for §1997e(a) treats Bivens actions and §1983 actions as functional equivalents"), petition for cert. filed, 68 U.S.L.W. 3774 (U.S. June 5, 2000) (No. 99-1964).

Inmates, pursuant to ADM-804, are permitted to make requests for monetary relief as part of the administrative process. As in the Geisler case, Benson here requests for the first time in the context of his federal civil action, monetary relief as against the medical defendants in these two cases, without first having exhausted his administrative remedy as to that form of relief. While Benson appears to have pursued a grievance against Dr. Ellien, there is no indication that this grievance or any other grievance by Benson as against Dr. Ellien with regard to the claims being pursued herein ever sought monetary relief pursuant to ADM-804. Consequently, Benson has failed to properly and fully exhaust his administrative remedies. Here, as the plaintiff in Geisler, Benson first sought the remedy of monetary damages as part of his federal civil action, failing to do so within the context of the pursuit of his grievances under ADM-804. Therefore, Dr. Ellien's Motion for Summary Judgment should be granted, and the Benson's claims dismissed.

### III. CONCLUSION

Accordingly, and for the reasons discussed above, it is respectfully requested that this Honorable Court grant the Motion for Summary Judgment of defendant, William G. Ellien, M.D., and dismiss all claims by the Plaintiff, Jason E. Benson, as against Dr. Ellien.

Respectfully submitted,

GOLD, BUTKOVITZ & ROBINS, P.C.

BY: _____
ALAN S. GOLD
SEAN ROBINS
Attorneys for defendant,
William G. Ellien, M.D.

7837 Old York Road
Elkins Park, PA 19027
(215) 635-2000

DATE: January 15, 2002