IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON E. BENSON, | : | CIVIL ACTION |
| Plaintiff | : | NO. 1:CV-00-1229 |
| | : | |
| vs. | : | Judge Caldwell |
| | : | Magistrate Judge Blewitt |
| THOMAS DURAN, et al., | : | |
| Defendants | : | JURY TRIAL DEMANDED |

PLAINTIFF'S RESPONSE TO DEFENDANT
WILLIAM G. ELLIEN'SSTATEMENT OF UNDISPUTED FACTS
AND MOTION FOR SUMMARY JUDGMENT

Plaintiff, Jason Benson, pro se, herein responds to the defendant Eillien's, motion for summary judgment and statement of undisputed facts. Plaintiff avers the following in support of his response:

1. I hereby certify that all of the statements made below are true and correct to the best of my belief, information, and knowledge. I also incorporate as set forth here in full my affidavit submitted in this matter. I also understand that the statements contained herein are subject to the penalty of perjury pursuant to 28 U.S. § 1746 relating to unsworn falsification to authorities.

2. In ¶4, of Ellien's statement of undisputed facts, it's stated that he "was not responsible for, not involved in, the treatment of Benson's epilepsy..." That is not true. Ellien has a duty to make sure that the medication prescribed does not conflict with plaintiff's illnesses and/or harm him. Ellien submitted two (2) documents at (Ex. "B", dated 4/11/00 & 5/17/00); therein Ellien told plaintiff that stopping his medication abruptly was not an option and placed plaintiff on the must take list. Ellien also stated "I shared

that I would note, [with emphasis,] the importance of the Dilantin, [in particular,] being given as prescribed." Ellien also fails to tell the court that regardless of whether or not plaintiff was on the must take list, it is the Department of Corrections Policy to have a prisoner who refuses treatment, sign a "Release From Responsibility For Medical Treatment Form." See Plaintiff's Response to the Adam County Defendant's as well as Defendant's R. Long and W. Ellien's Motion for Summary Judgment at (Ex. "H"). [¶6 addressed above]

3. In ¶8 , Ellien states that plaintiff agreed to take what he prescribed. That is not true. Plaintiff told Ellien that the medication would not be good for him. See Ellien's (Ex. "D" Benson's Deposition pg. 6).

4. In ¶¶12 thru 14, Ellien attempts to make it a fact that plaintiff consented to take the medications and that there was no compulsion or obligation to take the medications. That is not true. See ¶2, above.

5. In ¶¶17 & 18, Ellien states that plaintiff stopped taking the Tofranil, and that it was discontinued by August 17,1999. If what Ellien states is true, then why was Adams County Prison defendant's issuing plaintiff Tofranil, in accordance with Ellien's prescription and; how did the Gettysburg Hospital come to possess the instructions/prescriptions made by Ellien. See (Ex. "A, B" attached hereto).

6. In ¶¶24 & 25, Ellien states that according to defendant Long, the plaintiff intentionally overdosed on Dilantin, to get high. That is not true. Throughout plaintiff's medical and psychiatric files there are no instances or notations suggesting that plaintiff has taken medications to get high. Furthermore, it is irrelevant.

7. In ¶27, Ellien states that he prescribed Paxil, and plaintiff consented to it's use. That is not true. Plaintiff would not have consented because, he was afraid of the same outcome (as with Tofranil) would have taken place.

8. In ¶¶32 & 33, Ellien first states he discontinued Paxil, due to the side effects, on April 23, 2000. However, Ellien also stated that he dsicontinued Paxil, due to non-compliance on April 11, 2000. Simply put, Ellien did not know what he was doing or exactly when he did it. Ellien also states that he has seen or treated plaintiff 10 or 11, times and lectured plaintiff about his rejecting medications. It was then and is now, that plaintiff's continous visits with Ellien, left plaintiff no choice but to reject medications; especially when nearly everything Ellien prescribed could potentially leave plaintiff in a coma.

9. In ¶36, Ellien states that Benson consented to meds or treatment or something. Plaintiff did not consent to anything. Ellien prescribed what he wanted; it's like Ellien was experimenting on plaintiff or practicing what could and could not be done to a patient.

