IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON E. BENSON, | : | CIVIL ACTION |
| | | NO. 1:CV-00-1229 |
| Plaintiff, | : | |
| | | (Judge Caldwell) |
| vs. | : | (Magistrate Judge Blewitt) |
| | | |
| WILLIAM G. ELLIEN, M.D., et al., | : | |
| | | |
| Defendants | : | |

FILED
SCRANTON

MAR 1 4 2002

PER _____
DEPUTY CLERK

## DEFENDANT'S, WILLIAM G. ELLIEN, M.D., REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, William G. Ellien, M..D. ("Ellien") by and through his counsel, Gold, Butkovitz & Robins, P.C., hereby provides the following Reply in support of his Motion for Summary Judgment in this matter, and responds to Plaintiff's, Jason E. Benson ("Benson") "Response to Defendant William G. Ellien's Statement of Undisputed Facts and Motion for Summary Judgment."

### 1. BENSON'S RESPONSE TO STATEMENT OF UNDISPUTED FACTS

Benson attempts to counter ¶4 of Ellien's Statement of Undisputed Facts by denying that Ellien was not involved in the treatment of Benson's Dilantin. He fails to do so. Benson simply denies without any evidence that Dr. Ellien was responsible for treating his epilepsy. There is no dispute that Benson's epilepsy was treated by Dr. Long. Benson asserts that the fact that Dr. Ellien told him that he should not abruptly discontinue taking certain medications demonstrates that he treated his epilepsy. Benson asserts that placing him on the "must take" list for medication that Benson was threatening to abruptly discontinue, so that he could be evaluated by the physician who was **actually** treating his epilepsy, demonstrates that Ellien was treating his

epilepsy. Neither of these assertions counters the fact that Dr. Ellien was a psychiatrist treating Benson's psychiatric conditions, and that Dr. Long treated Benson's epilepsy. Neither informing Benson that he should not abruptly discontinue medicine, nor taking a procedural step to assure that he did not take the dangerous step of abruptly discontinuing certain medication (so that the treating physician could manage the situation), constitutes treatment of Benson's epilepsy. Benson would like it to, but this does not make it so. In addition, Benson asserts that Ellien had a "duty to make sure that the medication prescribed does not conflict with plaintiff's illnesses and/or harm him." Benson claims that this in and of itself constitutes treatment of Benson's epilepsy. If this were true, then virtually any and every physician, P.A., or nurse who treated Benson for any condition, could be said to have been responsible for the treatment of Benson's epilepsy, no matter what they treated. This makes no sense. Benson's assertions fail to satisfactorily contradict Ellien's ¶4.

Ellien's ¶8 simply does not state what Benson claims it does. Dr. Ellien states that, as a general matter, he obtained Benson's informed consent before prescribing medications, and describes the process. At no time was Benson forced to take any medication prescribed by Dr. Ellien and, as Benson appears to admit, he was entirely capable of refusing to take any medication that he did not want to take.

As to ¶¶12-14, Benson does not dispute that Dr. Ellien explained each and every medication prescribed to him in detail, the effects and potential side effects, the use of each medication, the various medication options, and so forth, that Benson agreed to take the medications prescribed. Benson attempts to assert that he took medications because he was, in some manner, forced to do so, and relies upon his prior assertion that Dr. Ellien in April, 2000, stated that Benson had to be placed on the "must take" list for his **epilepsy** medication, which

Benson does not dispute, Benson was threatening to abruptly discontinue. Whether Dr. Ellien took the procedural step to place the medical staff on notice that Benson was threatening to abruptly stop medication, an action that could have been very dangerous, by placing him on a "must take", does not speak to whether Benson willingly took psychiatric medications prescribed for him by Dr. Ellien. There is no evidence, and no facts pointed to by Benson, which would support the contention that he was forced to take any psychiatric medication. Finally, Dr. Ellien saw Benson only one more time, in May, 2000, following the April visit in which Ellien informed Benson that it would be dangerous for him to suddenly stop taking his epilepsy medication. Benson also fails to dispute the fact, noted by Ellien in his statement, that he referred Benson to Dr. Long concerning Benson's desire to discontinue taking his epilepsy medication.

