IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON ERIC BENSON, <br> Plaintiff | : | CIVIL ACTION |
| v. | : | NO. 1:00-CV-01229 |
| THOMAS DURAN; BRUCE CLUCK; DEBRA HANKEY; JOHN JENNINGS; WILLIAM ORTH; RAE HIENTZELMAN; RONALD LONG and WILLIAM ELLIEN; BRITON SHELTON; WILLIAM J. STEINOUR AND ADAMS COUNTY PRISON <br> Defendants | : | JURY TRIAL DEMANDED |

## REPLY BRIEF OF ADAMS COUNTY DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**I.  BACKGROUND:**

On November 15, 2001, the Adams County Defendants filed a Motion for Summary Judgment with Brief and supporting documentation. On December 4, 2001, the Plaintiff filed materials in opposition to Motions for Summary Judgment that have been filed on behalf of all Defendants. The Plaintiff did not serve these materials on any of the Defendants and, a Motion was then filed for an extension of time to file a Reply Brief.

This Brief replies to the points raised in Mr. Benson's filing of December 4, 2001.

II. **DISCUSSION:**

  A. **There is no basis for independent liability for either Deputy Wardens Cluck or Hankey or Corrections Officers Heintzelman and Shelton.**

In his December 4, 2001 filing, Mr. Benson asserts that Deputy Wardens Cluck and Hankey are responsible for having violated his civil rights because they failed to enforce prison regulations concerning the use of force. Mr. Benson further argues that former Deputy Warden Cluck is responsible for having "physically mauled Plaintiff." (12/4/01 Submission, p. 7)

As for the allegation that former Deputy Warden Cluck physically mauled Mr. Benson, the entire confrontation is captured on videotape. The tape does not in any way show a physical mauling of the Plaintiff. Rather, the tape shows that Mr. Benson was taken down after he began slamming his head on a computer monitor and that he was held down until he became compliant. There were no punches thrown, nor was Mr. Benson hit with anything. There is simply no basis for his assertion that he was physically mauled by Bruce Cluck.

As for the allegation of supervisory responsibility and the failure to enforce prison regulations, for Deputy Wardens Cluck and Hankey, it is submitted that there was no failure here to enforce any prison regulation. Mr. Benson was non-compliant with a mandatory procedure and was causing a disruption. His behavior was controlled using minimal force and neither of the Deputy Wardens failed to do anything here that they should have.

Additionally, neither Bruce Cluck nor Debra Hankey had any supervisory responsibility for what did or did not happen to Mr. Benson. The Warden was present, it was the Warden who gave the direction to dispense the pepper spray and the Warden who directed further activities from there. This is hardly a situation where the Deputy Wardens had the power or ability to change or alter the decisions and instructions given by the Warden. Because the requisites for

2

supervisory liability are not present here, the claims against Bruce Cluck and Debra Hankey should be dismissed.

As to Sergeant Heintzelman and CO Shelton, the videotape does not show either of these gentlemen violating anyone's civil rights. They did not administer the pepper spray, they did not administer a beating to Mr. Benson, they simply participated in subduing Benson after he started to slam his head on the computer monitor. The Adams County Defendants are satisfied to allow the Court to review the videotape of the incident and make a determination as to whether the minimal force applied was appropriate and constitutional.

    **B.**    **The Plaintiff's allegations in regard to suspension and firing of certain prison staff members.**

In numbered Paragraph 13 of Mr. Benson's submission, he asserts "it's been quite clear for some time now that Duran, Cluck, Jennings, Orth and Shelton, were all suspended from their positions pending the outcome of an investigation." Mr. Benson continues in the same paragraph "and each of these Defendant's were eventually fired."

These allegations are simply false. None of the individuals involved in this occurrence were either suspended or fired as a result of the occurrence. There is nothing in the record that would support Mr. Benson's representations to the contrary.

    **C.**    **Plaintiff's allegations in regard to the use of force continuum.**

Mr. Benson asserts in numbered Paragraph 14 of his submission that the Adams County Defendants failed to follow their own prison Manual in regard to use of force. Mr. Benson appears to be arguing that the Warden and the staff failed to follow the continuum because "control techniques" were not employed.

3

The record shows in intricate detail that the use of force continuum was, in fact, followed. The record discloses that after Mr. Benson was given a verbal request and then an order to comply with the strip search procedure, he failed to do so and a show of force ensued. There is no dispute that after the show of force, Mr. Benson still refused to comply with the strip search procedure and actual force was necessary to obtain his compliance.

