

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON E. BENSON,                    :      CIVIL ACTION NO. **1:CV-00-1229**
                                    :
            Plaintiff               :      (Judge Caldwell)
                                    :
      v.                            :      (Magistrate Judge Blewitt)
                                    :                        **FILED**
THOMAS DURAN, et al.,               :                        **SCRANTON**
                                    :
            Defendants              :                        JUL 2 3 2002

                                                        PER _____
                                                            DEPUTY CLERK

### REPORT AND RECOMMENDATION

      This action is presently proceeding *via* an amended complaint which was filed on

September 11, 2000. (Doc. 18). Named as Defendants are the following: Thomas Duran, Warden,

Adams County Prison; Bruce Cluck and Debra Hanky, Associate Wardens; John Jennings and

William Orth, Lieutenants; Rae Hientzelman, Sergeant; Briton Shelton and David Vazquez,

Correctional Officers; Jane and John Doe, Adams County Prison Corrections Officers[1]; William J.

Steinour, a physician employed at Gettysburg Hospital; Dr. Ronald Long, a physician employed at

the State Correctional Institution at Smithfield; and Dr. William Ellien, a psychiatrist employed at

the State Correctional Institution at Smithfield.

      Defendant Steinour has been dismissed by Order dated July 12, 2001 (Doc. 73), and

Defendant Vazquez was dismissed by Order dated July 17, 2001 ( Doc. 74). Discovery has now

been completed. All of the remaining Defendants have filed motions for summary judgment. The

motions have been briefed by the parties and are now ripe for disposition.

---

1.    The aforementioned Defendants, all employees of the Adams County Prison, shall be
collectively referenced hereinafter as "the Adams County Defendants."

## I. Statement of Material Facts.

The Plaintiff alleges that on August 25, 1999, he was transferred to the Adams County Prison for the purpose of attending a Post Conviction Relief Act Hearing.    On August 27, 1999, after attending the hearing, he was returned to the Adams County Prison and, upon arrival, was handcuffed behind his back and shackled about the ankles by Defendant Shelton.    Thereafter, the Plaintiff was led into a small room and, in the presence of Defendants Jennings, Duran, Hankey, Hientzelman and John Doe, Defendant Cluck ordered the Plaintiff to strip.  The Plaintiff alleges that he was unable to comply with the order due to the fact that he was handcuffed behind the back and shackled at the ankles.  After refusing the order, the Plaintiff was then, without warning, "shot in the face with O.C. Pepper Foam." (Doc. 18, p. 3).   The Plaintiff was having difficulty breathing and seeing.  He lost his balance and hit his head on a computer monitor.  Defendant Duran then gave the order to take the Plaintiff down.  Plaintiff alleges that Defendants Cluck, Jennings, Hankey, Hientzelman, and Shelton knocked the Plaintiff to the floor, twisted his arms, and kicked and kneed him in his back and side.

The Plaintiff claims that he was then thrown into a concrete shower stall, where he was knocked unconscious.  Plaintiff avers that Defendant Duran forcibly removed him from the shower, knocked him to the floor, and stomped his foot into the Plaintiff's neck.  The restraints were then removed, and the Plaintiff consented to the strip search.  Thereafter, the Plaintiff requested that he be taken to the Gettysburg Hospital Emergency Room, as there are no medical facilities at the Adams County Prison.  Since the Plaintiff's complaint as against Dr. Steinour has been dismissed,

the allegations regarding this Defendant while the Plaintiff was at Gettysburg Hospital will not be discussed herein.

On or about August 30, 1999, the Plaintiff alleges that Defendant Orth and former Defendant Vazquez witnessed him in a state of convulsions for 1 ½ hours before transporting him to the Gettsyburg Hospital.  Once at Gettysburg Hospital, he was immediately admitted to the critical care unit.   According to the Plaintiff, the attack was brought on by "a series of pharmacological deviations prescribed by defendant's (sic) Dr. Ronald Long and Dr. William Ellien of SCI-Smithfield."  (Doc. 18, p. 4).   According to Plaintiff, in June of 1999, Dr. Long abruptly discontinued the Plaintiff's anti-seizure medication.  Subsequently,  the Plaintiff questioned both Dr. Long and his psychiatrist, Dr. Ellien, about why the seizure medication was discontinued, but was never provided with a satisfactory answer.

It is the Plaintiff's position that "[t]he abrupt discontinuance of Dilantin by defendant Dr. Ronald Long, as well as the prescription anti-depressant Imipramine, in combination with the physical and emotional trauma sustained during the use of excessive force in A.C.P. synergistically caused plaintiff to enter into the aforementioned life threatening "Status Epilepticus" seizures that occurred on August 29, 1999."  (Doc. 18, p. 4).

