**UNREPORTED - NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 02-3867
_____

JASON ERIC BENSON

v.

THOMAS DURAN, Warden, at Adams Co.
Prison; BRUCE CLUCK, Deputy Warden; DEBRA
HANKEY, Deputy Warden; JOHN JENNINGS,
Lt.; WILLIAM ORTH, Lt.; RAE HIENTZELMAN,
Sgt.; BRITON SHELTON, Corrections Officer;
DAVID VAZQUEZ, Corrections Officer;
JANE/JOHN DOE, Corrections Officers; WILLIAM
J. STEINOUR, Dr.; WILLIAM ELLIEN, Dr., Wexford
Health Services; RONALD LONG, MD,
Wexford Health Services

Jason E. Benson, Appellant

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 00-cv-01229)
District Judge: Honorable William W. Caldwell

_____

Submitted Under Third Circuit LAR 34.1(a)
November 3, 2003

Before: ROTH, RENDELL AND FUENTES, <u>CIRCUIT</u> <u>JUDGES</u>

(Filed November 7, 2003)

_____

OPINION

_____

PER CURIAM

Appellant Jason Benson, a prisoner at the State Correctional Institution at Smithville ("SCI-Smithville"), had been transferred temporarily to Adams County Prison to attend a hearing on his state post-conviction petition, when, on August 27, 1999, prior to leaving for his hearing, he was charged with a misconduct.[1] When he returned from the hearing, he was advised that he was to be placed in administrative segregation pending a decision on the misconduct charge. He then was asked to cooperate with a routine strip search. Benson, handcuffed and shackled, refused to comply. To secure his compliance Warden Thomas Duran gave the command to use a burst of pepper spray in Benson's face. This use of force was videotaped by the Warden. Three days later, on August 30, 1999, around the 3:00 a.m. hour, defendant Lt. William Orth was summoned to Benson's cell area. Some time later it became apparent that Benson was having an epileptic seizure. Lt. Orth arranged for Benson to be transported to Gettysburg Hospital, and he was transported at around 5:30 a.m. and treated.

On July 10, 2000, Benson filed a civil rights action in United States District Court

---

[1] Inasmuch as we are writing only for the parties, we need not set forth the factual and procedural background of this matter, except as may be helpful to our brief discussion.

2

for the Middle District of Pennsylvania against Warden Thomas Duran, William Orth, several other Adams County Prison staff members, and Dr. William Steinhour. He later amended his complaint to include Drs. Ronald Long and William Ellien, physicians employed at SCI-Smithville. Benson sought money damages for a violation of his rights under the Eighth Amendment in connection with the events of August 27 and 30. He alleged that the use of force on August 27 was excessive in that he was unable to comply with the strip search order because he was handcuffed and shackled. Moreover, after being sprayed in the face, he was thrown to the ground and beaten by prison staff. He further alleged that his epileptic seizure on August 30 was the result of the beating on August 27, the improper discontinuation of his anti-seizure medication in June 1999, and the improper prescribing of an antidepressant in July 1999. Finally, he alleged that Lt. Orth delayed in transporting him to the hospital.

Two defendants, Dr. Steinhour and David Vazquez, were dismissed early in the action by order of the District Court.[2] Thereafter, the remaining defendants moved for summary judgment. The Magistrate Judge recommended that the motions be granted, and, in an order entered on September 17, 2002, the District Court agreed, granted the motions, and entered judgment in favor of the defendants and against Benson. Summary judgment was granted to Drs. Long and Ellien on the ground that Benson had failed to completely exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

---

[2] We will affirm these orders inasmuch as they have not been challenged on appeal.

Benson appeals.