10. In ¶¶37 thru 44, Ellien states that plaintiff was on a low dosage of Tofranil and that there is no medical evidence which specifically attributes the use of Tofránil, particularly in such low doses, as the cause of seizures. That is not true. Perhaps Ellien believes that the impression of a [neurologist] at Gettysburg Hospital is not specific enough for him. Doctor Mosser, a neurologist at Gettysburg Hospital, found that "[1]Seizure Disorder; [2]Status Epilepticus due to the abrupt withdrawal of Dilantin plus the effects of other drugs on the seizure threshold." The only drugs that could have had an effect on plaintiff's seizure threshold were the drugs prescribed

by Ellien, i.e., Tofranil/Imipramine. See (Ex. "A,B") attached hereto.

11. In ¶¶45 thru 52, Therein everything is in dispute. Especially Ellien's medical opinion, to a high degree of medical certainty; item 10's (above) exhibits totally contradicts that. Ellien's opinions, even to a high degree of medical certainty, are essentially self-serving assertions and why should this Court deem his conclusions conclusive when, the plaintiff submitted numerous interrogatories and admissions which were objected to by Ellien as being answerable by an expert only. Here, Ellien is suggesting that because plaintiff is pro se, there is no logical reasoning that exist to warrant him answering question with his professional opinion, and to a high degree of medical certainty. However, on the flip side of the sword, if you will, Ellien has opined to various matters to a high degree of medical certainty (of course) and pursuant to the penalties of perjury. Ellien should not be allowed to have it both ways because, it suggests that his irreverence makes him immune to the Rules of this Court and the Laws of the United States. Furhtermore, with respect to Ellien's mistaken assumption that the plaintiff failed to exhaust the administrative remdies required by the [PLRA], is clearly a waist of the Court's valuable time. Plaintiff exhausted all of the remdies necessary. See Plaintiff's Response to Ellien's Motion to Dismiss (Ex. "A,B,C-et cetera et cetera).

Ellien also argues that "Benson's anxiety and panic symptoms are such that no lay jury could reasonable conclude that they constitute 'serious' medical conditions in the absence of expert testimony. Without expert testimony, a jury is not in the position to be able to determine whether these conditions constitute 'serious' medical conditions." Ellien's Motion for Summary Judgment § B,¶2.

Again, Ellien is incorrect in that, this matter pertains to anxiety and panic symptoms. This proceeding is about Ellien prescribing drugs that disagree with the plaintiff's epileptic condition and Ellien states in his Verification numerous times that "We reviewed the indications, benefits, side effects, and adverse effects and precautions,..." Everytime Ellien tried to prescribe a medication, plaintiff would ask about side effects or if the drug would be in conflict with his epilepsy; regardless of what plaintiff said, Ellien would prescribe whatever he wanted even after reviewing and knowing there were adverse side effects in the medications. And, with out a doubt, that is subjective knowledge; especially, when the information came straight out of a desk-top [P.D.R.] or Physician's Desk Reference.

Therefore, the plaintiff is asking this Honorable Court to take judicial notice of the fact that a serious medical need that a jury could take note of without expert testimony would be something of the nature of "a person who has seizures has been taken off of seizure medication." See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 103 S.Ct. 2979 (1983). Likewise, this sort of situation (the need for expert testimony) was addressed by the Third Circuit Court of Appeals in Parham v. Johnson, 126 F.3d 454 (1997), wherein the District Court dismissed Parham's, case for lack of expert testimony but the appeals court thought the dismissal was startling because Parham's, motion for counsel was denied. Meaning, that Parham's, case didn't warrant expert testimony hence, no counsel. The Appellate Court, reasoned that that ruling was incorrect and remanded the case for appointment of counsel for the purposes of securing expert testimony.

The facts are, that this Court denied counsel to the plaintiff and if it's because this Court believes that expert testimony isn't needed then the defendant's must be made aware of that. However, if the Court believes that the defendant's argument is on point and must be ruled on according to their case law; then it's only evenhanded play, that the Court appoint counsel for the purposes of securing expert testimony or in the alternative, the Court could appoint an expert witness for plaintiff to depose. In the case sub judice, there is obviously a conflict in the interpretation of medical evidence and/or standards, which mandate counsel being appointed. See Tabron v. Grace, 6 F.3d 147,156 (3rd Cir.1993); Tucker v. Randall, 948 F.2d 388,392 (7th Cir.1991)(citing conflicting medical evidence as a reason to appoint counsel.). Thus the plaintiff has no choice but to reinstate his request for counsel pursuant to 28 U.S.C. § 1915.