Benson attempts to counter ¶¶17-18 of Dr. Ellien's statement by posing a rhetorical question about "why" some other prison or Gettysburg Hospital allegedly (and Benson presents no documentation) provided him with a medication that had been discontinued some time earlier by Dr. Yun, if the medication had been discontinued. Benson provides no evidence that the medication was not discontinued when stated, and fails to address the unambiguous and definitive medical records (referenced in the Motion in chief) which demonstrate that the Tofranil was discontinued as of August 19, 1999, because Benson himself stopped taking it three days after its prescription. Benson assertions fail to counter Dr. Ellien's statement.

As to ¶27 of Dr. Ellien's statement, Benson asserts that it is not true that he was prescribed Paxil by Ellien. Nevertheless, Benson fails to address or provide any evidence contrary to the unambiguous medical records which demonstrate that he was prescribed Paxil on January 13, 2000. If Benson thereafter failed to take medication that had been prescribed,

Benson fails to so state, and the medical records fail to reveal this to be the case. Benson however, is incapable of countering the fact that the medication was prescribed for him.

As to ¶¶32-33 of Ellien's statement, initially, it appears Benson intends to state March 23, 2000 rather than April 23, 2000, as there is no April 23, 2000 visit between Ellien and Benson. As to his attempt to counter the statements, Benson tries to show some inconsistency between the two paragraphs, but fails to do so. As stated, Dr. Ellien and Benson **discussed** the discontinuance of Paxil on March 23, 2000, but it was not until April 11, 2000 that the prescription was cancelled by Dr. Ellien due to Benson's non-compliance. Clearly, Benson is capable of refusing to take medications that he chooses not to take, for whatever reason. and he is not forced to take them. Benson also admits that, whenever he deemed appropriate, he (Benson) would refuse to take or stopped taking medications prescribed by Dr. Ellien. Benson states that he did so because "nearly everything Ellien prescribed could potentially leave plaintiff in a coma." There, however, is no evidence of the truth of this assertion, and it is simply Benson's own irrelevant "medical" opinion.

As to ¶36, Benson asserts that it is not true that Benson consented to the medications prescribed by Dr. Ellien, however, Benson's own prior assertions here belie any such contention. In just the prior paragraph Benson himself asserts that he had "no choice but to reject medications" prescribed to him by Dr. Ellien. It is undisputed that Benson in fact did just that, refused to take medications that he chose not to. Benson also does not dispute the fact that he was provided with detailed information concerning his medication choices by Dr. Ellien, about the medications themselves, their effects and side effects and so on. Clearly, Benson made his own determinations, often against medical advice, as to what medications to take and not to take.

Benson's attempt to counter ¶¶37-44 of Dr. Ellien's statement concerning the medical

effect, and lack of likelihood that Tofranil could have cause Benson's alleged seizures, likewise fails. Benson refers solely to a snippet of a statement, apparently concerning an evaluation by a physician at Gettysburg Hospital that (again **apparently** as the records are not provided) states that Benson had a diagnosis of "Status Epilepticus **due to the abrupt withdrawal of Dilantin**" and some evidently unspecified "effects of other drugs on the seizure threshold." Again, apparently, this diagnosis seems to conclude primarily that the seizure in question was due to Benson's abrupt discontinuance of Dilantin, his seizure medication. No discussion is made of any other particular medications, and Benson seeks to simply assume which medications were involved, if any, in contributing to the alleged seizures. Benson also seems to have omitted the fact that his claims made against Dr. Ellien **solely** relate to the prescription to Tofranil, a medication which Benson himself stopped taking by the end of July, 1999, and which were officially discontinued by Dr. Yun on August 19, 1999, some weeks before Benson went out to the Adams County prison, where he allegedly had the seizures in question. Benson presents no evidence whatsoever to link a few days' prescription of Tofranil in late-July, with seizures occurring in late-August, particularly in light of the above-noted diagnosis he cites that states abrupt withdrawal of Dilantin as the primary cause. Benson fails to sufficiently counter Dr. Ellien's statement of facts.