Mr. Benson's assertion in regard to "control techniques" is that the prison should have used a "swarm and take down" technique, but failed to do so in this particular case. Mr. Benson argues that as a result, the Defendants willfully bypassed the second step in the use of force continuum and went straight to the third step. (12/4/01 submission, p. 11)

First of all, according to the Manual, control techniques are not accorded a higher priority on the continuum than other modes of force including pepper spray. The Manual indicates that pepper spray, control techniques and electronic body immobilizing devices are all deemed to be equivalent methods of control. Consequently, the Manual permits the use of pepper spray instead of control techniques as circumstances dictate.

Secondly, control techniques are not limited to the swarm and take down as Mr. Benson asserts. Other control techniques include restraining devices such as handcuffs, a baton or even a physical hold by an officer. However, as covered in detail in the materials submitted in support of summary judgment, the use of pepper spray was the best alternative under the circumstances presented. (see, expert Report of R. Traenkle) Mr. Benson could not be allowed to simply defy the direction to be searched. Releasing Mr. Benson from his cuffs could have escalated the situation and potentially given him the opportunity to resist or injure the officers. The fact of the matter is that control techniques were used and were used effectively to diffuse the situation.

4

Some of Mr. Benson's own submissions support the prison staff's actions and use of force. Exhibit D-5 lists the following in order of appearance on the use of force continuum: "I. Officer's Presence in Uniform; II. Non-verbal Communication; Verbal Communication, Verbal Commands; III. Passive Control; IV. Oleoresin Capsicum Aerosol Sprays. . . ." These training materials demonstrate that the prison staff here followed proper procedures to control and diffuse the situation.

As the videotape shows, the course of conduct chosen by the prison staff conformed with prison policy and with good common sense. There was no constitutional deprivation in the actions of the prison personnel.

### D.     Provision of documents in response to discovery.

In numbered Paragraph 16 of Mr. Benson's 12/4/01 submission, he asserts that the prison extraordinary occurrence reports of CO Shelton and Lieutenant Jennings were never submitted to the Plaintiff in response to his Request for Production of Documents. This is basically the same argument that Mr. Benson raised in a previous Motion for Sanctions. However, Mr. Benson was provided with all of the extraordinary incident reports, including those of Shelton and Jennings by Response to Request for Production of Documents served March 29, 2001.

### E.     Plaintiff's arguments concerning significant or serious injuries.

The Plaintiff argues on Pages 12 and 13 of his 12/4/01 submission that it is not necessary for him to show a significant or serious injury to establish an Eighth Amendment claim.

The Defendants have not taken the position here that the minimal injuries that Mr. Benson actually sustained deprive him of a claim. The point of raising these minimal injuries is

that under <u>Hudson</u> and <u>Whitley</u>, the extent of the injuries suffered by the inmate is one of the factors for the Court to consider in whether or not an inmate was the victim of an excessive use of force. No case authority prohibits the use of all force. The constitutional standard is whether or not force was applied in a good faith effort to maintain or restore discipline as opposed to maliciously and sadistically administered to cause harm.

Mr. Benson's minimal injuries illustrate the fact that the course of action chosen by the Warden here was carefully tailored to control the situation. Had the Warden chosen to release Mr. Benson from his restraints and forcibly strip search him, the result could been much more serious. In that scenario, the Warden would have been dealing with a non-compliant and potentially hostile inmate who now had free hands and feet to punch and kick. Although Mr. Benson may have found the pepper spray to be very uncomfortable, the effects of the spray by his own admission lasted only 30 minutes. Any other injuries that he might have sustained according to the Gettysburg Hospital records were nothing more than superficial. So while Mr. Benson may have found the entire incident to be unpleasant, the force used was not extreme or outrageous and it did compel Mr. Benson to comply with prison policy.

### III. CONCLUSION:

For the reasons stated above and those enumerated in the main Brief, the Adams County Defendants respectfully request that the Court enter summary judgment in their favor and against the Plaintiff.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

By: *Kevin McNamara*
Kevin C. McNamara, Esquire
I.D.#72668
305 North Front Street
P.O. Box 999
Harrisburg, PA 17108-0999
(717) 237-7132
Attorneys for Defendants

DATE: 3/18/02

## CERTIFICATE OF SERVICE

I, Kevin C. McNamara, Attorney for Thomas, Thomas & Hafer, LLP, hereby certify that a copy of the foregoing document was served upon the following, by enclosing a true and correct copy in an envelope addressed as follows, postage prepaid:

Jason E. Benson
Inmate # DS-6483
SCI Smithfield
P. O. Box 999
1120 Pike Street
Huntingdon, PA 16652

Alan S. Gold, Esquire
7837 Old York Road
Elkins Park, PA 19027

James D. Young, Esquire
Lavery, Faherty Young & Patterson, P.C.
P.O. Box 1245
Harrisburg, PA 17108-1245

THOMAS, THOMAS & HAFER, LLP

By: _____
Kevin C. McNamara

:160412.1   3/18/02