## II. Motions for Summary Judgment.

### A. Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show

3

that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995).

The motions for summary judgment of Defendants Ellien and Long shall be addressed first, followed by a discussion of the summary judgment motion of the Adams County Prison Defendants.

*B. Motions for Summary Judgment of Dr. Long and Dr. Ellien.*

## 1.   Failure to exhaust administrative remedies.

Defendant Ellien moves for summary judgment, arguing that the Plaintiff has failed to exhaust his administrative remedies.    Prior to initiation of an action such as this, the Plaintiff is required to exhaust his administrative remedies. 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System.  DC-ADM 804 (1994).  After attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Chief Hearing Examiner. DC-ADM 804-2 (1997).  Defendant Ellien contends that, while Plaintiff appears to have prepared a grievance against him, it was not completely and properly exhausted with respect to any claim for monetary relief.  The Plaintiff seeks $500,000.00 in damages against Dr. Long and Dr. Ellien in his Amended Complaint. (*See* ¶B-2 of Claim for Relief, page 6, Doc. 18).

In response to  Defendant Ellien's motion for summary judgment, the Plaintiff simply states that he has exhausted all of the remedies necessary, citing to his response to Defendant Ellien's motion to dismiss. (*See* ¶ 11, page 4, of Plaintiff's response to Defendant Ellien's statement of facts,

5

Doc. 133). The Plaintiff did not offer any new evidence regarding the exhaustion issue, nor did he submit any documentation indicating that he sought a decision concerning his appeal for a final review. The Plaintiff has previously submitted a copy of a grievance that he filed on October 26, 2000, dealing with the claims against Dr. Ellien and Dr. Long which were raised in his complaint, including a request for monetary relief in the amount of $500,000.00, as well as a copy of the grievance officer's November 2, 2000, summary denying the Plaintiff's grievance. (Doc. 43, Exhibits A and B). The Plaintiff also represents that he submitted his appeal for final review to the Chief Hearing Examiner pursuant to DC-ADM 804 VI. C. 1., but that the Chief Hearing Examiner never responded. Defendant Ellien argues that discovery is now complete, and the Plaintiff has repeatedly failed to prove that he has properly and completely exhausted his administrative remedies and has failed to seek monetary relief administratively. Thus, Defendant Ellien maintains that his motion should be granted and that the complaint as against him should be dismissed. (Doc. 129, section D, and Doc. 130, ¶ 51.).

Previously, both Defendants Long and Ellien filed motions to dismiss arguing that the Plaintiff failed to exhaust his administrative remedies. However, in the context of a motion to dismiss, the Plaintiff had to only sufficiently allege that he had exhausted his remedies, and he did so at that time. Therefore, the court denied the Defendants' motions to dismiss and indicated that the Defendants' argument would be more appropriately considered in the context of a motion for summary judgment. (*See* page 7 of June 4, 2001, Report and Recommendation, Doc. 58). Since discovery has now passed and the Plaintiff has failed to sufficiently prove exhaustion of his claims

against both Defendants Ellien and Long, it will be recommended that judgment be entered in favor of these Defendants.

We would note that Dr. Ellien has only moved for summary judgment on the exhaustion ground. However, as discussed, Dr. Long raised this issue as an affirmative defense in his motion to dismiss in accordance with *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002), and the administrative remedy process is directly related to Plaintiff's claims against both Dr. Ellien and Dr. Long. (*See* Doc. 43, Exhibits A and B). It will therefore be recommended that judgment for both Dr. Ellien and Dr. Long be granted.

Initially, the contention of Defendant Dr. Ellien that the Plaintiff failed to raise his request for monetary relief in his administrative grievances and has presented this claim for the first time in this action is not supported by the record. Exhibit A attached to Plaintiff's Brief opposing Defendant Ellien's motion to dismiss, (Doc. 43) namely the Plaintiff's October 26, 2000, grievance form, in paragraph A, last sentence, states that "[t]o rectify this situation, (Dr. Long's and Dr. Ellien's actions) I am seeking $500,000.00 in *monetary* relief." [Emphasis added]. Therefore, the claim for monetary relief was contained in the Plaintiff's grievance forms. Additionally, the Plaintiff's argument that he cannot seek an award of monetary relief through the Pennsylvania Department of Corrections grievance procedure is incorrect. ADM-804 clearly provides that, as of May 1, 1998 (after the present Plaintiff's claim), an inmate "may also include a request for compensation or other legal relief normally available from a court". (*See* Exhibit E attached to Defendant Ellien's Exhibits in support of his summary judgment motion at last page of exhibit, Doc.131).