We will affirm. In assessing a prisoner's claim that excessive force was used in violation of the Eighth Amendment, we focus on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). We look to several factors in applying this test, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

We have carefully reviewed the arguments raised by Benson in his Informal Brief and the entire extensive record. The case presents a close question because Benson presented no immediate threat to prison staff or other inmates inasmuch as he was handcuffed and shackled at the time force was applied. That, however, is not the end of the inquiry. Prison officials may strip search inmates upon their return from the "outside" to search for contraband. See generally Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 760 (3d Cir. 1979). Benson had no right to refuse a valid order, and refuse he did. Moreover, he was angry and gave every indication that he would be uncooperative, and possibly even violent and/or self-destructive, if the handcuffs and shackles were

removed.

In sum, Benson left Warden Duran with no real choice. There was no brutality or sadism involved, and Benson did not suffer significant or permanent damage by the brief use of pepper spray. The alternative, to strip search Benson by force, would not have been an improvement over what happened, and might have resulted in serious injuries to Benson and prison staff. Finally, the force used to restrain Benson after he was sprayed with pepper spray and prior to his consent to the search was not excessive. Accordingly, we agree with the District Court that there was no genuine issue as to any material fact, Fed. R. Civ. Pro. 56(c), and that summary judgment in favor of Warden Duran and the Adams County prison staff on the claim of excessive force was proper.

Summary judgment in favor of Drs. Long and Ellien also was proper because neither physician was ever deliberately indifferent to any serious medical need of Benson's, nor did either ignore a serious risk of harm to Benson.[3] Deliberate indifference to serious medical needs is a violation of the Eighth Amendment and actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. 97 (1976). To act with deliberate indifference is to recklessly disregard a substantial risk of serious harm. Farmer v.

---

[3] Benson has not argued on appeal that the District Court erred in dismissing his claims against Drs. Long and Ellien for failure to exhaust administrative remedies. Nevertheless, in opposing the motion for summary judgment, Benson argued that he substantially complied with the exhaustion requirement. This is a question we need not resolve, however, because we are free to affirm the judgment on any basis which finds support in the record. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980).

5

Brennan, 511 U.S. 825, 836 (1994).

    Dr. Long discontinued the use of phenobarbital to treat Benson's seizure disorder because he has a significant past history of drug abuse and phenobarbital is addictive. He prescribed Dilantin instead. However, Benson on his own discontinued the Dilantin. Dr. Long then evaluated Benson's noncompliance, and determined on June 4, 1999 that it was not medically necessary for him to continue on it because his seizure disorder had been stable throughout his time at SCI-Smithville. Benson's August 30 seizure was several months after the Dilantin was discontinued. Under these circumstances, in particular, that Benson's seizure disorder was stable, the record establishes no deliberate indifference on Dr. Long's part.

    Dr. Ellien, a psychiatrist, saw Benson on July 27, 1999, for severe anxiety and difficulty sleeping. He prescribed Tofranil, an antidepressant. Benson discontinued the Tofranil on his own after three days, and thus a full month before the August 30 seizure. Benson adduced no medical evidence at all to show that the seizure he suffered on August 30 was causally connected to his brief use of Tofranil a month before. The consultative report on which Benson relies, which stated that his seizure was caused by the discontinuance of Dilantin plus the effects of other drugs on the seizure threshold, does not provide an evidentiary basis for a constitutional claim of deliberate indifference against Dr. Ellien. Mere disagreements over the type or amount of care provided may give rise to a common law action for negligence but they do not state an Eighth

Amendment claim.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).[4]

Finally, there is no record evidence that the delay of two hours or so from the time Lt. Orth first observed Benson until he arranged for Benson's transportation to Gettysburg Hospital on the morning of August 30 was for the purpose of making him suffer needlessly, or that Lt. Orth had a subjective awareness of a substantial risk of harm to Benson.  Farmer, 511 U.S. at 836.  In addition, the District Court did not err in deciding not to appoint counsel to represent Benson.

We will affirm the judgment in favor of the defendants and against Benson.

---

[4] For that matter, it does not provide an evidentiary basis for a constitutional claim of deliberate indifference against Dr. Long either.