**WHEREFORE**, for the reasons stated above, the plaintiff respectfully requests that this Honorable Court deny defendant Ellien's motion for summary judgment; appoint counsel for the purpose of obtaining expert testimony or in the alternative, appoint an expert witness for the plaintiff to depose.

Respectfully submitted,

Date: January 23, 2002

Jason Benson, Plaintiff
DS-6483, SCI-Smithfield
1120 Pike St.,P.O. Box 999
Huntingdon, PA  16652

6

# THE GETTYSBURG HOSPITAL
## CONSULTATION REPORT

0300410351   17-75-56

NAME   JASON BENSON
DATE AND TIME OF REQUEST   30AUG99   0900
TO DOCTOR   DR MESSER
REASON FOR CONSULTATION:
RECURRENT SEIZURES

BENSON, JASON E
KANSLER, DAVID F MD
EZCTA 09/27/1976 22Y   M

OPINION ONLY ☑
TREAT AND FOLLOW ☑

REQUESTING PHYSICIAN:   DR KANSLER

| DATE | TIME | SIGNATURE | PERSON NOTIFIED OF REQUEST |
|------|------|-----------|----------------------------|
| 30AUG99 | 0910 | | DEB |

REPORT OF CONSULTATION (Findings, Diagnosis, Recommendations)

22 Y.O. WM WITH H/O EPILEPSY SINCE 12 Y.O. P.H. OF "PETIT MAL" (PROBABLY COMPLEX-PARTIAL SEIZURES) + GENERALIZED. EEG'S 3/89 + 4/90 → (L) TEMPORAL FOCUS   EEG 8/97 ⊖ @ ASM FOR SEIZRS 2° TO PT. D/C OF DILANTIN + DRUG USE.   C/O MIGRAINE (R SERZONE, ATIVAN, IMIPRAMINE PTA FROM G. PRISON) R/C IV. DILANTIN 1 GM.   LAB OK BUT ↑ WBC ↓ $CO_2$ C/W POST-ICTAL STATE.   HAD TH ST THIS AM 0440 → ONSET IN SLEEP   D/CED DILANTIN × 4 MOS

EXAM: NEUR SUPPLE.   MS. - ALERT + ORIENTED, NO APHASIA, MEMORY OK   CN - VIS FIELDS ✓ FUNDUS ✓ NO PAPILLEDEMA, PERRL, EM'S FULL SMH ✓ ⊕ NYSTAGMUS IN ALL DIRECTIONS (C/W DILANTIN LOAD.) HEAR ✓ TONGUE ✓   MOTOR - NO DRIFT POWER R=L TONE ✓ SENS ✓   DTR'S 1-2+ R=L   TOES ↓.
EEG TODAY → (L) DISCHARGE
IMP: ①SEIZURE DISORDER, ②STATUS EPILEPTICUS @ AM 2° TO D/C OF DILANTIN ± EFFECTS OF OTHER DRUGS ON SEIZURE THRESHOLD
SUGGEST - ✓DILANTIN LEVEL IN AM   IF >10 BUT <20 RX 200 MG PO BID. OR PREVIOUS DOSE KNOWN TO BE EFFECTIVE

SIGNATURE OF CONSULTANT

CONSULTATION REPORT

MR19 1/99   White - Medical Records   Yellow - Consulting Physician

## THE GETTYSBURG HOSPITAL - MEDICATION ADMINISTRATION RECORD

```
GENERATED: 08-30-99 08:18pm   DIAGNOSIS:              BENSON, JASON E        177556
FOR PERIOD: 08-31-99 07:01    **SEIZURES              E2 E207-A              0300410351
   THROUGH: 09-01-99 07:00    ALLERGIES:              AGE: 22                SEX: M
CHECKED BY RN: [signature]    BUTALBITAL              HGT: 5'8               WGT: 181.50
PAGE 3 OF 3                   *** More allergies on file ***  KAMSLER, DAVID F
```