Benson also attempts to counter ¶¶45-52 of Dr. Ellien's statement of facts. Dr. Ellien provides his opinion as to the medical issues relating to his treatment of Benson, and the claims which Benson makes. Benson asserts that because Dr. Ellien objected to Benson's attempt to obtain Ellien's expert opinion (in interrogatories) on his (Benson's) own behalf, objection which this Court permitted to stand in the face of Benson's motion practice, that Ellien therefore may not express his opinion for any purpose. This defies common sense and applicable rules and case

law. Clearly, a party to an action is permitted to proffer an expert opinion within his or her area of expertise on his or her own behalf. Likewise, a party (or any independent expert for that matter), cannot be compelled to provide expert testimony for a party in an action. There exists no statutory or case authority which supports such a conclusion. Hence, it is proper for Dr. Ellien to decline to provide expert testimony on Benson's behalf, while doing so on his own behalf. There is nothing unfair about this, and there is nothing legally contrary.

### 2. BENSON'S LACK OF AN EXPERT

Benson has provided no expert testimony in this matter on his own behalf, submitted no expert reports as to the issues relating to his claims against Dr. Ellien, identified no experts who will testify on his behalf at the time of trial. This is undisputed. While noting at one point a diagnosis or diagnostic impression by a physician at Gettysburg Hospital, from apparently some medical record of his, this fails to constitute an expert report or expert testimony to satisfy the burdens which Benson's bears. Benson has proffered no expert opinion as to the applicable standard of care respecting the issues involving Dr. Ellien, and no expert opinion as to how or whether Dr. Ellien's actions fail to meet any such standard of care. This is clearly Benson's burden (as discussed in the Motion in chief), and Benson cannot meet this burden. He does not even try.

### 3. BENSON'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

In response to his failure to exhaust administrative remedies pursuant to ADM-804 (see Motion in chief), Benson's only response is to refer the court to his Motion to Dismiss. However, Benson has failed to provide any evidence whatsoever that he fully and adequately

exhausted all remedies provided for by ADM-804. Particularly, Benson failed to seek monetary relief in the administrative process, and this failure is fatal to his claims in this action, as discussed in detail in the Motion in chief.

### 4. BENSON'S FAILURE TO STATE A SERIOUS MEDICAL NEED

Benson's response to the Motion for Summary Judgment fails to correct this defect: His claims against Dr. Ellien fail to state a serious medical need within the meaning of 42 U.S.C. §1983. (See Motion in chief for full discussion) The uncontroverted evidence in this matter is that Dr. Ellien, a psychiatrist, treated Benson **solely** for his psychiatric condition, consisting of anxiety and panic order conditions. Benson attempts to include the treatment for epilepsy but, as discussed herein and in the Motion in chief in detail, there is no evidence which would support such a conclusion. Even Benson does not allege that Dr. Ellien ordered or prescribed any medication for his epilepsy or provided any particular treatment therefore, and does not controvert the fact that Dr. Long was the physician responsible for the treatment of Benson's epilepsy. He would like this Court to conclude that Ellien "treated" him for epilepsy because, on one instance toward the end of their professional relationship, Benson indicated to Ellien that he (Benson) was going to abruptly discontinue taking his anti-seizure medication, and Dr. Ellien (1) told him that this would be dangerous, and (2) told him that he would put Benson on a "must take" list until Benson saw and was evaluated by Dr. Long concerning his desire to stop taking his epilepsy medication. Neither of these steps constituted treating Benson's epilepsy. Each involves simply an informational process, informing Benson of the danger of doing what he stated he was going to do, and informing the rest of the medical staff of the dangerous step that Benson was about to undertake, the abrupt discontinuance of his anti-seizure medication.