The Plaintiff's reliance on the case of *Wright v. Hollingsworth*, 201 F.3d 663 (5th Cir. 2000), is misplaced. Plaintiff argues that similar to the grievance process in Texas, the grievance process in Pennsylvania does not permit an award of monetary damages, and therefore his complaint is not subject to dismissal for failure to exhaust. (*See* Doc. 32 at page 2). However, under the Texas Department of Criminal Justice grievance procedure, an award of monetary damages is not permitted (*See Wright* at 665) as it is under the Pennsylvania Department of Corrections regulations, as discussed above. Thus, *Wright* is inapplicable to Plaintiff's case.

The Plaintiff has failed to show that he exhausted his remedy of final appeal to the Chief Hearing Examiner as required by DC-ADM 804, VI, D, 5-7 (Nov.1 ,1997). (*See* Exhibit E, 3 pages from end of Defendant Ellien's exhibits, Doc. 131). Plaintiff argues that since he received no response to his appeal for final review, he sufficiently exhausted his remedies. (*See* page 4 of Plaintiff's brief opposing Defendant Ellien's motion to dismiss, Doc. 43). Plaintiff admittedly did not wait to receive a decision from his appeal for final review. Plaintiff has not offered any evidence which indicates that he pursued the matter with the chief hearing examiner to render a final decision on his grievance or that a decision was made to disregard the appeal as Plaintiff alleges. (*See* Page 4 of Plaintiff's brief, Doc. 43).

In the case of *Nyhuis v. Reno*, 204 F. 3d 65 (3d Cir. 2000) *aff'd.* 121 S.Ct. 1819 (2001), the court held that a prisoner must exhaust the administrative remedies available to him or her prior to initiating suit in federal court. In *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000) *aff'd.* 121 S.Ct. 1819 (2001), the court held that the exhaustion requirement applied in both *Bivens* and Section 1983 actions. The Plaintiff in this case undisputedly has failed to exhaust the three-tiered

administrative appeal process with respect to his claims, both under the Eighth Amendment and

the $500,000.00 monetary claim, against Defendants Ellien and Long.   42 U.S.C. § 1997e (a)

provides in pertinent part that:

> No action shall be brought with respect to prison conditions under
> Section A 1979 of the revised statutes of the United States (42 U.S.C. § 1983)
> of any other Federal law by a prisoner confined to any jail, prison, or
> other correctional facility until such administrative remedies as
> are available are exhausted.

Plaintiff cites the case of *Geisler v. Hoffman, No. 99-1971, Third Circuit Court of Appeals,*

*Sept. 29, 2000.* (*See* page 4 of Plaintiff's brief, Doc. 43). *Geisler* is an unpublished Third Circuit case

and is attached to the Exhibits of Defendant Ellien as Exhibit F, Doc. 131.  *Geisler*, however, holds

against Plaintiff's position.  The Plaintiff, as discussed, has admittedly failed to fully exhaust his

administrative remedies since he did not receive a final decision from the chief hearing examiner

before he filed this case.  The Plaintiff argues that his final appeal was moot since he did not get a

decision and over 45 days had passed from the time that he submitted his final appeal.  (*See* page

4 of Plaintiff's brief, Doc. 43).  However, *Geisler* discussed this very issue.  In *Geisler*, the inmate

did not receive a formal response to his grievances from the Pennsylvania State prison, and the

court found that the state's failure to respond did not excuse the inmate from exhausting the

administrative appeals process. (*See Geisler* at pages 5-6).  While *Geisler* is not binding precedence,

it is persuasive, since both inmate Geisler's and inmate Benson's complaints fall squarely within the

dictates of Section 1997e(a) as interpreted by the Third Circuit in *Nyhuis* and *Booth*.

In his opposition brief to Defendants' summary judgment motions, Plaintiff only argues that

he has already demonstrated that he has exhausted all of the necessary remedies.  The Plaintiff has

9

offered no further evidence to support his position that he exhausted his remedies. Specifically, Plaintiff has not offered any evidence that a decision was ever rendered on his final appeal of his grievance. Plaintiff only relies on Exhibits A and B to his opposition brief to Defendants' motion to dismiss. Neither exhibit contains any evidence that the Plaintiff exhausted his remedy for a final appeal of his grievance.   As discussed above, the grievance process is three-tiered. The evidence in this case does not demonstrate that all avenues of the grievance process were in fact exhausted. The grievance officer denied Plaintiff's October 26, 2000, grievance on November 2, 2000. The Plaintiff appealed on November 4, 2000. There is no record of any decision with respect to Plaintiff's November 4, 2000, appeal. The grievance dealt with claims against both Defendants Ellien and Long. There is no additional evidence, even after the discovery period has concluded, that the Plaintiff pursued his grievance any further. Nor is there any evidence that the Plaintiff tried to obtain a decision on his  final appeal by inquiring as to its status or requesting the issuance of a final decision. The grievance procedures clearly provide for additional remedies than pursued by the Plaintiff in this case.