| START | STOP | ROUTE | MEDICATION | 0701-1500 | 1501-2300 | 2301-0700 |
|---|---|---|---|---|---|---|
| 08-30 0800 | 09-29 0700 | IV | EPINEPHRINE 1:10,000 **ADRENALIN 1:10,000** 1DOSE=1DOSE STD ANTI-ARRYTHMIA ORDERS STD ANTI-ARRYTHMIA ORDERS 1MG IV PUSH GIVE FOR ASYSTOLE GIVE FOR V-FIB,PULSELESS V-TACH [initials] | | | |
| 08-30 0800 | 09-29 0700 | PO | ACETAMINOPHEN **TYLENOL** 650MG=2TAB EVERY 4 HOURS PRN AS NEEDED FOR PAIN [initials] | | | |
| 08-30 0900 | 09-06 0800 | PO | ACETAMINOPHEN W/ OXYCODONE **PERCOCET,ROXICET** 1TAB=1TAB EVERY 4 HOURS PRN AS NEEDED FOR PAIN [initials] | 0740G (HG) | | |
| 08-30 0800 | 09-29 0700 | PO | AL/MAG HYDROXIDE TC (MAALOX) **MAALOX TC** 15ML=15ML EVERY 4 HOURS PRN SHAKE WELL BEFORE USING AS NEEDED FOR INDIGESTION [initials] | | | |
| 08-30 0800 | 09-29 0700 | PO | LORAZEPAM **ATIVAN** 1MG=1TABLET EVERY 6 HOURS PRN AS NEEDED FOR ANXIETY [initials] | | | |

```
INJECTION SITE CODE               SITE ROTATION FOR HEPARIN,          IF A MED IS NOT GIVEN, CIRCLE THE SCHEDULED
1 RVG   4 LDG   7 RLT   9 RD      NITROGLYCERIN OINTMENT, INSULIN     TIME AND INITIAL. DOCUMENT REASON IN NURSES
2 RDG   5 LAT   8 LD   10 RAT     A RT ARM  C RT THIGH  E LT ABD      NOTES IF MED IS GIVEN LATE, WRITE ACTUAL TIME
3 LVG   6 LLT                     B RT ABD  D LT THIGH  F LT ARM      BENEATH SCHEDULED TIME AND INITIAL
```

| INITIAL | NAME & PROFESSIONAL DESIG | INITIAL | NAME & PROFESSIONAL DESIG | INITIAL | NAME & PROFESSIONAL DESIG |
|---|---|---|---|---|---|
| BJ | B Doyle RN | HG | H Garretson RN | | |

```
BENSON, JASON E                    E2 E207-A  MRH 177556       ACCT# 0300410351
                             07    09              14                       21  22
```

**THE GETTYSBURG HOSPITAL - MEDICATION ADMINISTRATION RECORD**

```
GENERATED: 08-30-99 08:18pm  DIAGNOSIS:            BENSON, JASON E       177556
FOR PERIOD: 08-31-99 07:01   **SEIZURES            E2 E207-A             0300410351
  THROUGH: 09-01-99 07:00    ALLERGIES:            AGE: 22               SEX: M
CHECKED BY RN: [signature]    BUTALBITAL           HGT: 5'8              WGT: 181.50
PAGE 1 OF 3                  *** More allergies on file ***KAMSLER, DAVID F
```

| START | STOP | ROUTE | MEDICATION | 0701-1500 | 1501-2300 | 2301-0700 |
|---|---|---|---|---|---|---|
| 08-30 2200 | 09-29 2100 | PO | IMIPRAMINE HCL (TOFRANIL) **TOFRANIL** 100MG=2TABLET AT BEDTIME | | 22 | |
| 08-30 2200 | 09-29 2100 | PO | NEFAZODONE **SERZONE** 200MG=1DOSE AT BEDTIME NON FORMULARY MED. FOR REORDER NOTIFY PHARMACY 24 HOURS PRIOR TO LAST DOSE | | 22 | |
| 08-30 1400 | 09-29 1300 | PO | PHENYTOIN SODIUM **DILANTIN** 100MG=1CAP THREE TIME A DAY | [sig] 09 14 | 21 | |
| 08-31 0700 | 09-30 0600 | IV | SODIUM CHLORIDE 0.9% **NACL 0.9%** 1DOSE=1DOSE FLUSH IV SITE AS NEEDED FLUSH ACCORDING TO APPROPRIATE PROTOCOL | DC'd 09 | 21 | |

```
INJECTION SITE CODE       SITE ROTATION FOR HEPARIN,          IF A MED IS NOT GIVEN, CIRCLE THE SCHEDULED
1 RVG  4 LDG  7 RLT  9 RD NITROGLYCERIN OINTMENT, INSULIN     TIME AND INITIAL  DOCUMENT REASON IN NURSES
2 RDG  5 LAT  8 LD  10 RAT A RT ARM  C RT THIGH  E LT ABD     NOTES IF MED IS GIVEN LATE, WRITE ACTUAL TIME
3 LVG  6 LLT              B RT ABD   D LT THIGH  F LT ARM     BENEATH SCHEDULED TIME AND INITIAL
```