As discussed in the Motion in chief, and undisputed by Benson, the conditions for which Dr. Ellien treated Benson, anxiety and panic order conditions, fail to constitute serious medical needs within the meaning of 42 U.S.C. §1983, and, per Boring v. Kozakiewicz, particularly in the absence of any expert medical testimony to the contrary, no lay jury is in the position to determine that these conditions constitute "serious medical conditions." Benson has failed to satisfy his burden of demonstrating a serious medical need as to his claims against Dr. Ellien.

### 5. ISSUES UNADDRESSED IN PLAINTIFF'S RESPONSE

Mr. Benson leaves numerous issues unaddressed and therefore uncontested in his response to Dr. Ellien's Motion for Summary Judgment. Benson fails to address, at all, the fact that he has failed to demonstrate that Dr. Ellien's actions constituted deliberate indifference within the meaning of 42 U.S.C. §1983. Benson fails to adduce any evidence or support whatsoever for the conclusion that Dr. Ellien had subjective knowledge that his actions in the treatment of the Plaintiff, presented a substantial risk of harm to Benson. To the contrary, Dr. Ellien addresses this issue in his statement of facts and his accompanying Verification, and demonstrates that he possessed no such subjective state of mind in his treatment of Benson. At all times, Ellien believed that his treatment of Benson's psychiatric conditions were reasonable, appropriate and within the standard of care, and at no time believed that any of this treatment subjected Benson to a substantial risk of harm. (See Motion in chief, Statement of Facts and Dr. Ellien's Verification)

Further, it is clear, and Benson has likewise failed to address, that his claims state nothing more than a disagreement, between Benson and Ellien, as to the appropriate course of psychiatric treatment. It is only **Benson's** "medical opinion" that the treatment which Dr. Ellien rendered

was in appropriate. Again, Plaintiff has failed to adduce any expert medical testimony to support his claims in this regard. A disagreement as to the appropriateness of medical care fails to rise to the level of a claim under 42 U.S.C. §1983, and should be dismissed by this Court. As discussed in the Motion in chief, at best, such a claim would sound in medical negligence, and a claim for medical negligence **must** be supported by expert testimony as to the appropriate standard of care, and an opinion as to whether the defendant's actions failed to meet that standard of care. Here, Benson has no such expert testimony, and therefore, cannot meet his burden of proof.

## **CONCLUSION**

Accordingly, and for the reasons discussed herein and in Dr. Ellien's Motion for Summary Judgment, Jason Benson has failed to sustain his burdens of proof in his claims against Dr. William Ellien, pursuant to 42 U.S.C. §1983, and therefore the Motion should be granted and Plaintiff's claims dismissed with prejudice.

Respectfully submitted,

GOLD, BUTKOVITZ & ROBINS, P.C.

BY: _____
ALAN S. GOLD
SEAN ROBINS
Attorneys for Defendant,
William G. Ellien, M.D.

7837 Old York Road
Elkins Park, PA 19027
(215) 635-2000

DATE: __March 13, 2002__

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies defendant's, William G. Ellien, M.D., Reply Brief in Support of Motion for Summary Judgment, were served upon the following on this date:

    Jason E. Benson, pro se
    Inmate No. DS-6483
    SCI-Smithfield
    P.O. Box 999
    1120 Pike Street
    Huntingdon, PA 16652

    James D. Young, Esquire
    Lavery, Flaherty, Young & Patterson, P.C.
    301 Market Street, Suite 800
    Harrisburg, PA 17108

    David L. Schwalm, Esquire
    Thomas, Thomas & Hafer, LLP
    305 North Front Street
    P.O. Box 999
    Harrisburg, PA 17108-0999

                    GOLD, BUTKOVITZ & ROBINS, P.C.

BY: _____
            SEAN ROBINS

DATE: _March 13, 2002_