Plaintiff also argues that the administrative remedies provided to him by the Pennsylvania Department of Corrections, DC-ADM804, do not apply to Dr. Ellien and Dr. Long since they functioned as private physicians and were not state actors or employees. The cases cited by Defendant Ellien clearly held that the exhaustion requirements specified in DC-ADM804 applied to a claim by an inmate against a private physician who was contracted by the Department of Corrections to provide medical care to the inmate. Judge Conaboy's decision in *Peoples v. Horn*, Civil Action No. 3:CV-97-024 (M.D. PA 1997), and the District Court's decision in the Eastern

10

District of Pennsylvania in *Sykes v. Reno*, Civil Action No. 99-6208 ( E.D. PA March 21, 2000), both held that an inmate who sued a private physician under Section 1983 had to exhaust his administrative remedies provided for in DC-ADM804. Both decisions are attached to Defendant Ellien's Exhibits in support of his motion to dismiss, Doc. 30, as exhibits A and B, respectively. Judge McClure of this court also held that the exhaustion requirement applied to a private psychiatrist sued by an inmate under Section 1983. *See Burkholder v. Newton*, Civil Action No. 4:CV-00-0923, M.D. PA (Exhibit D attached to Defendant Ellien's exhibits, Doc. 30). Thus, it is well settled that administrative remedies contained at DC-ADM804 must be pursued prior to an inmate filing a Section 1983 action against a private physician.

The Plaintiff also intimates that it would be futile to exhaust his grievance final appeal since no decision was rendered for over forty-five (45) days. The Supreme Court, in *Booth*, stated that it will not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth*, 121 S.Ct. at 1825. Thus, the Supreme Court has held that no futility exception will be read into § 1997e.

Therefore, since the Plaintiff did not exhaust his administrative remedies with respect to his claims against Defendants Ellien and Long, it will be recommended that judgment be entered in favor of these Defendants.

C. *Motion for Summary Judgment of the Adams County Defendants*.

We will now discuss the motion for summary judgment of the remaining Adams County Defendants. The motion has been briefed by the parties and is ripe for disposition.

11

The Plaintiff alleges that on August 27, 1999, upon returning to Adams County Prison from a court hearing regarding his conviction, he was handcuffed and shackled and then ordered by Deputy Warden Cluck to strip for a search. Plaintiff states that, as he was handcuffed and in shackles, he was unable to comply and refused the order. (*See* ¶ 4 of Amended Complaint, Doc. 18). Plaintiff then contends that even though he was not a threat due to his restraints, without warning he was sprayed in the face with pepper foam. Plaintiff claims that, as a result, he could not breathe, lost his balance, and hit his head on a computer monitor. Plaintiff asserts that Defendant Warden Duran then directed Defendants Cluck, Hankey, Jennings, Hientzelman and Shelton to take him down and that the stated Defendants then knocked him down, "kicking and kneeing" him. (*See* ¶4 of Amended Complaint, Doc. 18). Plaintiff contends that he was then thrown into a concrete shower stall and fell unconscious. Plaintiff was later taken to the Gettysburg Hospital, where he was treated for contusions and released back to the prison.

On August 30, 1999, Plaintiff alleges that he was in a state of convulsions and that Defendant Orth witnessed this and did nothing for one and one-half hours. Subsequently, Plaintiff states that he was taken to the Gettysburg Hospital and was in a "life threatening state of severe seizures". (*See* ¶ 7 of Amended Complaint, Doc. 18).

The Plaintiff claims that the above actions by the Adams County Defendants constituted the use of excessive force without justification and were deliberately indifferent to his serious medical needs. The Plaintiff also claims that the Adams County Prison is liable under the Eighth Amendment for having inadequately trained medical staff and facilities. (*See* ¶ 2 of Claims for Relief in Plaintiff's Amended Complaint, Doc. 18).