| INITIAL | NAME & PROFESSIONAL DESIG | INITIAL | NAME & PROFESSIONAL DESIG | INITIAL | NAME & PROFESSIONAL DESIG |
|---|---|---|---|---|---|
| JJ | D Taylor RN | | | | |

BENSON, JASON E         E2 E207-A MR# 177556         ACCT# 0300410351

Exhibit B

# THE GETTYSBURG HOSPITAL

## EMERGENCY DEPARTMENT REPORT

8-31 D

NAME: BENSON, JASON E
MR: 177556

DATE OF VISIT: 08/30/1999

CHIEF COMPLAINT: Seizure

HISTORY: The sheriff that transported this patient from prison says he was told that this patient had a small seizure about an hour and a half ago and then a larger one more recently that prompted the decision to transport this gentleman to the Emergency Department. He was noted to be bleeding from his mouth following the second seizure. He was apparently transported to the Emergency Department in the police cruiser in a conscious condition but shortly after arriving here, had another seizure which occurred in our parking lot area. This was observed by paramedic staff and was observed to be significant. When I went out to the parking lot area, he was noted to be apparently post ictal with bloody mucous coming from his mouth. His respirations were somewhat labored. He was transported into the Emergency Department for further evaluation.

PAST MEDICAL HISTORY: Positive for seizures in the past. He has been worked up with neurology consults, numerous CT's and I believe EEG. It is believed he has a seizure disorder although he apparently had seizures prompted or precipitated by his multi drug use which includes cocaine, marijuana, and ecstasy. He was seen here a couple of days ago by Dr Stemour for injuries related to a scuffle with prison guards. He apparently was maced at that point but was treated and released with a diagnosis of multiple contusions.

MEDICATIONS: Faxed to us from prison are Serzone, Ativan p r n and Imipramine. He apparently is on no anticonvulsants

PHYSICAL: On arrival in the Emergency Department the patient is pale, diaphoretic, unresponsive with somewhat snoring respirations. O2 saturation initially was about 88% range. He was somewhat resistant to maintaining oxygen mask on his face but as he became more lucid he became calmer and his O2 saturation improved into the high 90's. Within the period of 15 minutes or so in our department, he was able to look towards me in response to his name being called and able to follow simple commands such as opening his mouth -

| | |
|---|---|
| HEENT | He has a little minor ecchymosis in his left postauricular area. Pupils are equal. TM's, nares unremarkable. Exam of his mouth I believe shows an abrasion of the right lateral tongue |
| NECK | Appears to be supple |
| LUNGS | Clear anteriorly |
| HEART | Regular rhythm |
| ABDOMEN | Soft |
| EXTREMITIES | He was initially wearing handcuffs but was switched to leg shackles by the sheriff that brought him in. He seems to have movement in all his arms and legs |

TREATMENT/PLAN: Since this seizure witnessed by us in the Emergency Department was his third in a short period of time, he was given a loading dose of Dilantin 1 gram IV. Blood work has been drawn which shows a white count of 17 6 with a normal H&H and platelet count. Chem panel 2 is pending

PAGE 1 O

MR164 11/91                                      EMERGENCY DEPARTMENT REPORT

Exhibit B

# THE GETTYSBURG HOSPITAL

EMERGENCY DEPARTMENT REPORT

NAME: BENSON, JASON E
MR: 177556

I plan to speak to the next doctor up for unassigned admission about this patient. With three seizures in a short period of time, I feel that he should be admitted to the hospital for more close observation.

IMPRESSION: Multiple seizures

TWH dh
DD 08/30/1999  DT 09/01/1999 11 34

SIGNED BY   TIMOTHY W HOLLAND, MD     9/2/99

MR164 11/91                EMERGENCY DEPARTMENT REPORT                PAGE 2 OF 2