Initially, Plaintiff's suit against the Adams County Prison must fail as argued by the Defendants, since the prison is not a person within the meaning of Section 1983. In order to bring suit under Section 1983, the conduct complained of must have been committed by a person acting under color of state law, and the conduct must deprive the complainant of rights secured under the Constitution or federal law. *Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998). It is well settled that a prison is not a person subject to suit under the civil rights laws. *Mitchell v. Chester County Farms Prison*, 426 F. Supp. 271 (E.D. PA 1976). Therefore, it will be recommended that the prison be dismissed as a party Defendant. Also, since no additional John Doe Defendants employed by the Adams County Prison have been identified by the Plaintiff through the course of discovery, as Plaintiff suggested he would do in his amended pleading at page 2 under the heading  Parties, and no further Defendants have been named in the Plaintiff's pleading, it will be recommended that the Amended Complaint against the John Doe Defendants be dismissed. Fed. R. Civ. P. 10 (a) requires that the caption of the complaint contain the names of all parties. Moreover, the time period within which to serve the Amended Complaint on the party defendants has expired. *See* Fed.R.Civ.P. 4(m).

### 1. The August 27, 1999 Incident.

The Defendants argue that there is no evidence that Deputy Wardens Cluck and Hankey acted in any improper manner regarding the August 29 pepper spray incident and that they were at all times under the direction of Warden Duran, who gave the order to use the spray and who was in complete charge of the situation. Thus, the Defendants maintain that Defendants Cluck and Hankey did not have sufficient involvement in the incident which is required to form the basis of

a claim against them.  The Plaintiff argues that these two Defendants are liable because, under the prison's policy, they were supposed to review whether proper procedures were followed in using physical force, and they failed to do so.  The Plaintiff also contends that Defendant Cluck "physically mauled" him.  (See page 7 of Plaintiff's response to Adams County Defendants' summary judgment motion, Doc. 120).

It is important to note that there is no dispute that the Plaintiff was charged with a separate crime for the August 29, 1999, incident with the pepper spray and that he pled *nolo contendere*, i.e., no contest, to the charge of Aggravated Harassment by a Prisoner. (See N.T.  66-67 of Plaintiff's deposition transcript attached to the Exhibits of Defendant Ellien and marked as Exhibit D, page 18).  It is also undisputed that the Plaintiff received a one- to two-year sentence as a result of his plea to the charge, which sentence was to run concurrent with his existing sentence of three to six years.  (See  N. T. 67).

Although not raised by the Defendants, we believe that the Plaintiff's plea and conviction to a criminal charge regarding his conduct on August 27, 1999, is fully subject to the principle of *res judicata* in this civil rights action he has brought under Section 1983 involving the same incident. In *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 420 (1980), the Supreme Court held that judgments in state criminal proceedings may preclude the relitigation of an issue raised in a Section 1983 action which was already decided in state court in which the parties have been afforded a full and fair opportunity to litigate federal claims.  The Plaintiff in this case voluntarily pled to the charge of aggravated harassment and was given a full and fair opportunity to raise any constitutional claims which he had at that time.  However, the Plaintiff raised no claim in his state criminal

14

proceeding that his federal rights were violated during the August 27, 1999, incident. Accordingly, the principle of *res judicata* should preclude the relitigation now of any such claims which Plaintiff could have raised in his state criminal court proceedings.

The law is clear with respect to a Section 1983 action that liability may only be based upon the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F. 2d 1077 (3d Cir. 1976). It cannot be premised on the doctrine of *respondeat superior*. *Id.*; *Rizzo v. Goode*, 423 U.S. 362, 96 S. Ct. 598 (1976). "Instead, there must be acquiescence or participation in the violation before liability attaches under section 1983". *Rizzo* at 377.

The record is clear in this case that Warden Duran gave the order to use the pepper spray and that he, not Deputy Wardens Cluck and Hankey, had supervisory responsibility for the situation. (*See* ¶'s 2 and 6 of Duran's Affidavit, Doc. 103, ¶ 3 of Cluck's Affidavit, Doc. 104, and ¶ 3 of Hankey's Affidavit, Doc. 107). The Plaintiff has not submitted any evidence to the contrary. Rather, Plaintiff relies solely on the prison's policy manual regarding use of force to support his argument that the deputy warden Defendants had the power and authority to stop the warden's directive that the spray be used. (*See* page 7 of Plaintiff's brief, Doc. 120). Defendants Cluck and Hankey had no supervisory responsibility regarding the pepper spray incident. The warden was in full control of the situation, and he alone decided on the use of force. Further, as discussed below, the evidence reveals that the prison's regulations and policies were adhered to, since Plaintiff was belligerent and non-compliant with respect to a properly issued strip search order. In

15

fact, as stated, the Plaintiff has pled to an aggravated harassment charge over the incident, which further supports the Defendants' version of the events in question.

The videotape of the incident submitted as an attachment to Warden Duran's Affidavit (Doc. 103), which has been viewed by this Court, does not show Defendant Cluck as "physically mauling the Plaintiff." To the contrary, the tape shows that the Plaintiff was taken down in order to restrain and subdue him after he voluntarily began hitting his head on a computer monitor. There is no evidence that Defendant Cluck mauled the Plaintiff in any manner. The videotape also demonstrates that the Plaintiff did not lose his balance and hit his head on the computer monitor. Rather, the tape clearly depicts the Plaintiff purposely bending over and hitting his head. The tape also does not show the Defendants kicking or kneeing him after he was taken down and laid on the floor.

In light of the foregoing discussion, it will be recommended that judgment be entered in favor of Defendants Cluck and Hankey.

The Defendants next argue that Defendant Corrections Officers Heintzelman and Shelton did not play any role in the decision to use the pepper spray and are not portrayed on the videotape as taking any improper actions or using excessive force against the Plaintiff. Defendants contend that these two Corrections Officers did not administer the pepper spray and that they did not use excessive force on the Plaintiff. Rather, it is the Defendants' position that these two Correctional Officers merely assisted in subduing the Plaintiff after he began hitting his head on the computer monitor. Defendants assert that the videotape supports their argument. The Plaintiff states that he has alleged and shown that the Defendants assaulted him because of the improper

16

order to use pepper spray. Plaintiff also claims that the Defendants were suspended and fired. (*See* ¶ 13 of Plaintiff's brief, Doc. 120). There is absolutely no evidence in this record which supports the Plaintiff's assertions regarding the suspension and firing of any Defendant in this case as a result of the August 27 incident. According to the Affidavit of at least one Defendant, namely Heintzelman, as of November 2001, he was still an employee at the prison. (*See* ¶ 1 Doc. 108).

Defendants Heintzelman and Shelton have submitted evidence that supports their claim that the force they used against the Plaintiff was reasonable and was not for the purpose of inflicting pain on the Plaintiff as punishment. Specifically, the Defendants have submitted their Affidavits and the videotape of the incident in question. The Plaintiff offers as evidence the prison's policy regarding the use of force. (*See* Exhibits C and D attached to Plaintiff's brief, Doc. 120). The Defendants have also submitted the affidavit of an expert, as well as an expert report. (*See* Affidavit of Ronald Traenkle and attached Report, Doc.110). Most importantly, it must be reiterated that Plaintiff voluntarily pled to a new offense as a result of his conduct on August 27, namely aggravated harassment by a prisoner. We agree with the Defendants that the force used under the circumstances of this case was reasonable and consistent with the Adams County Prison policies and procedures.

The prison had a well established mandatory policy of strip searching an inmate when he is being returned to the prison after being taken out. (*See* page 4 of Traenkle's expert report, Doc. 110, ¶ 2 of Jennings' Affidavit, Doc. 105, and ¶ 11 of Duran's Affidavit, Doc. 103). There is no dispute that this long standing policy existed and that the Plaintiff was well aware of it from his experience at Adams County Prison and from his experiences at other prisons. (*See* N.T. 62-66 of

17

Plaintiff's deposition). The Plaintiff even testified that he knew the purpose behind the strip search rule, namely, to prevent an inmate from bringing back contraband into the prison; and he concurs that it was a sound and reasonable policy. (See N.T. 64-65 of Plaintiff's deposition). In fact, the videotape of the incident shows the Plaintiff receiving an explanation of the prison strip search policy. (See videotape attached to Defendant Duran's Affidavit, Doc. 103).

The prison also had a set policy regarding the use of force. (See Exhibit C attached to Plaintiff's brief, Doc. 120). The evidence in this case demonstrates that the Defendants followed their policies and procedures regarding the use of force on an inmate who refused to comply with a legitimate directive to submit to a strip search after he was being brought back into the prison. The evidence of record indicates that the Plaintiff was annoyed upon returning to the prison after his post conviction hearing on August 27, 1999, because he was informed that he was being written up on a misconduct for inappropriate behavior prior to his trip to court for his hearing and that he was going to be placed in administrative segregation. (See Shelton Affidavit at ¶'s 3 and 4, and ¶ 3 of Jennings' Affidavit, Doc. 105). At that time, the Plaintiff became angry and loud and began cursing at the prison staff. (See ¶ 5 of Shelton's Affidavit, Doc. 106). Plaintiff then refused three requests to comply with the strip search requirement. A verbal command to strip by Deputy Warden Cluck was given, and Plaintiff refused. (See ¶ 6 of Jennings Affidavit). A final request was made, and Plaintiff still refused. The videotape clearly depicts the Plaintiff saying "No" to the final directive to undergo a strip search. The videotape also fails to support the Plaintiff's contention that he refused the srip search because he was handcuffed and shackled. On the videotape, the Plaintiff simply says "no" to the final order to submit to a strip search, and at no time does the Plaintiff state

18

that he cannot comply because of the handcuffs and shackles. (*See* Affidavits of Shelton, Cluck and Jennings; *see also* Extraordinary Occurrence Reports attached to Plaintiff's Amended Complaint, Doc. 18, and videotape, Doc. 103). A show of force of the prison staff was then made prior to the use of any force, in accordance with the prison policy. (*See* Duran Affidavit at ¶ 5). Section II A. 8. of the Adams County Prison Policy Manual authorizes the use of force to strip search an unruly inmate. (*See* Exhibit C attached to Plaintiff's brief, Doc. 120) Warden Duran then gave the order to Defendant Jennings to spray oleo capsicum foam, pepper spray, in the Plaintiff's face in order to get him to comply with the prison's strip search policy. (*See* Affidavits of Jennings and Duran). The Plaintiff then became aggressive and abusive. As seen on the video, he spit at the Defendants and began hitting his head into a desk and computer monitor. (*See* Jennings and Duran Affidavits). The Plaintiff concedes that the Defendants did not hit his head into the computer. (*See* N.T. 96-97). The Plaintiff's testimony that he lost his balance and hit his head on the computer monitor is contrary to the videotape, which shows that Plaintiff deliberately bent over and purposely began to hit his head. The Plaintiff was then restrained on the floor until he ceased resisting, and then he was placed in the shower to rinse off the pepper spray. (*See* ¶ 7 of Duran Affidavit). The Plaintiff had to be again restrained in the shower because of continued spitting at the Defendants after repeated requests to cease spitting were made, and a "spit guard" was placed on the Plaintiff. (*See* ¶ 8 of Duran Affidavit; *see also* N.T. 98 of Plaintiff's deposition). The Plaintiff was then taken down again, and one of the Defendants put his foot on the Plaintiff's neck to prevent further spitting. There is no indication on the videotape that Plaintiff was kicked. At no time did the Plaintiff lose consciousness while he was in the shower, as Plaintiff states he did, according to the videotape.

Plaintiff is clearly seen as being conscious and in continual dialogue with the Defendants. Nor was the Plaintiff thrown into the shower by the Defendants. The Plaintiff then stripped, and upon his request, he was later transported to the Gettysburg Hospital for bruises and multiple, superficial contusions. He was treated and released that day. (*See* N.T. 101, 108-109; *see also* Gettysburg Hospital records, Exhibit E attached to Plaintiff's Amended Complaint, Doc. 18). Plaintiff testified that the pepper spray effects lasted for "half an hour". (*See* N.T. 105).

The videotape and the expert report of Mr. Traenkle both demonstrate that the force used on the Plaintiff was justified and not excessive and that the Plaintiff himself precipitated the need for the force. The force was needed to prevent possible injury to the prison staff and the Plaintiff. The extent of the injuries suffered by the Plaintiff were minimal. As discussed above, the force used in this case was consistent with the standard set forth in *Whitley v. Albers*, 475 U.S. 312, 319 (1986) and *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Therefore, it will be recommended that the Defendants' summary judgment motion with respect to Defendants Jennings, Shelton and Heintzelman be granted.

### 2. The August 30, 1999 Incident.

The Plaintiff alleges that on August 30, 1999, he was in a "state of convulsions" and that Defendant Orth and Defendant Vazquez (the latter Defendant has been dismissed from this action and consequently his alleged conduct will not be discussed) witnessed this and refused to immediately treat him until one and one-half hours later, when he again went into a state of serious convulsions. Plaintiff then alleges that he was then taken to the Gettysburg Hospital and treated for a life-threatening state of severe seizures. (*See* ¶ 7 of Plaintiff's Amended Complaint, Doc. 18).

20

Plaintiff claims that the conduct of Defendant Orth, by ignoring Plaintiff while he was in seizures, constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (*See* ¶ A2 of Doc. 18).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical Systems, Inc.*, 799 F. Supp. 490, 494-95 (E.D. Pa. 1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question...is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro*, 834 F.2d 326 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the

treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).

Defendant Orth moves for summary judgment on the grounds that the Plaintiff has failed to prove that he was deliberately indifferent to Plaintiff's medical needs on August 30, 1999. We agree.

There is no dispute in this case that the Plaintiff was taken to the Gettysburg Hospital and treated for seizures. (*See* Exhibit F attached to Plaintiff's Amended Complaint, Doc. 18). Rather, the Plaintiff argues that he did not receive prompt medical attention for his seizures by Defendant Orth and that Defendant Orth did not treat the Plaintiff's first seizure on August 30, 1999, as an emergency as he should have. There is also no dispute that on August 30, 1999, between 3:10 a.m. and 3:58 a.m., Corrections Officer Sheatler of the Adams County Prison contacted Defendant Orth, a supervisor at the prison, and advised him that the Plaintiff was having a problem. (*See* ¶'s 1-3 of Orth's Affidavit, Doc. 109, and N.T. 75-76 of Plaintiff's deposition). The Plaintiff was not able to respond to verbal commands. (*See* Orth's Affidavit at ¶4 and N.T. 76). Since the Plaintiff appeared to Defendant Orth to be "physically okay" other than having difficulty following directions and responding to questions, Plaintiff was left in his cell. (*Id.* at ¶ 4 and N.T. 76). (*See also* Extraordinary Occurrence Report of August 30, 1999 ("EO Report") attached to Orth's affidavit, Doc. 109). Then, about 20 to 25 minutes later, the Plaintiff was observed to be having a seizure and began screaming and convulsing. During the time between the first incident and the second incident, the Plaintiff was not left alone. (*Id.* at ¶ 7). The Sheriff's Department was then contacted to transport Plaintiff to the hospital. The Sheriff's Department arrived at the prison at about 5:35

22

a.m. and took the Plaintiff to the Gettysburg Hospital for treatment. (*Id.* at ¶'s 4 and 5, Extraordinary Occurrence Report and N.T. 76). The Plaintiff acknowledges that he received appropriate care while at the hospital. (*See* N.T. 78). The Plaintiff argues that Defendant Orth should have called to have him transported to the hospital sooner than he did.

The circumstances in this case do not amount to an Eighth Amendment violation. Defendant Orth did not call for transportation to the hospital until the Plaintiff's seizures became more intense. (*See* Extraordinary Occurrence Report). Contrary to the Plaintiffs assertions, the Extraordinary Occurrence Report is not inconsistent with Defendant Orth's Affidavit, in that they both indicate that the Plaintiff had gotten better and he was more responsive to verbal commands when the Sheriff's Department arrived. (*See* ¶ 9 of Orth affidavit and page 2 of Extraordinary Occurrence Report). According to Defendant Orth, he did not call for hospital transportation sooner because he did not perceive the Plaintiff's condition during the first incident as an emergency; and when the Plaintiff's condition deteriorated, the Plaintiff was taken to the hospital. (*See* ¶ 9 of Orth Affidavit). There is absolutely no evidence that the delay in transporting Plaintiff to the hospital was for the purpose of making the Plaintiff needlessly suffer. The delay in this case, 20 to 25 minutes, was constitutionally negligible, and the Plaintiff was  undisputedly being watched after the first incident to see if his condition became more severe. Moreover, there is no evidence in this record which indicate that Defendant Orth was aware of any facts  that a substantial risk of harm existed if there was a delay in taking the Plaintiff to the hospital as required by the *Farmer* case, *supra*.  At best, the facts may show Defendant Orth was merely negligent, which is not actionable under Section 1983. *See Farmer, supra* at 837. There is no evidence that Defendant Orth knew of and

disregarded an excessive risk to the Plaintiff's health or safety as required by *Farmer* to establish an Eighth Amendment violation. *Id.* Since there has been no deliberate indifference on the part of Defendant Orth established in this case, it will be recommended that judgment be entered in his favor.

## III. Recommendation.

Based on the foregoing, it is respectfully recommended that the Motions for Summary Judgment filed on behalf of all of the remaining Defendants, Defendants Ellien, Long, and the Adams County Prison Defendants **(Doc. 98, 100 and 111)**, be granted. It is recommended that the John Doe Defendants and the Adams County Prison Defendants be dismissed. It is further recommended that Judgment be entered in favor of these Defendants and against the Plaintiff.

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 23, 2002**

24

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON E. BENSON,                    :        CIVIL NO. **1:CV-00-1229**
                                    :
        Plaintiff                   :
                                    :        (Judge Caldwell)
    v.                              :
                                    :        (Magistrate Judge Blewitt)
THOMAS DURAN, et al.,               :
                                    :
        Defendants                  :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated July 23 , 2002.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: July 3, 2002

2